IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ECHOSTAR SATELLITE LLC, a Colorado corporation; ECHOSTAR TECHNOLOGIES CORPORATION, a Texas corporation, and NAGRASTAR LLC, a Colorado corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FINISAR CORPORATION, a Delaware corporation,<br><br>Defendant. | Civil Action No. 06-0425-JJF<br><br>**CONTAINS CONFIDENTIAL INFORMATION, FILED UNDER SEAL** |

## ANSWERING BRIEF IN OPPOSITION TO DEFENDANT FINISAR CORPORATION' S MOTION TO DISMISS PLAINTIFFS' DECLARATO RY JUDGMENT COMPLAINT

OF COUNSEL:

Harold J. McElhinny
Rachel Krevans
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
(415) 268-7000

-and-

William J. Kuhne
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
(212) 468-8000

Josy W. Ingersoll (No. 1088)
Richard H. Morse (No. 531)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6672

Attorneys for Plaintiffs EchoStar Satellite LLC, EchoStar Technologies Corporation, and NagraStar LLC

DATED: November 7, 2004

## TABLE OF CONTENTS

                                                                                       Page

I.   NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II.  SUMMARY OF ARGUMENT ..................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................ 2

IV.  ARGUMENT ................................................................................................................ 4

    A.   The Standard ..................................................................................................... 4

    B.   Finisar's Accusations that EchoStar Directly, Continuously, and Willfully
        Infringed the '505 Patent Necessarily Give Rise to a Justiciable
        Controversy ....................................................................................................... 5

    C.   The Totality of the Circumstances Demonstrate that EchoStar had a
        Reasonable Apprehension of an Infringement Suit ......................................... 5

    D.   Licensing Negotiations Ended Long Before EchoStar Brought Suit ............. 10

    E.   The Court Should Exercise Its Discretion to Resolve the Dispute between
        EchoStar and Finisar ....................................................................................... 12

V.   CONCLUSION ........................................................................................................... 14

TABLE OF CITATIONS

Page(s)

CASES

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
   846 F.2d 731 (Fed. Cir. 1988) .................................................................................. 4, 5, 8, 9

*BP Chems. Ltd., v. Union Carbide Corp.*,
   4 F.3d 975 (Fed. Cir. 1993) ..................................................................................................9

*Bausch & Lomb Inc. v. Alcide Corp.*,
   684 F. Supp. 1155 (W.D.N.Y. 1987) ............................................................................ 13 n.6

*Benitec Australia Ltd. v. Nucleonics, Inc.*,
   Civ. No. 04-0174, 2005 U.S. Dist. LEXIS 22008 (D. Del. Sept. 29, 2005) ....................... 4, 5

*C.R. Bard, Inc. v. Schwartz*,
   716 F.2d 874 (Fed. Cir. 1983) ..............................................................................................7

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
   387 F.3d 1352 (Fed. Cir. 2004) .............................................................................. 9, 10, 12

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
   508 U.S. 83 (1993) ................................................................................................................5

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
   02 Civ. 1396, 2002 U.S. Dist. LEXIS 20714 (S.D.N.Y. Oct. 25, 2002) ........................... 6-7

*Clay Paky v. Vari-Lite, Inc.*,
   99 Civ. 11401, 2000 U.S. Dist. LEXIS 9802 (S.D.N.Y. July 12, 2000) ......................... 7, 11

*Davox Corp. v. Digital Sys. Int'l, Inc.*,
   846 F. Supp. 144 (D. Mass. 1993) ............................................................................... 13 n.6

*Elecs. for Imaging, Inc. v. Coyle*,
   394 F.3d 1341 (Fed. Cir. 2005) ..........................................................................................10

*EMC Corp. v. Norand Corp.*,
   89 F.3d 807 (Fed.Cir.1996) .............................................................................. 6, 8, 9, 12

*Ivoclar Vivadent, Inc. v. Hasel*,
   Case No. 02-CV-0316E, 2003 U.S. Dist. LEXIS 12611 (W.D.N.Y. June 30, 2003) ..........11

