# YOUNG CONAWAY STARGATT & TAYLOR, LLP

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

JOSY W. INGERSOLL (NO. 1088)
DIRECT DIAL: 302-571-6672
DIRECT FAX:  302-576-3301
jingersoll@ycst.com

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

November 13, 2006

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 King Street
Wilmington, DE 19801

Re:    EchoStar Satellite LLC, et al. v. Finisar Corp.,
Civil Action No. 06-425-JJF

Dear Judge Farnan:

Finisar Corporation's motion to dismiss Comcast's complaint for a declaratory judgment on United States Patent No. 5,404,505, which Plaintiffs mentioned in their Answering Brief in Opposition to Defendant Finisar Corporation's Motion to Dismiss (D.I. 13 at 4 n.2), has been denied. *See Comcast Cable Commc'ns Corp. v. Finisar Corp.*, No. C 06-04206 WHA (N.D. Cal. Nov. 9, 2006). Pursuant to Local Rule 7.1.2(c), Plaintiffs submit for the Court's consideration the November 9, 2006, Order of the United States District Court for the Northern District of California rejecting Finisar's motion to dismiss Comcast's complaint.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)

JWI:cg
Enclosure

cc:    Clerk of the Court (by hand delivery and e-mail)
       Arthur G. Connolly, III , Esquire (by e-filing and e-mail)
       Thomas B. Kenworthy, Esquire (by e-mail)\
       William J. Kuhne, Esquire (by e-mail)

# TAB 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

COMCAST CABLE COMMUNICATIONS
CORPORATION,

        Plaintiff,

  v.

FINISAR CORPORATION,

        Defendant.

_____/

No. C 06-04206 WHA

**ORDER DENYING
DEFENDANT'S
MOTION TO DISMISS**

## INTRODUCTION

In this action for a declaration of patent invalidity and noninfringement, defendant Finisar Corporation moves to dismiss plaintiff Comcast Cable Communications Corporation's action on the ground that this Court lacks subject-matter jurisdiction. This order finds that plaintiff has a reasonable apprehension of suit by defendant Finisar and that it would be inappropriate to decline jurisdiction. Accordingly, defendant's motion is **DENIED**.

## STATEMENT

U.S. Patent No. 5,404,505 ("the '505 patent"), entitled "System for Scheduling Transmission of Indexed and Requested Database Tiers On Demand At Varying Repetition Rates," concerns the transmittal and broadcast of digital information to a wide base of subscribers. The patent is owned by defendant Finisar.

Plaintiff Comcast was initially approached by defendant Finisar in February 2005. An attorney representing Finisar, John T. Gallagher, sent a letter to Comcast's general counsel

**United States District Court**
For the Northern District of California

1   advising that Finisar was the owner of the '505 patent, Finisar was prepared "to take all steps

2   necessary under U.S. patent law to protect its proprietary rights," and that Comcast should

3   consider the patent closely (Exh. 1). Comcast replied approximately one week later via a short

4   letter stating that it would review Finisar's patent and would reply only once it had done so.

5   Four months later, Mr. Gallagher sent another letter to Comcast alerting Comcast that Finisar

6   was "prepared to meet" and "discuss the '505 patent and its relation to your company's

7   operational systems" (Exh. 3). About seven weeks later, Comcast replied to this second letter

8   from Finisar. Comcast's second reply was practically identical to its first, stating that it was

9   reviewing the '505 patent and would be in touch once it completed its review.

10          There were no subsequent communications until June 2006. In June 2006, defendant

11  Finisar sent plaintiff Comcast a third letter. This letter reiterated earlier offers to extend a

12  license to Comcast but it went a step further. The June 2006 letter directed the reader to a

13  recent jury verdict in a suit filed by Finisar "finding the '505 patent valid and infringed by

14  DirecTV" (Exh. 5). The letter also advised that the jury awarded approximately seventy-nine

15  million dollars in past damages in *Finisar Corp. v. DirecTV Group Inc.* Nine days later, on

16  July 7, 2006, plaintiff Comcast filed this declaratory-judgment action.

17          In its complaint, plaintiff Comcast seeks a declaratory judgment of noninfringement and

18  a declaratory judgment preventing defendant Finisar from claiming any construction of the

19  '505 patent that would cover plaintiff's activities. Plaintiff additionally alleges that defendant

20  Finisar's patent is invalid and seeks a declaratory judgment to that effect. Lastly, plaintiff

21  Comcast seeks an injunction against defendant Finisar.

22          Defendant Finisar now moves to dismiss plaintiff Comcast's claim arguing that there is

23  no federal subject-matter jurisdiction, allegedly because plaintiff Comcast has no reasonable

24  apprehension of suit.

