# YOUNG CONAWAY STARGATT & TAYLOR, LLP

JOSY W. INGERSOLL (NO. 1088)
DIRECT DIAL: 302-571-6672
DIRECT FAX:  302-576-3301
jingersoll@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

January 22, 2007

**BY E-FILING**

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 King Street
Wilmington, DE 19801

Re: EchoStar Satellite LLC, et al. v. Finisar Corp.,
Civil Action No. 06-425-JJF

Dear Judge Farnan:

     Plaintiffs hereby submit pursuant to Local Rule 7.1.2(c) the December 18, 2006, opinion of the Federal Circuit in *Plumtree Software, Inc. v. Datamize, LLC*, No. 06-1017, ___ F.3d ___, 2006 WL 3703180 (Fed. Cir. Dec. 18, 2006), for the Court's consideration in deciding Finisar Corporation's Motion to Dismiss Plaintiffs' Declaratory Judgment Complaint [D.I. 9]. The Federal Circuit's discussion of the circumstances giving rise to a reasonable apprehension of suit and under what circumstances a reasonable apprehension of suit may dissipate may be helpful to this Court. *See id.* at *4-*5.

Respectfully submitted,

*/s/ Josy W. Ingersoll*

Josy W. Ingersoll (No. 1088)

JWI:cg
Enclosure

cc: Clerk of the Court (by hand delivery and e-filing)
    Arthur G. Connolly, III, Esquire (by e-filing and e-mail)
    Thomas B. Kenworthy, Esquire (by e-mail)\
    William J. Kuhne, Esquire (by e-mail)

DB02:5725936.1

065360.1001

Westlaw.

--- F.3d ----
--- F.3d ----, 2006 WL 3703180 (C.A.Fed. (Cal.)), 81 U.S.P.Q.2d 1251
(Cite as: --- F.3d ----)

Page 1

**Briefs and Other Related Documents**
Plumtree Software, Inc. v. Datamize, LLCC.A.Fed. (Cal.),2006.Only the Westlaw citation is currently available.
United States Court of Appeals,Federal Circuit.
PLUMTREE SOFTWARE, INC., Plaintiff-Appellee,
v.
DATAMIZE, LLC, Defendant-Appellant.
No. 06-1017.

Dec. 18, 2006.

**Background:** Computer software company that produced corporate portal software brought declaratory judgment action in which it challenged validity of patents for authoring system used to create other computer programs. The United States District Court for the Northern District of California, Vaughn R. Walker, Chief Judge, 2005 WL 2206495, denied patentee's motion to dismiss for lack of subject matter jurisdiction and granted summary judgment for company. Patentee appealed.

**Holdings:** The Court of Appeals, Dyk, Circuit Judge, held that:

(1) company had reasonable apprehension that it faced patent infringement action by patentee;

(2) patentee received valid consideration for purposes of claim that patents were invalid under statutory on-sale bar;

(3) factual issues precluded summary judgment for company on claim that patents were invalid under statutory on-sale bar under theory that, before critical date, patentee made commercial offer to perform patented method; and

(4) factual issues precluded summary judgment for company on claim that patents were invalid under statutory on-sale bar under theory that patentee in fact performed each of steps of patented process before critical date pursuant to contract.

Vacated and remanded.

**[1] Federal Courts** 170B ⚖0

170B Federal Courts
Determination of whether Article III jurisdiction exists is a question of law reviewed without deference; however, the underlying factual findings are reviewed for clear error. U.S.C.A.Const.Art. 3, § 2, cl. 1.

**[2] Declaratory Judgment** 118A ⚖0

118A Declaratory Judgment
A declaratory judgment action may be brought where there is an actual controversy between interested parties. 28 U.S.C.A. § 2201.

**[3] Declaratory Judgment** 118A ⚖0

118A Declaratory Judgment
Under two-part test used to determine whether an actual controversy exists to support declaratory judgment action to determine patent infringement, there must be both (1) an explicit threat or other action by patentee which creates a reasonable apprehension on the part of declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. 28 U.S.C.A. § 2201.

**[4] Declaratory Judgment** 118A ⚖0

118A Declaratory Judgment
Computer software company had reasonable apprehension that it faced patent infringement action by patentee holding patents for authoring system used to create other computer programs, for purposes of determining whether actual controversy existed to support company's declaratory judgment action, given that patentee had previously sued company for infringement of parent patent, which described similar technology and shared common specification with patents in dispute in declaratory judgment action, and that patentee subsequently sued other defendants for alleged infringement of disputed patents and indicated, in that case, its belief that company was infringing those patents, thereby engaging in course of conduct showing a willingness to protect technology, notwithstanding patentee's contention that passage of time between actions dissipated any reasonable apprehension. 28 U.S.C.A.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3703180 (C.A.Fed. (Cal.)), 81 U.S.P.Q.2d 1251
(Cite as: --- F.3d ----)

Page 2

§ 2201.

