IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ECHOSTAR SATELLITE LLC, a      :
Colorado corporation, ECHOSTAR :
TECHNOLOGIES CORPORATION, a    :
Texas corporation, and         :
NAGRASTAR LLC, a Colorado      :
corporation,                   :
                               :
           Plaintiffs,         : Civil Action No. 06-425-JJF
                               :
      v.                       :
                               :
FINISAR CORPORATION, a         :
Delaware corporation,          :
                               :
           Defendant.          :
                               :

Harold J. McElhinny, Esquire and Rachel Krevans, Esquire of
MORRISON & FOERSTER LLP, San Francisco, California.
William J. Kuhne, Esquire of MORRISON & FOERSTER LLP, New York,
New York.
Josy W. Ingersoll, Esquire and Richard H. Morse, Esquire of YOUNG
CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Plaintiffs.

Thomas B. Kenworthy, Esquire and David W. Marston, Jr., Esquire
of MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania.
Stephen B. Judlowe, Esquire of MORGAN, LEWIS & BOCKIUS LLP, New
York, New York.
Dion M. Bregman, Esquire of MORGAN, LEWIS & BOCKIUS LLP, Palo
Alto, California.
Arthur G. Connolly, Jr., Esquire and Arthur G. Connolly, III,
Esquire of CONNOLLY, BOVE, LODGE & HUTZ LLP, Wilmington,
Delaware.

Attorneys for Defendant.

## MEMORANDUM OPINION

September 25, 2007
Wilmington, Delaware

*Joseph J. Farnan Jr.*
Farnan, District Judge.

Pending before the Court is Defendant's Motion To Dismiss Plaintiffs' Declaratory Judgment Complaint (D.I. 9). For the reasons discussed below, the Court will deny the Motion.

I. BACKGROUND

Plaintiffs EchoStar Satellite LLC ("EchoStar Satellite") and NagraStar LLC ("NagraStar") are both Colorado corporations with their principal places of business in Colorado. Plaintiff EchoStar Technologies Corporation ("ETC") is a Texas corporation with its principal place of business in Colorado. Defendant Finisar Corporation ("Finisar") is a Delaware corporation with its principal place of business in California.

Defendant acquired the rights to license and enforce U.S. Patent No. 5,404,505, entitled "System for Scheduling Transmission of Indexed and Requested Database Tiers on Demand at Varying Repetition Rates" ("the '505 Patent"). This patent utilizes a satellite transmission system that broadcasts information at various repetition rates.

On June 25, 2004, Defendant's counsel sent a letter ("June 25 letter") informing Plaintiffs that Defendant believed Plaintiffs had been utilizing various aspects of the '505 Patent for a substantial length of time. (D.I. 11, Ex. A). Defendant also indicated a desire to enter into licensing negotiations, and emphasized that it would prefer to address the issue in a

1

licensing context rather than "through more formal means." Id.

On June 30, 2004, Plaintiffs sent a letter acknowledging receipt of the June 25 letter and requesting a more detailed explanation of Plaintiffs' alleged violation of Defendant's patent claims. (D.I. 11, Ex. B). Defendant responded in a letter dated July 21, 2004, enclosing the requested information regarding the patent and requesting a meeting to discuss potential licensing terms. (D.I. 11, Ex. C). The parties met on March 24, 2005 and agreed to discuss potential licensing terms in the future. On June 16, 2005, Defendant made a licensing proposal to Plaintiffs which stated a proposed royalty. (D.I. 11, Ex. J).

On April 4, 2005, Defendant filed suit against DirecTV alleging infringement of the '505 Patent. This suit had a chilling effect on negotiations between Plaintiffs and Defendant, and as a result, Plaintiffs did not respond to Defendant's licensing proposal. On June 23, 2006, a jury returned a verdict in Defendant's favor in the DirecTV case. Defendant subsequently issued a press release indicating that it would continue licensing negotiations with other companies operating data distribution networks. (D.I. 11, Ex. K). Although the parties resumed discussions and attempted to schedule a meeting, they failed to agree upon a meeting time and place. On July 10, 2006, Plaintiffs filed the instant action against Defendant seeking a

declaratory judgment that Plaintiffs did not infringe any valid claim of the '505 Patent.