*Livorsi Marine, Inc. v. Nordskog Publ'g, Inc.*,
   268 F. Supp. 2d 994 (N.D. Ill. 2003) ............................................................................ 11 n.5

*Microchip Tech. Inc. v. Chamberlain Group, Inc.*,
   441 F.3d 936 (Fed. Cir. 2006) ...................................................................................... 8 n.3

DB02:5595629.1                                                                                                                          065360.1001

REDACTED VERSION – PUBLICLY FILED

## TABLE OF CITATIONS

*Microsoft Corp. v. Commonwealth Scientific and Indust. Research Org.*,
  No. C-05-1894, 2005 U.S. Dist. LEXIS 42965 (N.D. Cal. Sept. 13, 2005) ................... 7, 11

*Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., Inc.*,
  Civ. No. 92-351, 26 U.S.P.Q.2d (BNA) 1238 (D. Del. 1992) ................................ 10

*NSI Corp. v. Showco, Inc.*,
  843 F. Supp. 642 (D. Or. 1994) ......................................................... 13 n.6

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
  57 F.3d 1051 (Fed. Cir. 1995) .......................................................... 11

*Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*,
  395 F.3d 1324 (Fed. Cir. 2005) .......................................................... 8

*United Sweetener USA, Inc. v. The Nutrasweet Co.*,
  760 F. Supp. 400 (D. Del. 1991) ................................................. 9 n.4, 13 n.6

### STATUTES

FED. R. EVID. 408 .......................................................................... 6

DB02:5595629.1
065360.1001

## I. NATURE AND STAGE OF THE PROCEEDINGS

On July 10, 2006, Plaintiffs EchoStar Satellite LLC, EchoStar Technologies Corporation, and NagraStar LLC (collectively, "EchoStar") brought suit against Defendant Finisar Corporation ("Finisar") for a declaratory judgment that EchoStar does not, and has not, infringed any valid claim of United States Patent No. 5,404,505 (the "'505 patent"). (D.I. 1.) On October 24, 2006, Finisar moved to dismiss EchoStar's complaint, arguing that the Court does not have subject matter jurisdiction over EchoStar's complaint. (D.I. 9.) EchoStar now files this brief in opposition to Finisar's motion to dismiss.

## II. SUMMARY OF ARGUMENT

1. Finisar has repeatedly accused EchoStar of infringing the '505 patent, and threatened that EchoStar would be subject to treble damages, prejudgment interest, and a permanent injunction if EchoStar did not accede to Finisar's settlement proposal.

2. Finisar linked its threats against EchoStar to Finisar's suit for infringement of the '505 patent in the Eastern District of Texas against DirecTV, EchoStar's competitor in the delivery of direct broadcast satellite services. Finisar obtained a jury verdict against DirecTV in June 2006, and then publicly announced its intent to enforce its intellectual property.

3. Finisar's direct charges of infringement against EchoStar necessarily establish a justiciable controversy between the parties, a conclusion only strengthened by Finisar's conduct as a whole.

4. Finisar has not identified any reason that justifies the Court not resolving the current dispute. No such reason exists. EchoStar has the right to resolve its dispute with Finisar and should be accorded that right.

### III. STATEMENT OF FACTS

Finisar first accused EchoStar of infringing the '505 patent on June 25, 2004. Gary Williams of Morgan, Lewis & Bockius LLP ("Morgan Lewis") wrote to EchoStar's General Counsel, asserting that "[c]laims of the '505 patent read on satellite transmission systems that broadcast information at various repetition rates" and that "*EchoStar has been using Finisar's intellectual property for some time*." (D.I. 11, Declaration of Dion M. Bregman, at Ex. A (emphasis added).) While indicating that "Finisar would prefer to address the issue of EchoStar's use of Finisar's intellectual property rights in a licensing context," Williams set forth the possibility that Finisar would proceed through "more formal means." (*Id.*) One month later, on July 21, 2004, Williams responded to EchoStar's request for an explanation of how EchoStar used Finisar's intellectual property (*see id.* at Ex. B) by stating that he had "already sufficiently identified *EchoStar's continuing infringement* of [the '505 patent]" (*id.* at Ex. C (emphasis added)). Williams then unequivocally accused EchoStar of "*directly infringing* at least claims 1 and 16 of the '505 patent." (*Id.* (emphasis added).)