25                                          **ANALYSIS**

26  1.      **THERE IS AN ACTUAL CONTROVERSY.**

27          In order to bring an action seeking declaratory judgment, an actual case or controversy

28  must exist as the Declaratory Judgment Act requires. 28 U.S.C. 2201; *Shell Oil Co. v. Amoco*

**United States District Court**
For the Northern District of California

1    *Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227,

2    239–41 (1937)).  The Act's requirement of an actual controversy parallels the requirements of

3    Article III of the Constitution.  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996).

4    The Federal Circuit has established a two-part inquiry to determine whether or not there is an

5    actual case or controversy in a patent action:

6                    Under that test, there must be both (1) an explicit threat or other
                     action by the patentee which creates a *reasonable apprehension*
7                    on the part of the declaratory judgment plaintiff that it will face an
                     infringement suit, and (2) *present activity* by the declaratory
8                    judgment plaintiff *which could constitute infringement*, or
                     concrete steps taken by the declaratory judgment plaintiff with the
9                    intent to conduct such activity.

10    *Teva Pharms. USA, Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1330 (Fed. Cir. 2005) (emphasis added).

11    The test is an objective one, and plaintiff bears the burden to establish its reasonable

12    apprehension of suit by a preponderance of the evidence.  *Shell Oil*, 940 F.2d at 888.  In order

13    for an actual controversy to be present, both prongs must be satisfied.  "The first prong looks to

14    the patentholder's conduct, and the second prong looks to the potential infringer's conduct."

15    *Sierra Applied Scis., Inc. v. Advanced Energy Indus.*, 363 F.3d 1361, 1373 (Fed. Cir. 2004).

16                    **A.    Reasonable Apprehension of Suit.**

17            The reasonable apprehension of suit inquiry is an objective one that asks whether

18    the alleged infringer reasonably believed the patentee would sue for infringement.

19    Reasonable apprehension of suit does not require any magic words.  "[S]uch apprehension

20    may be induced by subtler conduct if that conduct rises to a level sufficient to indicate an intent

21    on the part of the patentee to enforce its patent."  An offer of license alone or a proposal for

22    negotiations is insufficient to establish a reasonable apprehension of suit; the threat of

23    enforcement is the core of the patentee's bargaining power.  A reasonable apprehension of suit

24    must necessarily involve more than proposed negotiations but does not require an express

25    charge that patentee plans to sue for infringement of its patent.  *EMC Corp.*, 89 F.3d at 811.[1]

26    _____

27        [1] Like *EMC Corp.*, the third factor discussed in that decision is not applicable here as it is reserved for
       cases where "it was the declaratory judgment plaintiff, not the patentee-defendant, who first approached the
28    opposing party."  *EMC Corp.*, 89 F.3d at 812.

1    The crucial inquiry here turns on whether the conduct of defendant Finisar was the

2    *subtler conduct* the Federal Circuit referred to in *EMC Corp.* When there is no express charge

3    of infringement, the court must look to the "totality of the circumstances." *Shell Oil*, 970 F.2d

4    at 888. Here, defendant Finisar was involved in litigation over this *very same* patent, and even

5    directed plaintiff Comcast to look at the jury verdict in *Finisar Corp. v. DirecTV Group Inc.*

6    It was not until defendant Finisar directed plaintiff Comcast to this verdict that plaintiff

7    Comcast filed suit. In *Finisar Corp. v. DirecTV Group Inc.*, a jury had already found the

8    '505 patent valid and infringed. The letter also pointed its reader to the staggering amount of

9    damages in the verdict. This information was sufficient to place plaintiff in reasonable

10    apprehension of suit. While Finisar should not be punished for what it did not say in its letters,

11    it also should not be rewarded for carefully phrased letters that do not include the fatal words

12    regarding patent infringement but imply the same litigious message. Furthermore, as examined

13    in *EMC Corp.*, Finisar is not a "quiescent patent owner." Finisar instigated these interactions

14    with its letters, and has on more than one occasion pursued lawsuits to protect its patents.