[5] **Declaratory Judgment** 118A ⚷0

118A Declaratory Judgment
Court looks to the totality of the circumstances in determining whether conduct creates reasonable apprehension of patent infringement action for purposes of determining whether actual controversy exists to support declaratory judgment action. 28 U.S.C.A. § 2201.

[6] **Declaratory Judgment** 118A ⚷0

118A Declaratory Judgment
When defendant in declaratory judgment action to determine patent infringement does not sign covenant not to sue, reasonable apprehension supporting existence of requisite actual controversy may only be eliminated in narrow circumstances, in that patent holder could otherwise attempt extra-judicial patent enforcement with scare-and-run tactics that the Declaratory Judgment Act was intended to forestall. 28 U.S.C.A. § 2201.

[7] **Patents** 291 ⚷0

291 Patents
Whether invention was on sale within meaning of statute invalidating patent for invention that was on sale in United States more than one year prior to date of patent application is question of law reviewed without deference. 35 U.S.C.A. § 102(b).

[8] **Patents** 291 ⚷0

291 Patents
Claimed invention is considered to be "on sale," for purposes of statutory on-sale bar, if invention is sold or offered for sale more than one year before filing date of patent application. 35 U.S.C.A. § 102(b).

[9] **Patents** 291 ⚷0

291 Patents
Under test for determining whether there was a sale or offer for sale of claimed invention, for purposes of statutory on-sale bar, product must be the subject of a commercial sale or offer for sale, and invention must be ready for patenting, a condition met by proof of reduction to practice before critical date. 35 U.S.C.A. § 102(b).

[10] **Patents** 291 ⚷0

291 Patents
In the context of on-sale bar doctrine, invalidating patent for invention that was on sale more than one year before patent application date, commercial sale or offer for sale of claimed invention necessarily involves consideration. 35 U.S.C.A. § 102(b); Restatement (Second) of Contracts § 71.

[11] **Patents** 291 ⚷0

291 Patents
Patentee received valid consideration for purposes of claim that invention underlying patents for authoring system used to create other computer programs was on sale prior to one year preceding patent application date, making patents invalid under statutory on-sale bar, when, in exchange for patentee's agreement to provide hardware/software package necessary to produce interactive touch screen information system at trade show, trade show sponsor awarded patentee floor space at show and waived $10,000 sponsorship fee normally charged to show participants. 35 U.S.C.A. § 102(b); Restatement (Second) of Contracts § 71.

[12] **Federal Civil Procedure** 170A ⚷0

170A Federal Civil Procedure
Material issues of fact existed as to whether agreement between trade show sponsor and patentee holding patents for authoring system used to create other computer programs required patentee to perform patented method of creating kiosk system by obligating patentee to provide hardware/software package necessary to produce interactive touch screen information system at trade show, precluding summary judgment for software company on its claim that patents were invalid under statutory on-sale bar under theory that, before critical date, patentee made commercial offer to perform patented method. 35 U.S.C.A. § 102(b).

[13] **Patents** 291 ⚷0

291 Patents
For purposes of commercial sale element of claim that patent is invalid under statutory on-sale bar, a "commercial offer" is one which the other party could make into a binding contract by simple acceptance, assuming consideration; under this standard, the offeror must be legally bound to perform the patented method if the offer is accepted. 35 U.S.C.A. § 102(b).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[14] Patents 291 ⇐0

291 Patents
Federal common law governs issue of whether there has been a commercial offer for sale for purposes of commercial sale element of claim that patent is invalid under statutory on-sale bar. 35 U.S.C.A. § 102(b).

[15] Federal Civil Procedure 170A ⇐0

170A Federal Civil Procedure
Material issues of fact existed as to whether patentee actually performed all of patented method steps before critical date pursuant to its contract with trade show sponsor to provide hardware/software package necessary to produce interactive touch screen information system at trade show, precluding summary judgment for software company on its claim that patents, for authoring system to create other computer programs, were invalid under statutory on-sale bar based upon theory that patentee in fact performed each of steps of patented process before critical date pursuant to contract. 35 U.S.C.A. § 102(b).

[16] Patents 291 ⇐0

291 Patents
Performing the steps of a patented method for a commercial purpose is an attempt to profit from the commercial use of an invention, such that performing the patented method for commercial purposes before the critical date constitutes a sale for purposes of claim that patent is invalid under statutory on-sale bar. 35 U.S.C.A. § 102(b).

Patents 291 ⇐328(2)

291 Patents
   291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(2) k. Original Utility. Most Cited Cases

Patents 291 ⇐328(2)

291 Patents
   291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(2) k. Original Utility. Most Cited Cases
6,014,137. Recognized as Invalid.