**II. PARTIES' CONTENTIONS**

Although the parties applied the reasonable apprehension test in their briefs, the parties filed post-briefing submissions in which they addressed new case law relevant to the issues. However, because the facts and contentions presented in the original briefs are also relevant to the new standard, the Court will resolve the Motion on the pages submitted.

By its Motion, Defendant contends that the Court should dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Specifically, Defendant contends that Plaintiffs' Complaint fails to establish an "actual and justiciable controversy" because Plaintiffs cannot show that they had a reasonable apprehension of imminent suit by Defendant. In the alternative, Defendant contends that the Court should decline to exercise jurisdiction to avoid discouraging licensing negotiations. Defendant contends that the licensing discussions were ongoing at the time the suit was filed, and therefore, the Complaint should be dismissed as a matter of public policy.

In response, Plaintiffs contend that they had a reasonable apprehension of suit because Defendant repeatedly accused Plaintiffs of infringing the '505 Patent through its counsel, threatened litigation in its settlement offer, and linked its

threats against Plaintiffs to its suit for infringement against DirecTV and the subsequent verdict in its favor. Plaintiffs further contend that the licensing negotiations ended well before Plaintiffs filed the Complaint. As a result, Plaintiffs contend that the court should exercise its discretion to resolve the dispute because no well-founded reason exists for the Court to decline jurisdiction.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the court must accept all factual allegations in the Complaint as true, and the court may only consider the complaint and documents referenced in or attached to the complaint. Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a factual challenge to the court's subject matter jurisdiction, the court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. Mortensen v. First Fed. Sav. and Loan, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the court

may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997). Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. Mortensen, 549 F.2d at 891.

**IV. DISCUSSION**

    A.    <u>Whether Plaintiff Establishes An Actual Controversy For Purposes Of The Declaratory Judgment Act</u>

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction." 28 U.S.C. § 2201(a) (2000); EMC Corp. v. Norand Corp., 89 F.3d 807, 801 (Fed. Cir. 2004). Plaintiffs bear the burden of proving the existence of an actual controversy by a preponderance of the evidence with regard to their declaratory judgment complaint. Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 887 (Fed. Cir. 1992). The "actual controversy" requirement of the Declaratory Judgment Act is rooted in Article III of the Constitution and limits the extent of federal jurisdiction only to matters that are Article III cases or controversies. Sandisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1378 (Fed. Cir. 2007). As such, the "actual controversy" must be "definite and concrete, touching the legal relations of parties having adverse legal interests." MedImmune, Inc. v. Genentech, Inc., 127 S. Ct.

764, 771 (2007) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)).  In addition, the controversy must be ripe for review.  Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1337 (Fed. Cir. 2007).  This inquiry focuses on the conduct of the defendant to determine whether the defendant's actions have injured the plaintiff.  Id.

Following the completion of briefing on the instant Motion, the Supreme Court rejected the "reasonable apprehension of suit" prong of the Federal Circuit's test for finding an actual controversy.[1]  See MedImmune, 127 S. Ct. at 774 n. 11.  In MedImmune, the Supreme Court held that a licensee was not required to expose himself to liability by terminating or breaching a license agreement prior to seeking a declaratory judgment of patent invalidity.  Id. at 772.  Instead, the licensee could continue to pay royalties and avoid infringing behavior without eliminating the possibility of bringing an action for declaratory judgment.  Id.  The Federal Circuit subsequently incorporated the Supreme Court's rejection of the

---

[1] Prior to the Supreme Court's ruling in MedImmune, Inc. v. Genentech, Inc., an actual controversy existed when there was both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."  Gen-Probe, Inc. v. Vysis, Inc., 359 F.3d 1376, 1380 (Fed. Cir. 2004) (quoting BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993)).

"reasonable apprehension" prong by applying the new standard in Sandisk:

> Where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

Sandisk, 480 F.3d at 1381. This standard allows a finding of an actual controversy in circumstances where the party seeking declaratory judgment has reason to believe that further negotiations will be fruitless. Id. at 1381-82.