On March 24, 2005, the parties met at EchoStar's offices in Colorado. Dion Bregman and Michael Lyons of Morgan Lewis represented Finisar and met with Kerry Miller, EchoStar's Vice President of Intellectual Property and Associate General Counsel at the time, and a second member of EchoStar's in-house legal department. (*Id.* ¶ 9.) Messrs. Bregman and Lyons repeated Finisar's accusation that EchoStar infringes the '505 patent and argued that EchoStar should accept the terms that Finisar would propose. (*See* Declaration of Kerry P.L. Miller ("Miller Decl.") ¶ 3.) Finisar next proposed a meeting between business representatives of Finisar and EchoStar. (D.I. 11 at Ex. H.) EchoStar rejected this proposal (*see* D.I. 11 at Ex. I; Miller Decl. ¶ 4), and Mr. Miller stated that any proposals that Finisar wished to make could be made to him (D.I. 11 at Ex. I).

2

On June 16, 2005, Ludmila Yamalova, Finisar's Associate General Counsel, sent a "Settlement Offer" to EchoStar. (*Id.* at Ex. J.) In the settlement offer, Finisar threatened that EchoStar would be subject to treble damages, prejudgment interest, and a permanent injunction if EchoStar did not accede to Finisar's terms:

> Finisar's research indicates that a royalty rate    **REDACTED**
> standard. We believe that, in this case, a higher rate is justified,
> given how critical the Finisar invention is to EchoStar's business.
> It is also clear from the factual circumstances that *a litigation
> claim would lie for willful patent infringement carrying with it
> the possibility of trebled damages and an award of prejudgment
> interest.* Furthermore, due to the enabling nature of the '505
> patent and EchoStar's predominant reliance on this technology,
> *EchoStar may be at risk of a permanent injunction.*
>
> Finisar, however, is willing to compromise its position and extend    **REDACTED**
> EchoStar a license offer for the '505 patent at a        for both
> past and future use. We believe that this is a significant concession
> from *the relief we would seek in a litigation scenario* and from
> what we believe to be *the true value of our case.*

(*Id.* (emphasis added).) Further, Finisar linked its threats against EchoStar to Finisar's suit in the Eastern District of Texas against DirecTV[1] for infringement of the '505 patent, stating that its suit against DirecTV evidenced Finisar's "belief in the strength of the '505 patent." (*Id.*) EchoStar did not accede to Finisar's threats and did not respond to Finisar's proposal. Negotiations broke down after Finisar's June 2005 settlement offer and the complaint in this action constitutes the next direct communication between the parties.

On June 23, 2006, Finisar won a jury verdict for $78.9 million against DirecTV. (*Id.* at Ex. K.) On June 26, 2006, Finisar issued a press release announcing the verdict. Finisar's Chairman of the Board, President, and CEO, Jerry Rawls, stated, "Intellectual property is an

---

[1] DirecTV and EchoStar's Dish Network are the leading providers of direct broadcast satellite television services in the United States.

important asset of our Company and *we are committed to protecting our intellectual property rights. ... As a result of this verdict, Finisar will continue its ongoing '505 patent licensing discussions with other companies operating data distribution networks.*" (*Id.*) There were not, however, any on-going licensing discussions between Finisar and EchoStar to continue and EchoStar reasonably understood Finisar's press release to threaten that, because EchoStar would not accede to Finisar's demands, Finisar would next sue EchoStar. EchoStar filed its complaint two weeks later (July 10, 2006). After EchoStar sued, Finisar attempted to open settlement negotiations (Declaration of Harold J. McElhinny ("McElhinny Decl.") ¶ 2), a fact it now tries to use in support of its motion.[2]