15    Rather, this is a situation for a declaratory-judgment action as unwanted litigation is not being

16    forced upon an inactive patent owner. *EMC Corp.*, 89 F.3d at 812.

17    Furthermore, defendant Finisar touted its enforcement strategy in a press release dated

18    April 6, 2005 (Opp. Exh. A). Finisar's press release stated that "Finisar repeatedly contacted

19    DirecTV about its infringement of the '505 patent throughout 2004 and early 2005, indicating

20    its willingness to engage DirecTV in licensing discussions, but Finisar's requests to begin a

21    dialog on the matter were not successful." Plaintiff Comcast saw the writing on the wall.

22    Comcast was reasonably afraid that its failure would result in similar proceedings against it.

23    In light of these circumstances, plaintiff Comcast has a reasonable apprehension that defendant

24    Finisar will seek to enforce the '505 patent in an infringement suit.[2]

25

26    [2] Movant seeks to rely on *Fresenius USA, Inc. v. Transonic Systems, Inc.*, 207 F.Supp. 2d 1009 (N.D.

27    Cal. 2001) in its argument that plaintiff did not have a reasonable apprehension of suit, and that the letters were simply invitations to negotiate. In addition to not being controlling, *Fresenius* involves different facts where there were ongoing negotiations and "[t]he single letter from Transonic was insufficient to create an actual

28    controversy." *Id.* at 1011.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1    The parties dispute whether the pending Supreme Court case *Medimmune, Inc. v.*

2    *Genetench, Inc.* will be dispositive of this motion.  In this Court's judgment, a relaxation of the

3    Federal Circuit test by the Supreme Court would only strengthen the holding herein.  The suit is

4    proper even under the Federal Circuit's current test.

5                    **B.    Present Infringement.**

6           "All that the second prong requires . . . is a showing that plaintiff's conduct evidence[s]

7    a real interest in an activity that *may*, potentially, be enjoined."  *Arrowhead Indus. Water, Inc. v.*

8    *Ecolochem, Inc.*, 846 F.2d 731, 738 (Fed. Cir. 1988).  Activity inducing infringement is

9    sufficient to satisfy this prong.  *See Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1485

10   (Fed. Cir. 1998).

11          Here, plaintiff Comcast is involved in media communications.  Defendant's patent

12   involves the transmittal and broadcast of digital information.  The second prong has been

13   satisfied because plaintiff is involved in activity that could constitute infringement, especially in

14   light of the allegedly broad construction of the '505 patent in the DirecTV jury verdict.

15                   **2.    THIS COURT WILL NOT ABSTAIN.**

16          Because this Court finds that there is an actual controversy, it must decide whether it is

17   appropriate to decline jurisdiction here.  In deciding whether to abstain from exercising

18   jurisdiction, "[i]t is appropriate . . . for a district court to examine whether hearing the

19   declaratory judgment action would serve the objectives for which the Declaratory Judgment Act

20   was created."  *EMC Corp. v. Norand Corp.*, 89 F.3d at 814.  While declining jurisdiction is

21   proper when extrajudicial dispute resolution can be achieved, the Act was created so that

22   "competitors were no longer restricted to an *in terrorem* choice between the incurrence of a

23   growing potential liability for patent infringement and abandonment of their enterprises; they

24   could clear the air by suing for a judgment that would settle the conflict of interests."  *Id.* at 815

25   (citing *Arrowhead*, 846 F.2d at 735).  "The purpose of the Act is to enable a person who is

26   reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that

27   dispute without having to await the commencement of legal action by the other side.

28   It accommodates the practical situation wherein the interests of one side to the dispute may be

5

1    served by delay in taking legal action." *Ibid.* (citing *BP Chems. v. Union Carbide Corp.*, 4 F.3d

2    975, 977 (Fed. Cir. 1993)).

3                                     **CONCLUSION**

4         For the reasons cited above, defendant's motion to dismiss is **DENIED**.

5

6         **IT IS SO ORDERED.**

7

8    Dated:  November 9, 2006.

9                                              WILLIAM ALSUP
                                               UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

6