6,460,040, 6,658,418. Cited.

Appealed from United States District Court for the Northern District of California, Chief Judge Vaughn R. Walker.

Michael B. Levin, Wilson Sonsini Goodrich & Rosati, of Palo Alto, California, argued for plaintiff-appellee. With him on the brief were David H. Kramer, Christopher R. Parry and Bart E. Volkmer. Of counsel was Michael A. Ladra.
Theodore Stevenson, III, McKool Smith, P.C., of Dallas, Texas, argued for defendant-appellant. With him on the brief were Douglas A. Cawley and Garret W. Chambers.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and DYK, Circuit Judge.
DYK, Circuit Judge.
*1 Plumtree Software, Inc. ("Plumtree") filed this declaratory judgment action against Datamize, LLC ("Datamize") in the United States District Court for the Northern District of California.[FN1] The district court denied Datamize's motion to dismiss for lack of subject matter jurisdiction and granted summary judgment in favor of Plumtree on the ground that Datamize's patents were invalid under the on sale bar doctrine, 35 U.S.C. § 102(b). Datamize now appeals. We sustain the district court's jurisdictional ruling, but vacate and remand for further proceedings on the merits.

BACKGROUND

I

This case involves two Datamize patents, U.S. Patent Nos. 6,460,040 ("040 patent") and 6,658,418 ("418 patent"). Datamize principal Kevin Burns is the named inventor of the patents, which were continuations of his U.S. Patent No. 6,014,137 ("137 patent"). The patents are entitled "Authoring System for Computer-based Information Delivery System" and share a common specification.

The patented invention is a computer program that is used to create other computer programs (an "authoring tool"). The invention encompasses both the method of creating the computer program and the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

software for creating the computer program. The 040 patent contains method claims, and the 418 patent is asserted to contain both method and apparatus claims. The authoring tool may be used to create customized kiosks. As an example, the patents explain the authoring tool might be used to create electronic kiosks used at ski resorts to provide information to customers about ski conditions, local hotels, and restaurants through a touch screen or key pad. The patented invention is not the kiosk itself, but is the software for, and the method of, creating the kiosk.[FN2]

Plumtree is a computer software company that produces "corporate portal" software. The corporate portal is web-based software that brings together various applications and information into a customized desktop screen that employees of an organization can separately access. Plumtree primarily markets its corporate portal software to companies that want to organize their corporate intranet sites.

II

This declaratory judgment action brought by Plumtree concerning the 040 and 418 patents is not the first lawsuit between Datamize and Plumtree. On May 17, 2002, Datamize filed an infringement suit against Plumtree in the United States District Court for the District of Montana alleging infringement of the parent 137 patent ("Montana action"). On the same day, Datamize sent a letter to Plumtree stating: Datamize believes that Plumtree is infringing the 137 Patent by, among other things, providing software enabling the operation of portals and kiosks employing customization and personalization features. *We also believe that Plumtree will infringe the claims in the continuation patent application when it issues as a patent.* From the prior communications, it does not appear that Plumtree has appreciated the implication of Datamize's patent rights. *Plumtree Software, Inc. v. Datamize, LLC,* No. 04-CV-2777, slip op. at 5-6 (N.D.Cal. Sept. 12, 2005) (emphasis added). The underscored language referred to a pending patent application that later issued as the 040 patent. Datamize attached the 040 patent application claims to the letter, and the letter stated that the application claims had been "allowed." The letter stated further that "[b]ecause a direct assertion of patent infringement could subject Datamize to a declaratory judgment action by Plumtree in an inconvenient forum, [Datamize] has proceeded to preserve its rights by filing the attached Complaint" charging infringement of the 137 patent. *Id.* at 7. The complaint could not (and did not) include infringement claims with respect to the yet-to-be-issued 040 patent. That patent issued on October 1, 2002.

*2 On November 23, 2002, pursuant to Plumtree's motion to dismiss, a magistrate judge recommended dismissing the Montana action as to the 137 patent for lack of personal jurisdiction over Plumtree. On December 4, 2002, before the magistrate's recommendation was adopted by the district court, Plumtree filed a declaratory judgment action in the United States District Court for the Northern District of California seeking a judgment that it did not infringe the 137 patent ("first California action"). Datamize then counterclaimed for infringement.[FN3] On July 8, 2003, the District of Montana judge adopted the magistrate's recommendation and dismissed the Montana action for lack of personal jurisdiction.