The Court concludes that Plaintiff has adduced sufficient evidence to warrant a finding of an actual controversy between the parties under the new standard set forth in MedImmune and Sandisk. The parties agree that the presence or absence of a case or controversy is based on facts at the time the Complaint was filed. At the time Plaintiffs filed their Complaint on July 10, 2006, Defendant had prevailed in its infringement suit against DirecTV based on the '505 Patent. Following the verdict in favor of Defendant in the DirecTV suit, Defendant issued a press release stating its intention to continue ongoing licensing discussions with other companies. Defendant contends that this action proves the parties' willingness to continue the licensing negotiations and evinces the lack of an actual controversy. However, a statement by a patent holder promising not to sue the

7

plaintiff does not eliminate the justiciable controversy created by the patent holder's actions. Sandisk, 480 F.3d at 1382-83. Thus, the Court concludes that in light of the successful infringement suit against DirecTV on the same patent at issue here, it was reasonable for Plaintiffs to interpret the press release as an attempt by Defendant to pressure Plaintiffs into a licensing agreement as their only alternative to facing an infringement suit. See MedImmune, 127 S. Ct. at 773 (stating that jurisdiction exists in situations where a plaintiff's self-avoidance of injury is coerced by the threatened enforcement action of a private party). By their communications with respect to attempted licensing negotiations, Defendant accused Plaintiffs of infringing the same patent at issue in the DirecTV matter. Thus, the Court concludes that it was reasonable for Plaintiffs to believe that licensing negotiations were the only alternative to facing a similar infringement suit.

Further, the Court concludes that the circumstances in the instant action can be compared to those in MedImmune in which the Supreme Court ruled that the existence of a licensing agreement did not negate the existence of an actual controversy. MedImmune, 127 S. Ct. at 777. Although no licensing agreement exists in the instant case, the parties disagree as to whether licensing negotiations are ongoing or whether they have terminated. However, the continuation or termination of

8

licensing negotiations is not dispositive with regard to the existence of an actual controversy. See MedImmune, 127 S. Ct. at 772 (holding that the continuation of royalty payments does not eliminate Article III jurisdiction even though it eliminates the imminent threat of litigation). Therefore, the Court concludes that an actual controversy exists in the instant case regardless of whether the licensing negotiations are ongoing.

In sum, the Court concludes that Plaintiffs have set forth sufficient evidence to demonstrate the existence of an actual controversy by a preponderance of the evidence because of the verdict against DirecTV and Defendant's coercive attempts to enter into a licensing agreement with Plaintiffs. Thus, the Court concludes that it has jurisdiction pursuant to the Declaratory Judgment Act and Article III of the Constitution.

> B. **Whether The Court Should Exercise Its Discretion To Resolve The Dispute**

Having determined that the Court has subject matter jurisdiction pursuant to the Declaratory Judgment Act, the Court must next determine whether it is appropriate to exercise that jurisdiction. While the Declaratory Judgment Act grants the Court jurisdiction, it also allows the Court to decline jurisdiction at its discretion. In exercising this discretion, courts must be mindful that the purpose of the Act is to allow alleged infringers relief from uncertainty and delay. When there is an actual controversy and a declaratory judgment would settle

the dispute, the declaratory judgment is typically not subject to dismissal. Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993).

Defendant contends that the Court should decline its jurisdiction because of strong public policy considerations in favor of resolving disputes without the need for litigation. In response, Plaintiffs contend that Defendant has not offered a sound reason for the Court not to exercise jurisdiction. An actual controversy exists in the instant case for the reasons discussed above. In addition, a declaratory judgment would settle the dispute and afford relief to Plaintiffs by protecting them from an infringement suit by Defendant. Therefore, the Court concludes that exercising jurisdiction is appropriate. Accordingly, the Court will deny Defendants' Motion To Dismiss (D.I. 9).

V.  CONCLUSION

For the reasons discussed, the Court will deny Defendant's Motion To Dismiss Plaintiffs' Declaratory Judgment Complaint (D.I. 9).

An appropriate Order will be entered.