## IV. ARGUMENT

### A. The Standard

Courts employ a two-part test to determine whether an actual controversy exists between parties to a declaratory judgment action. "First, the defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant would initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the product or have prepared to produce that product." *Benitec Australia Ltd. v. Nucleonics, Inc.*, Civ. No. 04-0174, 2005 U.S. Dist. LEXIS 22008, *7-*8 (D. Del. Sept. 29, 2005) (Farnan, J.) (citation omitted). *See also Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 737 (Fed. Cir. 1988) ("Basically, the test requires two core elements: (1) acts of defendant indicating an intent to enforce its patent; and (2) acts of plaintiff that might subject it

---

[2] Comcast, another broadcaster, filed its own Declaratory Judgment action against Finisar on the '505 patent in the Northern District of California on July 7, 2006. EchoStar is not alone in anticipating litigation by Finisar.

4

or its customers to suit for patent infringement."). Only the first part of this test is at issue, as Finisar cannot and does not dispute that it accuses EchoStar of infringing the '505 patent.

    **B.    Finisar's Accusations that EchoStar Directly, Continuously, and Willfully Infringed the '505 Patent Necessarily Give Rise to a Justiciable Controversy**

The Supreme Court, the Federal Circuit and this Court have all held that an express charge of infringement gives rise to a case or controversy establishing jurisdiction under the Declaratory Judgment Act. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("If ... a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the Act.") (emphasis in original); *Arrowhead*, 846 F.2d at 736 (same); *Benitec Australia Ltd.*, 2005 U.S. Dist. LEXIS 22008 at *6 ("When a party has actually been charged with infringement of a patent, there is, necessarily, a case or controversy adequate to support jurisdiction of a counterclaim pursuant to the Declaratory Judgment Act.") (citation omitted). Here, Finisar accused EchoStar, in writing, of "continuing infringement" of the '505 patent, of "directly infringing" the '505 patent, and of willfully infringing the '505 patent. (D.I. 11 at Exs. C & J.) Finisar again accused EchoStar of infringement at the parties' March 24, 2005, meeting. (Miller Decl. ¶ 3.) A justiciable controversy, therefore, necessarily exists. "If defendant has expressly charged a current activity of the plaintiff as an infringement [like here], there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more." *Arrowhead*, 846 F.2d at 736.

    **C.    The Totality of the Circumstances Demonstrate that EchoStar had a Reasonable Apprehension of an Infringement Suit**

In the absence of an express charge of infringement, courts look to the totality of the circumstances to determine whether the plaintiff had a reasonable apprehension of an infringement suit. *See Arrowhead*, 846 F.2d at 736. Because Finisar expressly charged EchoStar

with directly, continuously, and willfully infringing the '505 patent the Court need not look to the totality of the circumstances to confirm that it has jurisdiction over the parties' dispute. In fact, an analysis of the totality of the circumstances only strengthens that conclusion, given the explicit threats of litigation that Finisar has made.

First, in its settlement offer, Finisar threatened that "a litigation claim would lie" against EchoStar "for willful patent infringement carrying with it the possibility of trebled damages," putting EchoStar "at risk of a permanent injunction." (D.I. 11 at Ex. J.) Finisar thus indicated its intent to sue EchoStar for infringement of the '505 patent if EchoStar did not accept Finisar's demands. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed.Cir.1996) ("[W]hen the patentee takes steps that create a reasonable apprehension that he will seek redress through the courts, the alleged infringer is not required to wait for the patentee to decide when and where to sue, but can take the initiative and seek declaratory relief."). Moreover, Finisar designated its settlement offer under Federal Rule of Evidence 408, confirming Finisar's view that it was settling a legal dispute, not negotiating a business relationship. *See* FED. R. EVID. 408 (pertaining to offers to compromise "a claim which was disputed as to either validity or amount"). And the extraordinary royalty rate that Finisar demanded from EchoStar for a non-exclusive license to the '505 patent confirmed the inevitability of litigation. *EMC Corp.*, 89 F.3d at 813 (holding that "the amount of Norand's licensing offer-$1.5 million plus two percent of sales for a nonexclusive license-was sufficiently large to make the prospect of ultimate litigation even more realistic").