On September 3, 2003, Datamize filed a third lawsuit alleging infringement of the 040 patent against nine defendants (not including Plumtree) in the United States District Court for the Eastern District of Texas ("Texas action"). After the 418 patent issued on December 2, 2003, Datamize moved to add infringement claims under the 418 patent to the Texas action. In briefing the motion to add the 418 patent claims, Datamize argued that, in light of the similarity of the 040 and 418 patents, "it would be highly surprising if Defendants' counsel had not specifically considered the possibility that Datamize would add the 418 Patent to this case." J.A. at 496. An interrogatory was served in the Texas action asking Datamize to list "each product made, used, offered for sale, or sold by ... persons other than the Defendants that Datamize contends incorporates or embodies a claimed invention of the patent(s)-in-suit." In its response, Datamize listed Plumtree's Corporate Portal and Enterprise Web Suite.

On July 9, 2004, in the first California action, the district court granted Plumtree's summary judgment motion and held that the asserted claims of the 137 patent were invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2, because the term "aesthetically pleasing" rendered the claims too subjective. (This court eventually affirmed the grant of summary judgment. *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1356 (Fed.Cir.2005)).

On the same day, the district court granted summary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

judgment in favor of Plumtree on the 137 patent, Plumtree filed the present declaratory judgment action with respect to the 040 and 418 patents ("second California action"). Those patents are similar to the 137 patent but do not include the "aesthetically pleasing" language. On October 15, 2004, Plumtree filed a motion for summary judgment on the ground that the 040 and 418 patents were invalid under the on sale bar because the methods of the patent claims had been on sale or offered for sale before the critical date (one year before the application date). Three days later, Datamize filed a motion to dismiss for lack of subject matter jurisdiction on the theory that Plumtree had not established a "reasonable apprehension" that Datamize would sue it for infringement of the 040 and 418 patents.

III

*3 Plumtree's summary judgment motion established the following undisputed facts.

In early 1993 Emmett and Kevin Burns formed Multimedia Adventures ("MA") (which later assigned its patents to Datamize). By December 1994 Kevin Burns had completed development of the authoring tool which could be used to create an interactive kiosk system. On January 17, 1995, representatives from MA gave a presentation to representatives from the Ski Industry of America ("SIA"), sponsors of a ski industry trade show, offering to create a kiosk for the trade show. On January 25, 1995, SIA sent a letter to MA confirming that MA would provide a kiosk at the trade show in exchange for SIA's "waiving the $10,000 sponsorship fee associated with participation in the electronic information center." J.A. at 227. The trade show was held on March 3-7, 1995, in Las Vegas, NV, shortly after the February 27, 1995, critical date, and the kiosk was displayed when it was completed near the end of the first day of the show. The record establishes that the SkiPath kiosk was created with the authoring system and that the authoring system "embodied all the claims of all three of Datamize's patents." J.A. at 349.

The district court first considered Datamize's motion to dismiss for lack of subject matter jurisdiction. The court concluded that declaratory judgment jurisdiction was proper because a "case or controversy" existed as to both the 040 and 418 patents. As to the 040 patent, the court stated that "Datamize's May 17, 2002, letter represented an 'explicit threat or other action' that would cause reasonable apprehension of an infringement suit." Plumtree, slip. op. at 13. Although the letter was sent two years before Plumtree filed the declaratory judgment action, the court found that "there [was] no evidence ... indicating that Datamize's intention to pursue litigation over alleged infringement[ ] of [the] 040 ... [patent had] changed." Id. at 18. The court noted that the May 17, 2002, letter did not refer to the 418 patent. However, under the totality of the circumstances, the court concluded that Plumtree had a reasonable apprehension of suit regarding the 418 patent because Datamize had already sued Plumtree on the parent 137 patent, sued other defendants in the Texas action on the 040 and 418 patents, and identified Plumtree as infringing both patents. Accordingly, the court stated that "the amalgamation of (1) the May 17, 2002, letter, (2) the 137 infringement suit and (3) the TX action represents an 'explicit threat or other action' that would cause Plumtree to have a 'reasonable apprehension' of suit." Id. at 16 (internal quotations omitted).

Next the district court considered Plumtree's motion for summary judgment. The court held both the 040 and 418 patents invalid under the on sale bar rule. The court concluded that "the on-sale bar [was] triggered by the facts of this case" because there was "an agreement to 'perform' a method claim" before the critical date. Id. at 23. The basis for this holding was the fact that "[a]t the January 17, 1995, meeting, MA offered to provide its interactive electronic kiosk system during the March 1995 trade show ." Id. at 21 (internal quotations omitted). The court found that MA received consideration because "MA was granted a 'prime location' and its fee was waived in exchange for the display of MA's kiosk." Id. The court noted that MA's meeting with SIA on January 17, 1995, and the subsequent agreement both occurred before the February 27, 1995, critical date. The court then stated that "the agreement with SIA embodied all of the claims of the 040 and 418 patents" because "the kiosk at the trade show embodied all of the claims." Id. at 24-25. Accordingly, the court granted summary judgment in favor of Plumtree.