Second, Finisar's first communication to EchoStar came from its outside counsel, Morgan Lewis, and Finisar repeatedly accused EchoStar of infringing the '505 patent through Morgan Lewis. This supports a finding of reasonable apprehension of suit. *See, e.g., Cargill,*

*Inc. v. Sears Petroleum & Transp. Corp.*, 02 Civ. 1396, 2002 U.S. Dist. LEXIS 20714, *10-*11 (S.D.N.Y. Oct. 25, 2002) (holding that a patent holder communicating through outside counsel supports a reasonable apprehension of suit).

Third, Finisar sued DirecTV, the other prominent satellite television services provider, for infringing the '505 patent and told EchoStar that the DirecTV suit demonstrated Finisar's belief in the strength of the '505 patent. Suits "against other manufacturers of similar products" support a finding of reasonable apprehension of suit, and EchoStar is the only prominent satellite television service provider that Finisar has not sued. *See C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 881 n.6 (Fed. Cir. 1983) (explaining that "lawsuits against other manufacturers of similar products" support a reasonable apprehension of suit). *See also Microsoft Corp. v. Commonwealth Scientific and Indust. Research Org.*, No. C-05-1894, 2005 U.S. Dist. LEXIS 42965, *19-*20 (N.D. Cal. Sept. 13, 2005) (holding that the defendant's suit against a third party "would certainly intensify Plaintiffs' concerns that they would be sued once they had declined, either affirmatively or passively, [the patent holder's] license offers") *Clay Paky v. Vari-Lite, Inc.*, 99 Civ. 11401, 2000 U.S. Dist. LEXIS 9802, *13 (S.D.N.Y. July 12, 2000) (finding defendant's reference to a lawsuit filed against a third party to be "in effect a statement to the plaintiff to take notice that it is next on the list") (citation omitted).

Fourth, Finisar obtained a $78.9 million jury verdict against DirecTV, and then publicly announced that Finisar is "committed to protecting our intellectual property rights." (D.I. 11 at Ex. K.) Finisar further stated that "[a]s a result of this verdict" it would "continue its ongoing '505 patent licensing discussions." (*Id.*) Finisar thus told EchoStar that it had obtained a huge verdict against EchoStar's direct competitor, would take action as a result of that verdict, and would protect its intellectual property rights. Given that there were no ongoing discussions

between Finisar and EchoStar to continue and given Finisar's threats of litigation and accusations of infringement against EchoStar, the only reasonable conclusion available to EchoStar was that it was next on Finisar's list. *See EMC Corp.*, 89 F.3d at 811 (explaining that "subtler conduct ... 'sufficient to indicate an intent [on the part of the patentee] to enforce its patent'" suffices to establish a reasonable apprehension of suit) (citation omitted).

Based on the totality of the circumstances, EchoStar clearly had a reasonable apprehension of imminent suit. Like the defendant in *EMC Corp.*, in which the Federal Circuit found a justiciable controversy to exist, Finisar initiated contact with EchoStar, involved its outside counsel in negotiations, and made an extraordinary licensing offer. *Id.* at 812-13. Further, unlike in *EMC Corp.*, it is undisputed that Finisar repeatedly accused EchoStar of infringement. When Finisar obtained a jury verdict against DirecTV for $78.9 million and then publicly announced that it would protect its intellectual property rights (D.I. 11 at Ex. K), EchoStar's reasonable apprehension of imminent suit intensified. Thus, *Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1334 (Fed. Cir. 2005), upon which Finisar relies (D.I. 10, Finisar's Opening Br. in Supp. of its Mot. to Dismiss Pls.' Declaratory J. Compl., at 5), supports the conclusion that the Court has jurisdiction over the parties' dispute because EchoStar is able "to demonstrate a reasonable apprehension of imminent suit." *Teva*, 395 F.3d at 1334.[3] Indeed, "[i]t is difficult, if not impossible, to imagine how a prudent [EchoStar] executive ... could resist the onset of a most reasonable apprehension that [EchoStar] is next." *Arrowhead*, 846 F.2d at 737.