*4 Datamize timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2000).

DISCUSSION

I

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[1] The determination of whether Article III jurisdiction exists is a question of law that we review without deference. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735 (Fed.Cir.1988). We review the underlying factual findings for clear error. *Gen-Probe Inc. v. Vysis, Inc.,* 359 F.3d 1376, 1379 (Fed.Cir.2004).

[2][3][4] A declaratory judgment action may be brought where there is an "actual controversy" between "interested" parties. *See* 28 U.S.C. § 2201 (2000); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-40, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977 (Fed.Cir.1993). This court has developed a two-part test for determining whether an "actual controversy" exists. "There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361, 1373 (Fed.Cir.2004) (quoting *BP Chems.,* 4 F.3d at 978).[FN4] Here the parties do not dispute that the second prong is met. Accordingly, we need only determine, under the first prong, whether Plumtree had a "reasonable apprehension" that it would face an infringement suit on the 040 and 418 patents.

[5] This court looks to "the 'totality of the circumstances' in determining whether [the] conduct meets the first prong of the test." *Arrowhead Indus. Water, Inc.,* 846 F.2d at 736.

Our decision in *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953 (Fed.Cir.1987), is directly on point. In that case, Releasesomers sued Goodyear in state court for misappropriation of trade secrets. While the trade secret litigation was pending, patents were issued to Releasomers that were "directed to essentially the same technology involved in the state trade secret litigation." *Id.* at 954. We noted that "the situation here indicates that these parties are themselves currently embroiled in a protracted dispute in state court over the commercial technology generally covered by the ... patents." *Id.* at 955. We found that "[b]y suing Goodyear in state court for the same technology as is now covered by the patents, Releasomers has engaged in a course of conduct that shows a willingness to protect that technology," and a reasonable apprehension of suit. *Id.* at 956; *see also Vanguard Research, Inc. v. PEAT, Inc.,* 304 F.3d 1249, 1255 (Fed.Cir.2002) (finding reasonable apprehension where PEAT sued Vanguard for misappropriation of trade secrets regarding the same technology and stating that "[f]iling a lawsuit for patent infringement would be just another logical step in [PEAT's] quest to protect its technology").

*5 Here, before Plumtree commenced this declaratory judgment action, Datamize had sued Plumtree on the parent 137 patent. Although the 040 and 418 patents do not share the same "aesthetically pleasing" language as the 137 patent, the three patents all describe a similar technology and share a common specification. Here, as in *Goodyear* and *Vanguard,* "[b]y suing [earlier] for the same technology as is now covered by the patents [in suit], [the patent holder] has engaged in a course of conduct that shows a willingness to protect that technology," *Goodyear,* 824 F.2d at 956, and has created a reasonable apprehension of suit.

[6] Datamize argues that, even if there were a reasonable apprehension of suit in 2002 when the suit on the 137 patent was filed, the declaratory judgment action on the 040 and 418 patents was not filed until July 9, 2004, and the passage of time had dissipated any reasonable apprehension. Where the defendant does not sign a covenant not to sue, a reasonable apprehension may only be eliminated in "narrow" circumstances because "otherwise a patent holder could attempt extra-judicial patent enforcement with scare-and-run tactics that the Declaratory Judgment Act was intended to forestall." *Fina Research, S.A. v. Baroid Ltd.,* 141 F.3d 1479, 1483 (Fed.Cir.1998) (internal quotation marks omitted). Here Datamize did not meet this burden because, between the two lawsuits, Datamize continued to "engage[ ] in a course of conduct that show[ed] a willingness to protect [its] technology." *Goodyear,* 824 F.2d 956. On September 3, 2003, Datamize sued nine other defendants in the Texas action on the '040 and 418 patents. *See Arrowhead Indus. Water, Inc.,* 846 F.2d at 737 (noting that a patentee's infringement suit against a third party "evidenced not only an intent but a willingness and capacity to employ litigation in pursuit of its patent rights"). Moreover, on May 12, 2004, in the Texas action, Datamize directly stated in response to an interrogatory that it believed Plumtree was infringing these patents. Plumtree was aware of the Texas action, and whether or not the interrogatory response was actually communicated to Plumtree, the response is probative of Datamize's intentions. This suit was filed only two months after the interrogatory

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3703180 (C.A.Fed. (Cal.)), 81 U.S.P.Q.2d 1251
(Cite as: --- F.3d ----)

Page 7

response on July 9, 2004.

Accordingly, Datamize's actions clearly created a "reasonable apprehension" of suit on the '040 and '418 patents, and this apprehension was not dissipated by Datamize's subsequent actions.

II

As we have jurisdiction over this action, we next consider whether the '040 and '418 patents are invalid under the on sale bar, 35 U.S.C. § 102(b).