---

[3] The Federal Circuit has since *Teva* reiterated that "the purpose of the Declaratory Judgment Act was to enable a person who is at legal risk because of an unresolved dispute to obtain judicial resolution of that dispute without having to await the commencement of a legal action by the patentee; to 'clear the air.'" *Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006) (quoting *BP Chems.*, 4 F.3d at 977).

8

Finisar cannot dispute that a reasonable apprehension of imminent suit existed at the time that EchoStar filed its Complaint, so Finisar argues that it "has not done anything to cause anyone to reasonably believe that they might be sued on the '505 patent until at least all appeals in the DirecTV case were exhausted." (D.I. 10 at 5.) Finisar ignores that its litigation counsel proposed that the parties stipulate to a stay of this action pending the appeal in the DirecTV litigation only after EchoStar had filed its complaint.[4] (McElhinny Decl. ¶ 3.) *See Arrowhead*, 846 F.2d at 734 n.2 ("The presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed.").

Further, in making this statement, Finisar admits that it plans to sue EchoStar on the '505 patent. The law does not require EchoStar to wait until it is convenient for Finisar to sue EchoStar. Rather, as the Federal Circuit has repeatedly explained, "[t]he purpose of the declaratory judgment action is to allow a party who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1354 (Fed. Cir. 2004) (internal quotation marks and citation omitted). *See also, e.g., EMC Corp.*, 89 F.3d at 811 ("the alleged infringer is not required to wait for the patentee to decide when and where to sue, but can take the initiative and seek declaratory relief"); *BP Chems. Ltd. v. Union Carbide Corp.*, 4. F.3d 975, 977 (Fed. Cir. 1993) (the Declaratory Judgment Act "accommodates the practical situation wherein the interests of one side to the dispute may be served by delay in taking legal action").

---

[4] If Finisar argues in reply that its offer to stay this action strips the Court of jurisdiction, it will be wrong. *See United Sweetener USA, Inc. v. The Nutrasweet Co.*, 760 F. Supp. 400, 407 (D. Del. 1991) ("We believe that apprehension that is reasonable when a complaint is filed remains reasonable unless and until the threat of an infringement action is rendered all but nonexistent by later events.").

Finisar accused EchoStar of infringing the '505 patent and placed EchoStar in reasonable apprehension of imminent suit. Finisar does not have a right to wait until the Federal Circuit rules on the DirecTV appeal before EchoStar can obtain a resolution of the parties' dispute. *See Capo, Inc.*, 387 F.3d at 1357 (rejecting defendant's argument that a justiciable dispute did not exist because defendant preferred to sue only after it obtained additional patents). Particularly given Finisar's refusal to toll the accrual of damages, if any, during the pendency of the DirecTV appeal (McElhinny Decl. ¶ 4), the Court should adjudicate this dispute now. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) ("In promulgating the Declaratory Judgment Act, Congress intended to prevent avoidable damages from being incurred by a person uncertain of his rights and threatened with damage by delayed adjudication.") (citation omitted). *See also Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., Inc.*, Civ. No. 92-351, 26 U.S.P.Q.2d (BNA) 1238, 1239 (D. Del. 1992) (Farnan, J.) (denying motion to dismiss and stating that "it appears from Defendant's Reply Brief that AERT is not saying that it will not sue, but that it is unhappy with Mobil picking the time and place of the suit").