[7] The determination of whether an invention was on sale within the meaning of § 102(b) is a question of law that we review without deference. _Scaltech, Inc. v. Retec/Tetra, LLC_, 269 F.3d 1321, 1327 (Fed.Cir.2001). We also review a grant of summary judgment without deference. See _Crater Corp. v. Lucent Techs., Inc._, 255 F.3d 1361, 1366 (Fed.Cir.2001).

*6 [8] A claimed invention is considered to be on sale under § 102(b) if the invention is sold or offered for sale more than one year before the filing date of the patent application. Here the '040 and '418 patents claim priority to a provisional application that was filed on February 27, 1996. Thus, for purposes of the on sale bar, the critical date is February 27, 1995.

The facts pertinent to the on sale bar issue are as follows. By December 1994 Kevin Burns, the inventor of the '040 and '418 patents, had completed development of the authoring tool ultimately reflected in the patent claims. In the winter of 1994 his company, MA, learned that the SIA was going to hold a trade show in Las Vegas, Nevada in March 1995. As part of the show, SIA planned to include an example of a "ski store of the future" called the "Mountain Visions" store.

On January 17, 1995, representatives from MA gave a presentation to the representatives from SIA at SIA's headquarters in Virginia. At the time of the presentation, the authoring tool had been reduced to practice, but MA had not yet used the authoring tool to create a kiosk product. The slides used during MA's presentation refer to "proprietary authoring tools" that "allow rapid updating" and "support new technologies as they appear." However, Emmett Burns later testified that he could not "recall telling SIA any of the particulars of the authoring tool at the SIA meeting." J.A. at 549. He stated that he did not explain how the authoring tool allowed for "rapid updating" because "even if [h]e explained any of it[,][t]hese people ... are not technology people; and they go into a different space if you start to get into that." J.A. at 550. Rather, Emmett Burns testified that the purpose of the presentation was to show SIA what the ultimate kiosk product, entitled "SkiPath," "would be like."

On January 25, 1995, SIA sent a letter to MA confirming the agreement that MA would "participat[e] as [a] sponsor of the 'interactive' portion of the electronic information center of Mountain Visions at SIA." J.A. at 227. The letter stated that in exchange for SIA "waiving the $10,000 sponsorship fee associated with participation in the electronic information center," MA agreed to:
1. Provide software/hardware package necessary to produce the interactive touch-screen information center as presented to SIA on January 17, 1995 in McLean, VA.
2. Provide multiples of this software/hardware package to allow for multiple customer access in the information center.
3. Work to the best of their ability to put the other product sponsors participating in the concept store on the interactive system, as presented [ ] January 17th, at no charge to these companies. SIA will work to facilitate this effort wherever possible.
4. Provide looped advertising/entertainment video on 3/4 inch VHS for the overhead monitor system. SIA would help to acquire entertainment segments if necessary.
*7 5. Exhibit within the trade show. SIA will facilitate getting Multimedia Adventures an appropriate booth space to exhibit and sell your products.

J.A. at 227. On January 26, 1995, Kevin Burns "filled out an exhibit space contract for [MA's] exhibit space at the tradeshow" and paid $2,430 in exhibit space fees. J.A. at 531. The exhibit space contract stated that "the type of product" MA would display was a "computer kiosk." J.A. at 196. Emmett Burns later testified that the agreement between SIA and MA was that in exchange for space at the trade show, MA would "put the system in the store." J.A. at 382. He explained that "the system" was "the multimedia kiosk" (SkiPath). _Id._

The trade show was held on March 3-7, 1995 (after the February 27, 1995, critical date) in Las Vegas, NV. Kevin Burns testified that "a Mulitmedia Adventures product" was demonstrated and that there was a demonstration of the "kiosk system," which was called "SkiPath." J.A. at 350-52. The record

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

establishes that "SkiPath [was] created with the authoring system" and that the authoring system embodied all the claims of all three of Datamize's patents. J.A. at 347-50. Kevin Burns also testified, somewhat confusingly, that "the network kiosk system that was demonstrated in March of 1995 at the Las Vegas show emod[ied] all the claims" of the 040 and 418 patents. J.A. at 347. Although Kevin Burns began creating SkiPath before the January 17 meeting, the programming and testing of the SkiPath product was not completed until the end of the first day of the trade show. Thus, the record is not clear whether the patented process was used before the critical date.

III

[9] The Supreme Court in *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998), has set forth a two-part test for determining whether there was a sale or offer for sale for purposes of § 102(b). First, "the product must be the subject of a commercial [sale or] offer for sale." *Id.* at 67. Second, "the invention must be ready for patenting." *Id.* The second condition is met by "proof of reduction to practice before the critical date." *Id.* Here the parties agree that the authoring tool was reduced to practice in the winter of 1994. Accordingly, we need only consider the first prong of the *Pfaff* test.