D.   **Licensing Negotiations Ended Long Before EchoStar Brought Suit**

Finisar's argument that no justiciable controversy existed when EchoStar filed its complaint because the parties were engaged in licensing discussions (*see* D.I. 10 at 4-5) is incorrect both factually and legally. As Finisar correctly acknowledges, "the presence or absence of a case or controversy is based on facts at the time the complaint was filed" (*id.* at 4 (quoting *MedImmune, Inc. v. Centacor, Inc.*, 409 F.3d 1376, 1381 (Fed. Cir. 2005), *cert. granted*, 126 S.Ct. 1329 (Feb. 21, 2006)). The parties' had not communicated *in over a year* before EchoStar filed suit. Finisar glosses over this important fact by stating simply that the parties "resumed their discussions" after Finisar issued its June 26, 2006, press release. (D.I. 10 at 3.) That Finisar appears to have attempted to resurrect settlement discussions as a tactic to try

10

to bolster its motion cannot change the fact that the parties were not engaged in settlement talks when EchoStar brought suit.

Second, Finisar's reliance on *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051 (Fed. Cir. 1995), is misplaced. In *Phillips*, the defendant never charged the plaintiff with infringing its patent. When the plaintiff filed suit, the defendant was waiting for sales and pricing information to enable it to make to make a licensing proposal. *Id.* at 1052. *Phillips* is thus inapplicable,[5] as Finisar repeatedly charged EchoStar with infringing the '505 patent, threatened EchoStar with suit, made an unacceptable settlement proposal to EchoStar, and negotiations ended. *See Microsoft Corp.*, 2005 U.S. Dist. LEXIS 42965 at *17-*18 (distinguishing *Phillips* because licensing terms had been discussed and negotiations had "passively" terminated, though "it might have been (and still might be) possible to revive negotiations"); *Ivoclar Vivadent, Inc. v. Hasel*, Case No. 02-CV-0316E, 2003 U.S. Dist. LEXIS 12611, *21-*23 (W.D.N.Y. June 30, 2003) (distinguishing *Phillips* despite the fact that plaintiff filed suit three days before a planned meeting to discuss licensing terms because defendant had "communicated implicit threats of litigation").

Finisar repeatedly accused EchoStar of infringing the '505 patent and Finisar's recent settlement communications do not void the legal effect of its conduct. *See Clay Paky*, 2000 U.S. Dist. LEXIS 9802 at *14-*15 (holding defendant's reliance on *Phillips* to be "misplaced" and

---

[5] Similarly, in *Livorsi Marine, Inc. v. Nordskog Publ'g, Inc.*, 268 F. Supp. 2d 994 (N.D. Ill. 2003), cited by Finisar (D.I. 10 at 4-5), the court found that a reasonable apprehension of suit did not exist where plaintiff and defendant *agreed* licensing negotiations had not broken down, plaintiff waited three months to serve its complaint on defendant while the parties continued negotiations, and defendant had not charged plaintiff with patent infringement. *See Livorsi Marine*, 268 F. Supp. 2d at 998-99.

11

stating, "Just because the parties proceeded to initiate negotiations does not meant that the reasonable apprehension of litigation was ever removed").

### E. The Court Should Exercise Its Discretion to Resolve the Dispute between EchoStar and Finisar

The Court should exercise its discretion to resolve this dispute. The Federal Circuit has held that "[t]here must be well-founded reasons for declining to entertain a declaratory judgment action" and that "[a]bsent such reasons ... the accused infringer has the right to resolve the dispute." *Capo, Inc.*, 387 F.3d at 1355 (citations and internal citations omitted). Finisar has directly charged that EchoStar infringes the '505 patent, an actual controversy exists, and EchoStar has the right to resolve the parties' dispute. No well-founded reasons exist for the Court to decline to entertain this case.