[10][11] A commercial sale or offer for sale necessarily involves consideration. *See Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed.Cir.2001); Restatement (Second) of Contracts § 71 (1981). We agree with the district court that MA received valid consideration. SIA awarded MA floor space at the trade show and waived $10,000 sponsorship fee normally charged to show participants. Datamize argues that waiver of the $10,000 sponsorship fee did not constitute consideration because Plumtree did not demonstrate that the fee waiver was "somehow due to the invention." We do not find this argument persuasive.

However, on this record, we cannot sustain the district court's conclusion that the method claims are invalid under the on sale bar rule. The district court reasoned that "the agreement with SIA embodied all of the claims of the 040 and 418 patents" because "the kiosk at the trade show embodied all of the claims." *Plumtree,* slip op. at 24. In so holding, the district court relied on Kevin Burns's testimony that "the network kiosk system that was demonstrated in March of 1995 at the Las Vegas show embod[ied] all the claims" of the 040 and 418 patents. These statements reflect confusion as to the nature of the patented product. Here the invention reflected in the method claims is a process for creating a kiosk system, not the kiosk system itself. The kiosk system itself is not patented. The court's focus on whether the kiosk system somehow embodied the claims of the patent was misplaced, and the district court's reasoning does not support a grant of summary judgment. Nor does the record support the ultimate result reached by the district court.

*8 In our view, Plumtree could meet the first prong of the *Pfaff* test under either of two alternative theories. First, Plumtree could demonstrate that before the critical date MA made a commercial offer to perform the patented method (even if the performance itself occurred after the critical date). Second, Plumtree could demonstrate that before the critical date MA in fact performed the patented method for a promise of future compensation. Under the second theory, Plumtree would not need to prove that the contract itself required performance of the patented method. We address these alternative theories in turn.

[12][13][14] Under the first theory, Plumtree would have to demonstrate that before the critical date MA made a commercial offer to perform the patented method. A commercial offer is "one which the other party could make into a binding contract by simple acceptance (assuming consideration)." *Group One,* 254 F.3d at 1048. Under this standard, it is clear that the offeror must be legally bound to perform the patented method if the offer is accepted. *See Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1050 (Fed.Cir.2001) (stating that there was no offer where communication did not "indicate LTC's intent to be bound" (citing Restatement (Second) of Contracts § 26 (1981)). Whether there has been a commercial offer is governed by federal common law. *See Scaltech,* 269 F.3d at 1328; *Group One,* 254 F.3d at 1047.

Whether MA made a commercial offer to perform the patented method is governed by our decision in *Scaltech,* where before the critical date Scaltech made a commercial offer to perform a patented method. There we stated that "the fact that the process itself was not offered for sale but only offered to be used by the patentee ... does not take it outside the on sale bar rule." *Scaltech,* 269 F.3d at 1328. We reasoned that "[t]he on sale bar rule applies to the sale of an 'invention,' and in this case, the invention was a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

process." *Id.* We then asked whether there was a "commercial offer" and whether the offer was "of the patented invention." *Id.* We concluded that Scaltech's offer before the critical date to perform the patented method implicated the on sale bar because the commercial "offer for sale ... satisf[ied] each claim limitation of the patent." *Id.* at 1329-30.

Here, as in *Scaltech,* there has been a commercial offer before the critical date of February 27, 1995, because there was a binding contract between MA and SIA. The more difficult question is whether the commercial offer was "of the patented invention." We have stated that "the invention that is the subject matter of the offer for sale must satisfy each claim limitation of the patent." *Id.* at 1329. Datamize admits that "SkiPath [was] created with the authoring system" and that the authoring system "embodied all the claims of all three of Datamize's patents." J.A. at 349. On its face, however, the written agreement between MA and SIA did not unambiguously require use of the patented method. The agreement did require MA to "provide the software/hardware package necessary to produce the interactive touch-screen information center as presented to SIA on January 17, 1995 in McLean, Virginia." J.A. at 227. This reference to the software/hardware package is ambiguous as to whether it required MA to provide the kiosk system software or to perform the patented method. Moreover, Plumtree has made no showing that extrinsic evidence would compel an interpretation that MA was bound to perform the patented method. Therefore, the record does not provide a basis for summary judgment on this issue.

*9 [15][16] We now turn to the second possible theory. Even if Plumtree did not agree before the critical date to perform the patented process, Plumtree could prevail on summary judgment if it demonstrated that MA in fact performed each of the steps of the patented process before the critical date pursuant to the contract. In *In re Kollar,* 286 F.3d 1326 (Fed.Cir.2002), this court considered whether granting a license to perform a patented method violated the on sale bar. After concluding that there was no sale under the particular facts of that case, we noted that "[a]ctually performing the process itself for consideration would ... trigger the application of § 102(b)." *Id.* at 1333; *see also Minton v. Nat'l Ass'n of Sec. Dealers,* 336 F.3d 1373, 1378 (Fed.Cir.2003) (quoting *In re Kollar,* 286 F.3d at 1333). We have explained that "the intent of [§ 102(b) ] is to preclude attempts by the inventor or his assignee to profit from commercial use of an invention for more than a year before an application for patent is filed."