Finisar's contrary argument, that EchoStar filed its complaint to enhance its negotiating leverage in purportedly on-going licensing negotiations (D.I. 10 at 6), again fails. The parties were not engaged in licensing negotiations when EchoStar filed suit. *EMC Corp.*, upon which Finisar relies (*id.*), does not stand for the proposition that a district court should, or even may, dismiss a declaratory judgment action whenever the parties had at one time engaged in licensing negotiations. Rather, the *EMC* panel held that the district court had discretion to dismiss an action brought by a plaintiff who negotiated "over the sale or licensing" of the patent up until filing the complaint, filed the complaint only after learning that the defendant had entered into negotiations with the plaintiff's competitors, and informed the defendant after filing that "they just thought it was in their interest to protect themselves first and continue discussions." *EMC Corp.*, 89 F.3d at 815. Under such circumstances, the court held, a district court could find that the plaintiff "could abuse the declaratory judgment device to obtain a more favorable bargaining position in its ongoing negotiations with the patentee and also to undermine the value of the

patent so as to impede its sale or licensing to a third party." *Id.* at 814 & 816.[6] Finisar has not identified any reason that justifies the Court not resolving the current dispute. No such reason exists.

---

[6] The district court cases that Finisar cites likewise do not support its argument. *See NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642 (D. Or. 1994) (granting motion to dismiss where plaintiff misled defendant by filing suit *one day* after sending a settlement offer to the defendant and where plaintiff filed a misleading declaration with the court); *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144 (D. Mass. 1993) (granting motion to transfer where the plaintiff broke its promise to explain how it did not infringe by filing suit); *United Sweetener*, 766 F. Supp. at 218-219 (staying suit pending the completion of a reexamination proceeding and, in the same order, lifting the stay before an appeal of the PTO's decision); *Bausch & Lomb Inc. v. Alcide Corp.*, 684 F. Supp. 1155, 1159-1160 (W.D.N.Y. 1987) (transferring trademark declaratory judgment action based on a "balance of the conveniences" and because the plaintiff filed its complaint while the defendant waited "in good faith" for plaintiff's response to a letter defendant had sent one week earlier).

13

## V. CONCLUSION

A justiciable controversy exists between EchoStar and Finisar. Finisar's direct charges of infringement against EchoStar necessarily establish the existence of that controversy as a matter of law and Finisar's conduct as a whole confirms the existence of that controversy. EchoStar has the right to resolve its dispute with Finisar and the Court should accord EchoStar that right. Finisar's motion to dismiss should be denied.

Respectfully submitted,

DATED: November 7, 2004

OF COUNSEL:

Harold J. McElhinny
Rachel Krevans
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
(415) 268-7000

-and-

William J. Kuhne
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
(212) 468-8000

Josy W. Ingersoll (No. 1088)
Richard H. Morse (No. 531)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6672

Attorneys for Plaintiffs EchoStar Satellite LLC, EchoStar Technologies Corporation, and NagraStar LLC

14

REDACTED VERSION – PUBLICLY FILED

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that on November 7, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Arthur G. Connolly, III , Esquire
> Connolly, Bove, Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> Wilmington, DE  19801

I further certify that on November 7, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

> Thomas B. Kenworthy, Esquire [tkenworthy@morganlewis.com]
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA 19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Josy W. Ingersoll (No. 1088)
Richard H. Morse (No. 531)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
*jingersoll@ycst.com*
*rmorse@ycst.com*

Attorneys for Plaintiffs

REDACTED VERSION – PUBLICLY FILED

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that on November 13, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>  Arthur G. Connolly, III , Esquire
>  Connolly, Bove, Lodge & Hutz LLP
>  The Nemours Building
>  1007 North Orange Street
>  Wilmington, DE  19801

I further certify that on November 13, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

>  Thomas B. Kenworthy, Esquire [tkenworthy@morganlewis.com]
>  Morgan, Lewis & Bockius LLP
>  1701 Market Street
>  Philadelphia, PA 19103

>  YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>  /s/ Josy W. Ingersoll
>  Josy W. Ingersoll (No. 1088)
>  Richard H. Morse (No. 531)
>  The Brandywine Building
>  1000 West Street, 17th Floor
>  Wilmington, Delaware  19801
>  (302) 571-6600
>  *jingersoll@ycst.com*
>  *rmorse@ycst.com*
>
>  Attorneys for Plaintiffs