*D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1147 (Fed.Cir.1983); *see also In re Kollar,* 286 F.3d at 1333 ("Surely a sale by the patentee ... of a product made by the claimed process would constitute ... a sale because that party is commercializing the patented process in the same sense as would occur when the sale of a tangible patented item takes place."). Performing the steps of the patented method for a commercial purpose is clearly an attempt to profit from the commercial use of an invention. Consequently, performing the patented method for commercial purposes before the critical date constitutes a sale under § 102(b).

However, Plumtree has not on this record established that MA actually performed all of the patented steps before the critical date pursuant to the contract. While it is apparent that Kevin Burns used the authoring tool to create the kiosk system, the kiosk system was not finished until after the critical date, and it is unclear whether Burns performed each of the patented method steps before the critical date. Accordingly, summary judgment was not appropriate in this case.[FN5]

IV

Finally, the parties disagree about whether the district court erred in failing to separately consider the apparatus claims of the 418 patent.[FN6] Plumtree argues that Datamize is barred from arguing that the 418 patent contained apparatus claims because it did not raise that argument below. In light of the remand, Datamize is free to argue that some claims should be separately considered as apparatus claims.

Accordingly, we remand to the district court for further proceedings consistent with this opinion. In the further proceedings, it will be important for the district court to construe the patent claims at issue.

CONCLUSION

For the foregoing reasons, we conclude that the district court had jurisdiction over this declaratory judgment action. We further conclude that the district court erred in granting summary judgment pursuant to § 102(b) because the record contains insufficient facts to determine whether the patented process was sold or offered for sale before the critical date. Accordingly, we vacate the district court's summary judgment ruling and remand for further proceedings.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*10 *VACATED AND REMANDED.*

COSTS

No costs.

FN1. Plumtree is now BEA Systems, Inc.

FN2. Claim 1 of the 418 patent is representative of the method claims:
A method for providing customized assortment of information content from a plurality of information providers for display in one or more customized interface screens in a plurality of computers, comprising:
enabling selection of a customized assortment of information content from information content from said plurality of information providers;
enabling selection of at least one interface screen element from a plurality of pre-defined interface screen elements for inclusion in said customized interface screens,
said screen elements having on-screen characteristics subject to pre-defined constraints providing a generally uniform look and feel with other interface screens of said plurality of computers; and
associating a selection of a customized assortment of information content for a first computer of said plurality and a selection of at least one screen element for said first computer for display on said first computer in said one or more customized interface screens.

FN3. On August 7, 2003, Datamize filed a motion to realign itself as plaintiff in the first California action, which the district court granted on October 6, 2003.

FN4. The Supreme Court in *MedImmune, Inc. v. Genentech, Inc.*, is considering whether the "reasonable apprehension" prong of our test is unduly restrictive and not consistent with Article III standards as interpreted by the Supreme Court. Brief of Petitioner-Appellant at 20-22, *MedImmune, Inc. v. Genentech, Inc.*, No. 05-607 (U.S. May 15, 2006). We need not address that question here because, even under this court's existing jurisprudence, we find that there was a reasonable apprehension of suit.

FN5. In light of our disposition, we do not reach the contention that the district court erred in denying Datamize's motion under Fed.R.Civ.P. 56(f). Nor need we address whether Kevin Burns's affidavit, which contradicted his deposition testimony, created a genuine issue of material fact.

FN6. Claims 24-46 and 63-86 of the 418 patent are argued to be apparatus claims.

C.A.Fed. (Cal.),2006.
Plumtree Software, Inc. v. Datamize, LLC
--- F.3d ----, 2006 WL 3703180 (C.A.Fed. (Cal.)), 81 U.S.P.Q.2d 1251

Briefs and Other Related Documents (Back to top)

• 2006 WL 1433957 (Appellate Brief) Reply Brief for Defendant-Appellant Datamize, LLC (May 1, 2006) Original Image of this Document (PDF)
• 2006 WL 1177385 (Appellate Brief) Brief of Plaintiff-Appellee Plumtree Software, Inc. (Mar. 29, 2006) Original Image of this Document (PDF)
• 2006 WL 334018 (Appellate Brief) Brief for Defendant-Appellant Datamize, LLC (Jan. 7, 2006) Original Image of this Document with Appendix (PDF)
• 06-1017 (Docket) (Oct. 17, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.