IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ECHOSTAR SATELLITE LLC, a Colorado
corporation; ECHOSTAR TECHNOLOGIES
CORPORATION, a Texas corporation, and
NAGRASTAR LLC, a Colorado corporation,

          Plaintiffs,

    v.

FINISAR CORPORATION, a Delaware
corporation,

          Defendant.

C.A. No. 06-425-JJF

## DECLARATION OF WILLIAM J. KUHNE

WILLIAM J. KUHNE, acknowledging that this declaration is made under penalty

of perjury, states upon personal knowledge, information and belief that the following

facts are true and correct.

1.     I am an attorney with Morrison & Foerster LLP, counsel of record for

plaintiffs EchoStar Satellite LLC, EchoStar Technologies Corporation, and NagraStar

LLC (collectively, "EchoStar"). I make this statement based on my personal knowledge,

and if called as a witness I could and would testify competently hereto.

2.     Attached hereto as Exhibit A is a true and correct copy of the December

11, 2006 decision by the United States Patent and Trademark Office ("PTO") granting

an *ex parte* application for reexamination of United States Patent No. 5,404,505 (the

"'505 patent").

3.      Attached hereto as Exhibit B is a true and correct copy of the March 21, 2007, decision by the PTO granting a second *ex parte* application for reexamination of the '505 patent.

4.      Attached hereto as Exhibit C is a true and correct copy of the September 28, 2007 decision by the PTO granting a third *ex parte* application for reexamination of the '505 patent.

5.      Attached hereto as Exhibit D is a true and correct copy of "*Ex Parte Reexamination Filing Data – September 30, 2007,*" provided by the PTO.

6.      Attached hereto as Exhibit E is a true and correct copy of the April 5, 2007, Order Denying Stay and Requiring Comcast to Produce Certain Records in *Comcast Cable Commc'ns Corp. v. Finisar Corp.*, Case No. C-06-4206 (N.D. Cal. filed July 11, 2006).

7.      Attached hereto as Exhibit F is a true and correct copy of Finisar Corporation's February 27, 2007, Notice of Motion and Motion to Stay All Proceedings Pending Reexamination of U.S. Patent No. 5,404,505, without exhibits, in *Comcast Cable Commc'ns Corp. v. Finisar Corp.*, Case No. C-06-4206 (N.D. Cal. filed July 11, 2006).

DATED: November 8 , 2007

William J. Kuhne

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on November 8, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Arthur G. Connolly, III , Esquire
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE  19801

I further certify that on November 8, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

Thomas B. Kenworthy, Esquire [tkenworthy@morganlewis.com]
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Andrew A. Lundgren*
Josy W. Ingersoll (No. 1088)
Richard H. Morse (No. 531)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
*jingersoll@ycst.com*
*rmorse@ycst.com*
*alundgren@ycst.com*

*Attorneys for Plaintiffs/Counterclaim-*
*Defendants EchoStar Satellite LLC, EchoStar*
*Technologies Corporation, and NagraStar LLC*

# Exhibit A



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,282 | 10/05/2006 | 5404505 | | 5471 |

| 22913      7590      12/11/2006 | |
|---|---|
| WORKMAN NYDEGGER | **EXAMINER** |
| (F/K/A WORKMAN NYDEGGER & SEELEY) | Majid A. Banankhah |
| 60 EAST SOUTH TEMPLE | |
| 1000 EAGLE GATE TOWER | **ART UNIT**          **PAPER NUMBER** |
| SALT LAKE CITY, UT  84111 | 3992          IFW |

DATE MAILED: 12/11/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

12/11/06

Greenblum & Bernstein, P.L.C.

Attn: Bruce H. Stoner

1950 Roland Clarke Place

Reston, VA  20191

 

## *EX PARTE*  REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008282

PATENT NO.  5,404,505

ART UNI  3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying R qu st For Ex Parte Reexamination* | Control No. 90/008,282 | Patent Under Reexamination 5404505 |
|---|---|---|
| | Examiner Majid A. Banankhah | Art Unit 3992 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>05 October 2006</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,    b)☐ PTO/SB/08,    c)☒ Other: <u>*Note 1449 of 10/05/06*</u>

1. ☒   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐ by Treasury check or,

b) ☐ by credit to Deposit Account No. _____ , or

c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

MAJID A. BANANKHAH
CRU EXAMINER-AU 3992

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action in *Ex Parte* Reexamination          Part of Paper No. 20061205

Application/Control Number: 90/008,282    Page 2
Art Unit: 3992

## DECISION GRANTING EX PARTE REEXAMINATION

1.    Reexamination has been requested for claims 1, 2, 7, 9-11, 16, 17, 22, 24-26, 37, and 39 of U.S. Patent number 5,404,505 ('505 patent). A substantial new question of patentability affecting at least claim 1 of United States Patent number 5,404,505 is raised by the request for *ex parte* reexamination.

2.    Since requester did not request reexamination of claims 3-6, 8, 12, 13-15, 18-21, 23, 27, 28-36, 38 and 40-48 and did not assert the existence of a substantial new question of patentability (SNQ) for such claims (see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be reexamined. This matter was squarely addressed in *Sony Computer Entertainment America Inc., et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy, 2006 WL 1472462. The District Court upheld the Office's discretion to not reexamine claims in a reexamination proceeding other than those claims for which reexamination had specifically been requested. The Court stated:

> "To be sure, a party may seek, and the PTO may grant, ...review of each and every claim of a patent. Moreover, while the PTO in its discretion may review claims for which ... review was not requested, nothing in the statute compels it to do so. To ensure that the PTO considers a claim for ... review, ...requires that the party seeking reexamination demonstrate why the PTO should reexamine each and every claim for which it seeks review. Here, it is undisputed that **Sony** did not seek review of every claim under the '213 and '333 patents. Accordingly, **Sony** cannot now claim that the PTO wrongly failed to reexamine claims for which **Sony** never requested review, and its argument that AIPA compels a contrary result is unpersuasive."

3.    A prior art patent or printed publication raises a substantial new question of patentability where there is:

(A)    a substantial likelihood that a reasonable Examiner would consider the prior art patent or printed publication **important** in deciding whether or not the claim is patentable, MPEP §2242 (I) and,

(B)     the same question of patentability as to the claim has not been
        decided in a previous or pending proceeding or in a final holding of
        invalidity by a federal court. See MPEP §2242 (III).

4.      The '505 patent is currently assigned to FINISAR CORPORATION of
SUNNYVALE, CALIFIRNIA. The "505 Patent issued from application Serial No.
07/786,453, which was filed on Nov. 1, 1991.

5.      In the request for reexamination, the third part requester alleges that '505
patent claims 1, 2, 7, 9-11, 16, 17, 22, 24-26, 37, and 39 are anticipated or
rendered obvious in light of the following references:

- Ian GECSEI et al., "The Architecture of Videotex System", Prentic-Hall,
  Inc., 1983.
- A. J. BIGGS et al., "Broadcast Data in Television", GEC Journal of
  Science and Technology, Vol. 41, No.4, pp. 117-124, London 1974.
- Gary ROBINSON et al., "Touch-Tone" Teletext: "A Combined Teletext
  – Viewdata System, IEEE Translation on consumer Electronics, Vol.
  CE-25, No. 3, pp. 289-303, July 1979.

        The aforementioned newly cited references are not of record in the file of
'505 patent and are not cumulative to the art of record in the original file.

## *Substantial New Question of Patentability*

6.      It is agreed that a reasonable Examiner would have considered the
reference of **Gecsei** to be important in deciding whether or not at least claim 1
was patentable for the reasons discussed *infra*.

Gecsei discloses, teaches and suggests the following claim limitations as
identified in Claim Chart I.

### Claim Chart I

| Claim 1. An information transmission system comprising: | The videotex information transmission system and method represented in Fig. 6.8 of Gecsei (p. 81). |
|---|---|
| a set of one or more computer memory devices on which is stored an information database; | Typical of computers, even in 1983, Gecsei's application computers (AC), external computers (EC) and access machines (AM) were equipped with memory devices, as is evident from Gecsei's disclosure that these computers are "dedicated to ...database [applications]" or may "contain local databases." Gecsei, pp. 8-9 and 76. This is consistent with Fig. 6.8 which symbolically illustrates database storages (in other words, memory devices) associated with the application computers (AC) and external computers (EC); see also the symbol definitions in Gecsei Fig. 6.3, which shows a database storage associated with access machine (AM) (p. 77). Thus, as is evident from the description at pp. 8-9, 81 and Fig. 6.8 of Gecsei, the videotex information database is stored in memory devices found at the access machine (AM), applications computer (AC) and external computer (EC) locations. Information contained within the database can be accessed using indices, "which makes searching in the database a relatively straightforward task," per Gecsei 19. 168, second last ¶. |
| database editing means, coupled to said one or more computer memory devices, for generating a hierarchically arranged set of indices for referencing data in said information database, including distinct indices for referencing distinct portions thereof, and for embedding said indices in said information database; | Gecsei discloses these claim limitations. The service-provider terminals are used for creating, editing and storing information in the videotex database; see Gecsei pp. 9, 159. See also Gecsei, p. 215, second ¶, concerning "facilities for automatic creation of menus and documents, and their loading into the database."   As is clearly illustrated in Fig. 10.1 (Gecsei, p.169), Gecsei generates and stores a hierarchically arranged set of indices for referencing data in the information database. The indices contain an identification value (e.g., 0.0 for the index referencing the root page) and reference data (e.g., pages) in the information database and the indices are hierarchically arranged in a tree structure, which is based upon a logical relationship between the indices; note again Fig. 10.1 and |

|  | p. 168 of Gecsei and the reference to hierarchical databases at p. 171 of Gecsei. |
|---|---|
|  |     Distinct indices reference distinct portions of the database (Gecsei, Fig. 10.1). For example, index 0.0 in Gecsei Figure 10.1 is distinguishable from index 1.0 and these indices refer to portions of the database that are distinguishable from each other. The indices are inserted into the information database, which "incorporate[s] indexes and data in the same structure" (Gecsei p. 168, 2nd last ¶). Because the videotex databases "incorporate indexes and data in the same structure" (Gecsei p. 168, 2"0 last ¶), the index information in Gecsei is "embedded" with the data in the database, as claims 1 and 16 require. |
|  |     The "terminals" and "facilities" of Gecsei which generate and embed the indices in the database correspond to, or are the equivalents of, the CPU 130 and software 132 of Levinson referenced by the patent owner during litigation as the "means" for performing the recited function. Exhibit 9, p. 10. |
| a transmission scheduler for scheduling transmission of selected portions of said information database, including assigning each selected portion of said information database one or more scheduled transmission times; | At p. 173 and in Fig. I0.3(b), Gecsei illustrates schematically how the videotex system and method schedules transmission of selected portions of the information database, including assigning each selected portion of the database one or more scheduled transmission times. As is evident from the discussion and the caption of Fig. 10.5(b), the figure is a schematic representation of the manner in which the transmission scheduler operates, not a literal description of structure used to accomplish scheduling. |
|  | Gecsei recognizes that "pages are not accessed with equal frequency" (p. 275 last ¶ and discloses setting scheduling priorities at page 175, ¶ 3 (with underlining added for emphasis):<br>"On-line and off-line reception can be mixed by controlling the repetition rate of transmitted pages. A few hundred pages of general interest can be repeated in a short cycle, whereas less important or less frequently updated pages are inserted in hourly or even daily intervals into specific slots [i.e., schedule openings] in the cycle, or according to a predetermined schedule.<br>Gecsei's discussion of repetition rates, and hourly or otherwise predetermined |

schedules, evidenced by the preceding quotation, demonstrates Gecsei's concern with actual transmission times, not merely the relative place of one transmission relative to another. Like the '505 patent, Gecsei uses time codes associated with the indices of the data. As Gecsei explains at p. 62, time codes are "used for various purposes, such as for display on the screen, for access of 'time coded' pages (transmitted at precise times), or simply as an extension of page numbers (in which case it loses its significance as an expression of time)" (underlining for emphasis added). Except in those cases where the time code is simply used as an extension of page numbers or is merely displayed on the screen, Gecsei's time code is used for its evident purpose of letting the recipient know in advance when an item will be transmitted, that is, "for access of 'time coded' pages (transmitted at precise times)." Gecsei's system of exactly 800 schedule openings or slots is highly deterministic. Because Gecsei's 800 slot transmission cycle neither expands nor contracts, it is a synchronous system which ensures that the time codes are useable to know when information will be received.

   Gecsei makes clear that portions of the videotex database that are transmitted at different times fall into four groups: on-line pages; scheduled off-line pages; pages transmitted on demand; and "real-time" pages (Gecsei, p. 175). Possible scheduling of selected portions of the videotex database for transmission is shown, by example, in Figure 10.5(b). The on-line cycle shown in Figure 10.5(b) includes allocated ("specific") schedule openings or slots for receiving portions of the database corresponding to the on-line group of pages (Gecsei p. 175, ¶ 3). In the specific implementation shown in Fig. 10.5(b) of Gecsei, three of the slots of the on-line cycle are reserved to receive portions of the database from the other three groups: two of the slots of the on-line cycle are reserved to receive portions of the database from the scheduled off-line group of pages and the demand group of pages, while one of the slots of the on-line cycle is reserved to receive portions of the database from the irregular off-line group of pages.

   Each portion of the database assigned to a slot in Figure 10.5(b) is assigned one or more scheduled transmission times. It is important to recall that the 800 slot on-line

Application/Control Number: 90/008,282                                    Page 7

Art Unit: 3992

| | cycle of Gecsei Fig. 10.5(a) is also part of the cycle in Fig. 10.5(b). In Fig. 10.5(b), the "circles" of data types move at different repetition rates to insert data into the transmitted data stream. By leaving open (that is, by reserving) certain specific ones of the 800 slots in the on-line cycle, cyclic off-line, irregular offline and demand pages can be inserted into the on-line cycle for transmission, as the captions on Fig. 10.5(b) make clear. Per Gecsei (p. 176), "Figure 10.5(b) is a schematic view of some cycles and "sub-cycles" (possibly aperiodic) in teletext transmission. Other variations are also feasible." Accordingly, it is evident that Fig. 10.5(b) illustrates options which the skilled worker will understand as being available to employ as desired: a system following the teachings of Gecsei could equally include only on-line and off-line transmission, dispensing with other variations.<br><br>Alternatively, the irregular off-line group of pages can be transmitted on a separate television scan line (Gecsei p. 175, last ¶). |
|---|---|
| a transmitter, coupled to said transmission scheduler and said one or more computer memory devices, for transmitting a stream of data packets containing said selected portions of said information database in accordance with said scheduled transmission times; | Gecsei discloses this claim limitation, for example, the HE (head end) Figure 6.8 transmits a stream of data packets to the UT (user terminal) in accordance with scheduled transmission times, such as those shown in Figure 10.5(b). The data being handled and transmitted is, as in other computer networks, digital data and is transmitted in packets to the subscribers using "packet switching networks" (sometimes abbreviated "PSN") (See, e.g., Gecsei pp. 72; 79; Fig. 6.8). |
| said transmission scheduler dividing said selected portions of said information database into a prioritized set of tiers, wherein all the selected portions of said information database in each tier are transmitted at a corresponding repetition rate, wherein the repetition rate for higher priority tiers is higher than the repetition rate for lower priority tiers; and | Gecsei discloses this claim limitation. Gecsei divides the selected portions of the information database into a prioritized set of tiers, noting for example, that "[a] few hundred pages of general interest can be repeated in a short cycle, whereas less important or less frequently updated pages are inserted in hourly or even daily intervals into specific slots in the cycle" (Gecsei p. 175, ¶ 3). Portions of the videotex database selected for transmission may fall into four groups: on-line pages; scheduled off-line pages; pages transmitted on demand; and "real-time" pages (Gecsei, p. 175).<br><br>Figure 10.5(b) (Gecsei, p. 176) shows the scheduling of at least two prioritized tiers. In |

| | |
|---|---|
| | Gecsei the on-line cycle is the higher priority tier (group) of pages. In Gecsei, the scheduled off-line cycle is the lower priority tier (group) of pages; for each revolution of the on-line cycle, only one slot of information is transmitted from the scheduled off-line cycle. Thus, Gecsei's on-line cycle has a chosen repetition rate that is higher than the chosen repetition rate of the scheduled off-line cycle. These repetition rates illustrated in Fig. 10.5(b) are unaffected by the transmission of the irregular off-line pages and the demand pages because specific slots in the 800 slot on-line cycle are reserved to receive the demand pages and, in any event, the irregular off-line pages can be transmitted on a separate television scan line (Gecsei p. 175, third ¶ and last ¶). Indeed, the teachings in the final paragraph of Gecsei, p. 175 and the section bridging pp. 177-78 relating to "captioning" underscore the critical nature of precise timing in the system described by Gecsei. |
| subscriber stations that receive said transmitted stream of data packets, | Gecsei discloses this claim limitation. Gecsei discloses that user terminals receive the transmitted stream of data packets at, for example, "data reception" shown in Figure 9.2 (Gecsei pp. 149-150). |
| each subscriber station including a data filter that stores filter data corresponding to a subset of said indices, said filter data specifying a set of requested data packets which comprising a subset of said transmitted data packets, | Gecsei discloses this claim limitation. The user inputs, by way of the keypad or keyboard, for example, page numbers, which serve as the filter data. See Gecsei's description of data selection at pp. 150, 152, and Fig. 9.2. The user terminals store the filter data in, for example, "data selection" shown in Fig. 9.2 (Gecsei pp. 149-152). The filter data is received from a subscriber and specifies a data packet by page requested by the subscriber, which comprises a subset of the transmitted data packets (Gecsei, the data selection section bridging pp. 150-152). By way of simple example, the address latch illustrated in Fig. 9.4 at p. 151 of Gecsei (a simple hardware circuit used in connection with early U.K. versions of teletext) may function to store the filter data inputted via the keypad. As Gecsei also notes at p. 152, third and fourth ¶¶, "Newer teletext transmission systems function asynchronously, and have much more complex header structures .... Such complications cannot be handled uniquely by hardwired logic, so that a programmable processor becomes necessary ....    [Nonetheless] it is inevitable |

| | that some preliminary data selection be done by dedicated hardware." Thus, Gecsei teaches that the filter data in newer systems is handled both by dedicated hardware and programmable processors, each necessarily being capable of storing the data for use when needed. |
|---|---|
| and that downloads into a memory storage device those of said received data packets which match said specified set of requested data packets. | Gecsei discloses this claim limitation. The data selection shown in Fig. 9.2 compares the stored filter data of the requested data packet with the page indices of the received data packets (Gecsei pp. 149-152 and Fig. 9.2). If the index of a received data packet matches the stored filter data, then that data packet is transferred into a memory storage device, such as the display memory (Gecsei pp. 150-152). |

7.    It is agreed that Gecsei, and other references in ¶ 5 *above*, raises a substantial new question of patentability as to claims of the levinson's patent '505 given the showing cited *above*. The above references are not of record in the file of '505 patent, and there is substantial likelihood that a reasonable examiner would have consider the teachings therein important in deciding whether or not claims 1, 2, 7, 9-11, 16, 17, 22, 24-26, 37, and 39 are patentable. Accordingly, Gecsei and other references raise a substantial new question of patentability as to claims 1, 2, 7, 9-11, 16, 17, 22, 24-26, 37, and 39, which question has not been decided in a previous examination of the levinson's patent.

## Conclusion

8.    Extensions of time under 37 C.F.R §1.136(a) will not be permitted in this proceeding because the provisions of 37 C.F.R. §1.136 apply only to "an Applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. §305 requires that *ex parte* reexamination proceedings "will be conducted with <u>special dispatch</u>" (37 C.F.R. §1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 C.F.R. §1.550(c).

9.    The Patent Owner is reminded of the continuing responsibility under 37 C.F.R. § 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent number 5,404,505 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/008,282                                    Page 11

Art Unit: 3992

### How to Communicate with the USPTO

ALL correspondence relating to this *ex parte* reexamination proceeding should
be directed as follows:

**Please mail any communications to:**

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P. O. Box 1450
> Alexandria VA  22313-1450

**Please FAX any communications to:**

> (571) 273-9900
> Central Reexamination Unit

**Please hand-deliver any communications to:**

> Customer Service Window
> Attn:  Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulany Street
> Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the
Reexamination Legal Advisor or Examiner, or as to the status of this proceeding,
should be directed to the Central Reexamination Unit at telephone number (571)
272-7705.

Signed:

Majid A. Banankhah
CRU Examiner
GAU 3992
(571) 272-3770

Conferee:

Conferee:

# Exhibit B



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,408 | 01/12/2007 | 5404505 | X30661 | 4280 |

24341        7590        03/21/2007

MORGAN, LEWIS & BOCKIUS, LLP.
2 PALO ALTO SQUARE
3000 EL CAMINO REAL
PALO ALTO, CA  94306

| EXAMINER |
|---|
| Majid Banankhah |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | IFW |

DATE MAILED: 03/21/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Order Granting / Denying Requ st For Ex Parte Reexamination* | C ntr IN . 90/008,408 | | Pat nt Under R examinati n 5404505 | |
|---|---|---|---|---|
| | Examin r Majid A. Banankhah | | Art Unit 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>12 January 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,     b)☒ PTO/SB/08,     c)☐ Other: _____

1. ☒  The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the date of service of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐  The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____,  or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)                Office Action in *Ex Parte* Reexamination                Part of Paper No. 20070321

Application/Control Number: 90/008,408                                          Page 2
Art Unit: 3992

## DECISION GRANTING EX PARTE REEXAMINATION

1.      A substantial new question of patentability affecting claims 1, 2, 7, 9-11, 16, 17, 22, 24-26, 37, 39 and 44 of United States Patent number 5,404,505 is raised by the request for *ex parte* reexamination.

2.      Since requester did not request reexamination of claims 3-6, 8, 12-15, 18-21, 23, 27-36, 38, 40-43 and 45-48 and did not assert the existence of a substantial new question of patentability (SNQ) for such claims (see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be reexamined. This matter was squarely addressed in *Sony Computer Entertainment America Inc., et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy, 2006 WL 1472462. The District Court upheld the Office's discretion to not reexamine claims in a reexamination proceeding other than those claims for which reexamination had specifically been requested. The Court stated:

> "To be sure, a party may seek, and the PTO may grant, ...review of each and every claim of a patent. Moreover, while the PTO in its discretion may review claims for which ... review was not requested, nothing in the statute compels it to do so. To ensure that the PTO considers a claim for ... review, ...requires that the party seeking reexamination demonstrate why the PTO should reexamine each and every claim for which it seeks review. Here, it is undisputed that Sony did not seek review of every claim under the '213 and '333 patents. Accordingly, Sony cannot now claim that the PTO wrongly failed to reexamine claims for which Sony never requested review, and its argument that AIPA compels a contrary result is unpersuasive."

3.      A prior art patent or printed publication raises a substantial new question of patentability where there is:

    (A)     a substantial likelihood that a reasonable Examiner would consider the prior art
            patent or printed publication **important** in deciding whether or not the claim is
            patentable, MPEP §2242 (I) and,

    (B)     the same question of patentability as to the claim has not been decided in a
            previous or pending proceeding or in a final holding of invalidity by a federal
            court. See MPEP §2242 (III).

Application/Control Number: 90/008,408                                    Page 3
Art Unit: 3992

4.    The '505 patent is currently assigned to FINISAR CORPORATION of SUNYVALE
CALIFORNIA. The '505 Patent issued from application Serial No. 07/786,453 ("the '453
Application"), which was filed on Nov. 1, 1991.

5.    In the request for reexamination, the third part requester alleges that '505 patent claims 1,
2, 7, 9-11, 16, 17, 22, 24-26, 37, 39 and 44 are anticipated or rendered obvious in light of the
following references:

1.    U.S. Patent No. 4,908,707 to John R. Kinghorn (hereinafter "Kinghorn" - attached
as Exhibit 6);

2.    Gwyn Morgan, "Britains Teletext Services are a Commercial Success," Viewdata
and Videotext, 1980-81 : A Worldwide Report, Knowledge Industry Publications,
Inc., 1980, pp. 341-356 (hereinafter "Morgan" - attached as Exhibit 7);

3.    U.S. Patent No. 4,845,658 to David K. Gifford (hereinafter "Gifford '658"-
attached as Exhibit 8);

4.    David K. Gifford, et al., "The Application of Digital Broadcast Communication to
Large Scale Information Systems," IEEE Journal on Selected Areas in
Communication, Vol. SAC-3, No. 3, May 1985, pp. 457-467 (hereinafter
"Gifford- Communication"-attached as Exhibit 9);

5.    A. J. Biggs, et al., "Broadcast data in television," GEC Journal of Science &
Technology, Vol. 41, No. 4, 1974 (hereinafter "Biggs" - attached as Exhibit 10);
and,

6.    M. L. Ellis, et al., "INDAX: An Operational Interactive Cabletext System," IEEE
Journal on Selected Areas in Communications, Vol. SAC-I, No. 2, February 1983
pp. 285-294 (hereinafter "Ellis" - attached as Exhibit 11).

The aforementioned newly cited references were not considered or applied in rejecting
any claim by the Examiner during the prosecution of the '453 application and are not cumulative
to the art of record in the original file.

*Substantial New Question of Patentability*

Application/Control Number: 90/008,408                                    Page 4
Art Unit: 3992

7.      It is agreed that the consideration of Kinghorn taken with Morgan raises a substantial
new question of patentability as to claims 1, 2, 9, 11, 16, 17, 24, 26, and 39 of the Levinson '505
patent. Request page 7 through page 40, are hereby incorporated by reference from the request
for reexamination for their explanation of the teaching provided in Kinghorn and Morgan that
was not present in the prosecution of the application which became the Levinson '505 patent.
Further, there is a substantial likelihood that a reasonable examiner would consider this teaching
important in deciding whether or not the claim is patentable. Accordingly, Kinghorn taken with
Morgan raises a substantial new question of patentability as to claims 1, 2, 9, 11, 16, 17, 24, 26,
and 39, which question has not been decided in a previous examination of the Levinson '505
patent.


8.      It is agreed that the consideration of Gifford '658 raises a substantial new question of
patentability as to claims 1, 2, 7, 9, 11, 16, 17, 22, 24, 26, 37, 39 and 44 of the Levinson '505
patent. Request page 41 through page 95 line 7, are hereby incorporated by reference from the
request for reexamination for their explanation of the teaching provided in Gifford '658 that was
not present in the prosecution of the application which became the Levinson '505 patent.
Further, there is a substantial likelihood that a reasonable examiner would consider this teaching
important in deciding whether or not the claim is patentable. Accordingly, Gifford '658 raises a
substantial new question of patentability as to claims 1, 2, 7, 9, 11, 16, 17, 22, 24, 26, 37, 39 and
44, which question has not been decided in a previous examination of the Levinson '505 patent.


9.      It is agreed that the consideration of Gifford taken with Biggs raises a substantial new
question of patentability as to claims 2, 17, and 39 of the Levinson '505 patent. Request page
95, line 8 through page 96, line 13, are hereby incorporated by reference from the request for
reexamination for their explanation of the teaching provided in Gifford that was not present in
the prosecution of the application which became the Levinson '505 patent. Further, there is a
substantial likelihood that a reasonable examiner would consider this teaching important in
deciding whether or not the claim is patentable. Accordingly, Gifford taken with Biggs raises a

Application/Control Number: 90/008,408                                          Page 5
Art Unit: 3992

substantial new question of patentability as to claims 2, 17, and 39, which question has not been
decided in a previous examination of the Levinson '505 patent.


10.     It is agreed that the consideration of Gifford taken with Ellis raises a substantial new
question of patentability as to claims 2, 7, 9, 10, 17, 22, 24, 25, 37, 39 and 44 of the Levinson
'505 patent. Request page 96, line 14 through page 100, are hereby incorporated by reference
from the request for reexamination for their explanation of the teaching provided in Gifford that
was not present in the prosecution of the application which became the Levinson '505 patent.
Further, there is a substantial likelihood that a reasonable examiner would consider this teaching
important in deciding whether or not the claim is patentable. Accordingly, Gifford taken with
Ellis raises a substantial new question of patentability as to claims 2, 7, 9, 10, 17, 22, 24, 25, 37,
39 and 44, which question has not been decided in a previous examination of the Levinson '505
patent.

Application/Control Number: 90/008,408                                    Page 6
Art Unit: 3992

*Conclusion*

11.     Extensions of time under 37 C.F.R §1.136(a) will not be permitted in this proceeding
because the provisions of 37 C.F.R. §1.136 apply only to "an Applicant" and not to parties in a
reexamination proceeding. Additionally, 35 U.S.C. §305 requires that *ex parte* reexamination
proceedings "will be conducted with <u>special dispatch</u>" (37 C.F.R. §1.550(a)). Extensions of time
in *ex parte* reexamination proceedings are provided for in 37 C.F.R. §1.550(c).

12.     The Patent Owner is reminded of the continuing responsibility under 37 C.F.R. §
1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding,
involving Patent number 5,404,505 throughout the course of this reexamination proceeding. The
third party requester is also reminded of the ability to similarly apprise the Office of any such
activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§
2207, 2282 and 2286.

Application/Control Number: 90/008,408                                      Page 7
Art Unit: 3992

### *How to Communicate with the USPTO*

ALL correspondence relating to this *ex parte* reexamination proceeding should be directed as
follows:

**Please mail any communications to:**

Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA 22313-1450

**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit

**Please hand-deliver any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

Majid A. Banankhah
CRU Examiner
GAU 3992
(571) 272-3770

Conferee:

CRU 3992

Conferee:

SUE LAO, OPQA

# Exhibit C

| Application Number | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 90/008,807 | 5404505 |
| | **Examiner** | **Art Unit** | |
| | Majid A. Banankhah | 3992 | |



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,807 | 08/01/2007 | 5404505 | | 5300 |

| | | | EXAMINER |
|---|---|---|---|

22913      7590      09/28/2007
**WORKMAN NYDEGGER**
60 EAST SOUTH TEMPLE
1000 EAGLE GATE TOWER
SALT LAKE CITY, UT  84111

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 09/28/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Steven B. Samuels

WOODCOCK WASHBURN LLP

Cira Centre

2929 Arch Street, 12th floor

Philadelphia, PA 19104-2891

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,807*.

PATENT NO. *5404505*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
| | 90/008,807 | 5404505 |
| | Examiner | Art Unit | |
| | Majid A. Banankhah | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>01 August 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,      b)☒ PTO/SB/08,      c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

   a) ☐  by Treasury check or,

   b) ☐  by credit to Deposit Account No. _____,  or

   c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action in *Ex Parte* Reexamination          Part of Paper No. 20070912

Application/Control Number: 90/008,807                                    Page 2
Art Unit: 3992

## *DECISION GRANTING EX PARTE REEXAMINATION*

1.      A substantial new question of patentability affecting claims 16, 21, and 22 of United States Patent number 5,404,505 is raised by the request for *ex parte* reexamination.

2.      The '505 patent is currently assigned to FINISAR CORPORATION of SUNYVALE CALIFORNIA. The '505 Patent issued from application Serial No. 07/786,453 ("the '453 Application"), which was filed on Nov. 1, 1991.

### *References that Raise SNQ*

3.      In the request for reexamination, the third part requester alleges that '505 patent claims 16, 20, and 21 are anticipated or rendered obvious in light of the following references:

1.      Peter Mothersole and Norman W. White, *Broadcast Data Systems Teletext and RDS* (Butterworths 1990) (hereinafter "Mothersole Book");

2.      P. L. Mothersole, "Broadcast Teletext Systems" and "Teletext Decoders", Chapters 60 and 61 of TV and Video Engineer's Reference Book, edited by K.G. Jackson and G.B.Townsend, 1991 (hereinafter "Mothersole Video Reference Book");

3.      Peter L. Mothersole, "Teletext and viewdata: new information systems using the domestic television receiver," Proc. IEE, Vol. 126, No. 12, pp. 1350-1354 (December 1979) (hereinafter "Mothersole Article").

4.      Jan Gecsei, The Architecture of Videotex Systems (Prentice-Hall 1983) (hereinafter "Gecsei");

5.      U.S. Patent No. 4,845,658, issued July 4, 1989 to David K. Gifford, and titled "Information Method and Apparatus Using Simplex and Duplex Communications" (hereinafter "Gifford 658");

6.      David K. Gifford, et al., "The Application of Digital Broadcast Communication to Large Scale Information Systems," IEEE Journal on Selected Areas in Communication, Vol. SAC-3, No. 3, May 1985, pp. 457-467 (hereinafter "Gifford - Communication");

Application/Control Number: 90/008,807                                    Page 3
Art Unit: 3992

7.     U.S. Patent 4,908,707, issued March 13, 1990 to Kinghorn, and
       titled "Video cassette recorder programming via teletext
       transmissions" (hereinafter "Kinghorn"); and

8.     Gwyn Morgan, "Britain's Teletext Services are a Commercial
       Success," Viewdata and Videotext, 1980-81: A Worldwide Report,
       Knowledge Industry Publications, Inc., 1980, pp. 341-357
       (hereinafter "Morgan").

The aforementioned newly cited references were not considered or
applied in rejecting any claim by the Examiner during the prosecution of the '453
application and are not cumulative to the art of record in the original file.

### Subsequent Request for ex parte Reexamination

4.     The Levinson '505 patent is the subject of two other recently ordered
Reexamination. The first one is the Reexamination Control No. 90/008,282, order
granted on 12/11/06, and the second one Reexamination Control No.
90/008,408, ordered on 03/21/07. In the first Reexamination, a substantial new
question of patentability (SNQ) of claim 16 (as well as other claims) was raised
based on Gecsei, and in the second Reexamination, SNQ of claim 16 (as well as
other claims) was raised in view of Kinghorn taken with Morgan, as well as in
view of Gifford 658 and Gifford - Communication references.

       In the present Reexamination the third party requester alleges that '505
patent claims 16, are anticipated based on the same cited art (Gecsei, Kinghorn
taken with Morgan, and Gifford 658 and Gifford - Communication) as in the, i.e.,
'282, and '408 Reexamination requests by requester. However, the MPEP 2240
(II) clearly states that:

> If a second or subsequent request for ex parte reexamination is filed (by any party) while
> a first ex parte reexamination is pending, the presence of a substantial new question of
> patentability depends on the prior art (patents and printed publications) cited by the
> second or subsequent requester. If the requester includes in the second or subsequent
> request prior art, which raised a substantial new question in the pending reexamination,
> reexamination should be ordered only if the prior art cited raises a substantial new
> question of patentability which is different *>from< that raised in the pending
> reexamination proceeding. If the prior art cited raises the same substantial new question
> of patentability as that raised in the pending reexamination proceedings, the second or
> subsequent request should be denied.

Application/Control Number: 90/008,807                                      Page 4
Art Unit: 3992

It is the position of the Examiner that, there exist a substantial new question of patentability (SNQ) with respect to at least claims 20 and 21of the "Levinson" '505 patent based on the art cited, being that the proposed rejections of claims 20 and 21 was not previously considered in the earlier request by the patent owner. However, with respect to claims 16, the request is directed to the reexamination of the claim that was considered by the Examiner in the order of 12/11/06, and 03/21/07, and therefore, the cited references does not raises a SNQ with respect to claim 16. Further, to the extent that the requester argues that proposed rejections in the request is different than the proposed rejection in the patent owner's request, it is noted that the grounds of proposed rejection in this request, pertaining to the limitations of these claims, are substantially identical (if not identical) to grounds of rejection already considered in patent owner's '282, and '408 Reexamination. Therefore, the proposed rejections of claim 16 in the instant request, does not raise a SNQ based on the cited references.

It is noted that if a second request for reexamination is filed prior to the issuance of a Notice of Intent to Issue Reexamination Certificate for the first reexamination proceeding, the proceedings generally will be merged. See MPEP 2283 (I).

5.    Since requester did not request reexamination of claims 1-15, 17-19, and 22-48 and did not assert the existence of a substantial new question of patentability (SNQ) for such claims (see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), normally such claims will not be reexamined[1]. However, in

---

[1] This matter was squarely addressed in *Sony Computer Entertainment America Inc., et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy, 2006 WL 1472462. The District Court upheld the Office's discretion to not reexamine claims in a reexamination proceeding other than those claims for which reexamination had specifically been requested. The Court stated:

"To be sure, a party may seek, and the PTO may grant, ...review of each and every claim of a patent. Moreover, while the PTO in its discretion may review claims for which ... review was not

the present situation, since the '505 patent is the subject of two other Reexamination proceedings, in the situation that the proceedings are merged, claims that are not requested to be examined in any of the three proceedings, will not be reexamined. In other words, claims 3-6, 8, 12, 13-15, 18-19, 23, 27, 28-36, 38, and 40-48, which are not requested to be examined in any of the three requests including the present request, will not be examined when the three Reexamination requests are merged.

### *Substantial New Question of Patentability*

6.     A prior art patent or printed publication raises a substantial new question of patentability where there is:

> (A)     a substantial likelihood that a reasonable Examiner would consider the prior art patent or printed publication **important** in deciding whether or not the claim is patentable, MPEP §2242 (I) and;

> (B)     the same question of patentability as to the claim has not been decided in a previous or pending proceeding or in a final holding of invalidity by a federal court. See MPEP §2242 (III).

A discussion of the specifics now follows:

7.     It is agreed that the consideration of Mothersole References raises a substantial new question of patentability as to claims 16, 20, and 21 of the Levinson '505 patent. Request page 18, section VI. (A.), through page 22, first paragraph, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Mothersole

---

requested, nothing in the statute compels it to do so. To ensure that the PTO considers a claim for ... review, ...requires that the party seeking reexamination demonstrate why the PTO should reexamine each and every claim for which it seeks review. Here, it is undisputed that **Sony** did not seek review of every claim under the '213 and '333 patents. Accordingly, **Sony** cannot now claim that the PTO wrongly failed to reexamine claims for which **Sony** never requested review, and its argument that AIPA compels a contrary result is unpersuasive.".

References that was not present in the prosecution of the application which became the Levinson '505 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable. Accordingly, Mothersole References raises a substantial new question of patentability as to claims 16, 20, and 21, which question has not been decided in a previous examination of the Levinson '505 patent.

8.    It is agreed that the consideration of Gecsei raises a substantial new question of patentability as to claim 20, of the Levinson '505 patent. Request page 27, section VI. (B.2.), to paragraph bridging through page 28, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Gecsei that was not present in the prosecution of the application which became the Levinson '505 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable. Accordingly, Gecsei raises a substantial new question of patentability as to claims 20, which question has not been decided in a previous examination of the Levinson '505 patent.

9.    It is agreed that the consideration of Gecsei and Mothersole references raises a substantial new question of patentability as to claim 21, of the Levinson '505 patent. Request page 28, section VI. (B.3), through page 29, first paragraph, after the partial paragraph, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Gecsei and Mothersole references that was not present in the prosecution of the application which became the Levinson '505 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable. Accordingly,

Gecsei and Mothersole references raises a substantial new question of patentability as to claims 21, which question has not been decided in a previous examination of the Levinson '505 patent.

10.    It is agreed that the consideration of Gifford raises a substantial new question of patentability as to claim 20, of the Levinson '505 patent. Request page 30, section VI. (C.1.), first paragraph, are hereby incorporated by reference from the request for reexamination for their explanation of.the teaching provided in Gifford that was not present in the prosecution of the application which became the Levinson '505 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable. Accordingly, Gifford raises a substantial new question of patentability as to claims 20, which question has not been decided in a previous examination of the Levinson '505 patent.

11.    It is agreed that the consideration of Gifford and Mothersole references raises a substantial new question of patentability as to claim 21, of the Levinson '505 patent. Request page 30, section VI. (C.2.), second paragraph, through page 31, first partial paragraph, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Gifford and Mothersole references that was not present in the prosecution of the application which became the Levinson '505 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable. Accordingly, Gifford and Mothersole references raises a substantial new question of patentability as to claims 21, which question has not been decided in a previous examination of the Levinson '505 patent.

Application/Control Number: 90/008,807                                    Page 8
Art Unit: 3992

12.    It is agreed that the consideration of Kinghorn and Morgan, taken with
Gecsei, Gifford, or the Mothersole references raises a substantial new question
of patentability as to claims 20, and 21, of the Levinson '505 patent. Request
page 31, section VI. (D.1-2.), second paragraph, are hereby incorporated by
reference from the request for reexamination for their explanation of the teaching
provided in Kinghorn and Morgan, taken with Gecsei, Gifford, or the Mothersole
references that was not present in the prosecution of the application which
became the Levinson '505 patent. Further, there is a substantial likelihood that a
reasonable examiner would consider this teaching important in deciding whether
or not the claims are patentable. Accordingly, Kinghorn and Morgan, taken with
Gecsei, Gifford, or the Mothersole references raises a substantial new question
of patentability as to claims 20, and 21, which question has not been decided in
a previous examination of the Levinson '505 patent.

Application/Control Number: 90/008,807                                   Page 9
Art Unit: 3992

### *Conclusion*

13.    Extensions of time under 37 C.F.R §1.136(a) will not be permitted in this proceeding because the provisions of 37 C.F.R. §1.136 apply only to "an Applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. §305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 C.F.R. §1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 C.F.R. §1.550(c).

14.    The Patent Owner is reminded of the continuing responsibility under 37 C.F.R. § 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent number 5,404,505 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/008,807                                      Page 10
Art Unit: 3992

## NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

Application/Control Number: 90/008,807                          Page 11
Art Unit: 3992

### *How to Communicate with the USPTO*

ALL correspondence relating to this *ex parte* reexamination proceeding should
be directed as follows:

**Please mail any communications to:**

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P. O. Box 1450
> Alexandria VA  22313-1450

**Please FAX any communications to:**

> (571) 273-9900
> Central Reexamination Unit

**Please hand-deliver any communications to:**

> Customer Service Window
> Attn:  Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulany Street
> Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the
Reexamination Legal Advisor or Examiner, or as to the status of this proceeding,
should be directed to the Central Reexamination Unit at telephone number (571)
272-7705.

Signed:

Majid A. Banankhah
CRU Examiner
GAU 3992
(571) 272-3770

Conferee:

Conferee:

71338  U.S. PTO



08/01/07

1338  U.S. PTO
**90008807**

08/01/07
Sheet 1 of 2

| **Form PTO-1449 Modified**<br><br>**37 CFR 1.501**<br>**INFORMATION DISCLOSURE CITATION**<br>**IN A PATENT**<br>(Use several sheets if necessary)<br><br>U.S. Department of Commerce<br>Patent and Trademark Office | **Docket No./Reexamination Control No:.** | **Patent No.**<br>5,404,505 |
|---|---|---|
| | **Applicant**<br>**Frank H. Levinson** | |
| | **Issue Date**<br>**April 4, 1995** | **Group**<br>**Not Yet Assigned** |

| | | **OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)** |
|---|---|---|
| *MB* | 1 | Gecsei, J., The Architecture of Videotex Systems, 1983 |
| *MB* | 2 | Gifford, D.K. et al., "The Application of Digital Broadcast Communication to Large Scale Information Systems", *IEEE Journal on Selected Areas in Communication*, May 1985, Vol SAC-3(3), 457-467 |
| *MB* | 3 | Morgan, G., "Britain's Teletext Services are a Commercial Success", *Viewdata and Videotext, 1980-1981, A Worldwide Report*, Knowledge Industry Publications, Inc., pp 341-357 |
| *MB* | 4 | Mothersole, P. et al., *Broadcast Data Systems Teletext and RDS*, (Butterworths), 1990 |
| *MB* | 5 | Mothersole, P.L., "Broadcast Teletext Systems" and "Teletext Decoders", *TV and Video Engineer's Reference Book*, 1991, Chapters 60 and 61 |
| *MB* | 6 | Mothersole, P.L., "Teletext and Viewdata: New Information systems using the Domestic Television Receiver", *Proc IEEE*, December 1979, 126(12), 1350-1354 |
| | | |
| | | |
| | | |
| | | |

| **EXAMINER** *Mojia Banerhal* | **DATE CONSIDERED** *9/12/07* |
|---|---|

| Form PTO-1449 Modified<br><br>37 CFR 1.501<br>**INFORMATION DISCLOSURE CITATION<br>IN A PATENT**<br>(Use several sheets if necessary) | Docket<br>No./Reexamination<br>Control No:. | Patent No.<br>5,404,505 |
|---|---|---|
| | **Applicant**<br>Frank H. Levinson | |
| | **Issue Date**<br>April 4, 1995 | **Group**<br>Not Yet Assigned |

### U. S. PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Name | Class | Subclass |
|---|---|---|---|---|---|---|
| MB | 7 | 4,845,658 | 07/1989 | Gifford | 364 | 900 |
| MB | 8 | 4,908,707 | 03/1990 | Kinghorn | 358 | 147 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Country | Translation YES | NO |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EXAMINER *Majid Benenliah* | DATE CONSIDERED *9/12/07* |
|---|---|

# Exhibit D



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

## _Ex Parte_ Reexamination Filing Data  - September 30, 2007

1.  Total requests filed since start of ex parte reexam on 07/01/81 . . . . . . . . . . . . . . . . .  8895[1]

    a.  By patent owner        3472   39%
    b.  By other member of public    5258   59%
    c.  By order of Commissioner    165   2%

2.  Number of filings by discipline

    a.  Chemical Operation       2671   30%
    b.  Electrical Operation      2958   33%
    c.  Mechanical Operation    3266   37%

3.  Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 511 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | 2007 | 643 |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4.  Number known to be in litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2303    26%

5.  Determinations on requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8557

    a.  No. granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7845 . . . . . . . . .  92%

        (1)  By examiner              7732
        (2)  By Director (on petition)    113

    b.  No. denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 712 . . . . . . . . . .  8%

        (1)  By examiner              677
        (2)  Order vacated          35

---

[1]Of the requests received in FY 2007, 23 requests have not yet been accorded a filing date, and preprocessing of 36 requests was terminated for failure to comply with the requirements of 37 CFR 1.510.  See Clarification of Filing Date Requirements for _Ex Parte_ and _Inter Partes_ Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

6.   Total examiner denials (includes denials reversed by Director)  . . . . . . . . . . . . . . . . . . .  790

    a.   Patent owner requester                439       56%
    b.   Third party requester                 351       44%

7.   Overall reexamination pendency  (Filing date to certificate issue date)

    a.   Average pendency                 23.7 (mos.)
    b.   Median pendency                 18.4 (mos.)

8.   Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.   All claims confirmed | 23% | 29% | 12% | 26% |
| b.   All claims cancelled | 7% | 12% | 21% | 10% |
| c.   Claims changes | 70% | 59% | 67% | 64% |

9.   Total ex parte reexamination certificates issued (1981 - present)  . . . . . . . . . . . . . . . . .  5902

    a.   Certificates with all claims confirmed       1527   26%
    b.   Certificates with all claims canceled       613   10%
    c.   Certificates with claims changes        3762   64%

10.   Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.   Certificates - PATENT OWNER REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . .  2545

        (1)  All claims confirmed            581   23%
        (2)  All claims canceled            187    7%
        (3)  Claim changes              1777   70%

    b.   Certificates - 3rd PARTY REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3211

        (1)  All claims confirmed            928   29%
        (2)  All claims canceled             397   12%
        (3)  Claim changes             1886   59%

    c.   Certificates - COMM'R INITIATED REEXAM . . . . . . . . . . . . . . . . . . . . . . . . . . .  146

        (1)  All claims confirmed             18   12%
        (2)  All claims canceled             30   21%
        (3)  Claim changes             98   67%

C:\Documents and Settings\LKryza\My Documents\zkryza\Reexam Reports\REXSTATz xp Sep2007.wpd

# Exhibit E

1

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   COMCAST CABLE COMMUNICATIONS
     CORPORATION, LLC, a Pennsylvania
11   Corporation,                                No. C 06-04206 WHA

12              Plaintiff,

13     v.                                        **ORDER DENYING STAY
                                                 AND REQUIRING
14   FINISAR CORPORATION, a Delaware             COMCAST TO PRODUCE
     Corporation,                                CERTAIN RECORDS**
15
16              Defendant.
                                    /
17

18          Nine months ago, Comcast Cable Communications Corporation, LLC, sought the

19   protection of the Court's declaratory-relief jurisdiction, seeking a determination that its cable

20   system does not infringe the patent in suit, a patent owned by defendant Finisar Corporation.

21   We have now had five hearings in the case, including a *Markman* hearing.  A claim

22   construction order will be filed soon.

23          Based on the PTO's grants of two reexaminations concerning the patent in suit, Finisar

24   has made the instant motion to stay all proceedings.  At first, Comcast strongly opposed the

25   stay, arguing, among other things, that the claim construction effort would go to waste were the

26   case stayed.  After Finisar pointed out, however, that Comcast had yet produced no documents

27   in discovery and after the Court then inquired why Comcast should not be required to produce

28

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1    documents sufficient to assess infringement, Comcast reversed course and joined in the request

2    for a stay. For the reasons below, Comcast's original opposition was more persuasive.*

3        The Court, of course, recognizes the possible benefits of a stay. Conceivably, the

4    reexaminations might result in a narrowing of a claim in suit. In the Court's experience, this is

5    plausible but not likely, at least not likely to make an important difference. It is also

6    conceivable that an entire claim could be cancelled. This, in the Court's experience, is even

7    less likely. The chance that all claims in suit would evaporate is nonexistent as a practical

8    matter, even before considering that some claims in suit will not be covered by the

9    reexaminations.

10       We must remember that validity of the claims in suit has already been tested and held

11   valid in the Texas action, involving as well the same prior-art references. The PTO statistics

12   cited by counsel roll together all reexaminations and do not focus on the subset of all patents

13   already vetted through a full proceeding in district court. This does not mean our jury will

14   agree with the Texas jury. It does, however, reduce the applicability of the gross statistics.

15       As here, reexaminations can be filed by strangers to the litigation (or by the litigants

16   themselves) at seemingly random moments over the span of patent litigation. If litigation were

17   stayed every time a claim in suit undergoes reexamination, federal infringement actions would

18   be dogged by fits and starts. Federal court calendars should not be hijacked in this manner.

19   From a case management perspective, the possible benefits must be weighed in each instance

20   against the possible drawbacks.

21       Had this motion been made back when Finisar first learned that the reexamination was

22   under consideration or even when it learned that it had been granted, the calculus might have

23

24   ————————————

     * The second reexamination is so similar to the first that it is hard to see why it might have caused
25   Comcast to reverse field. Both reexaminations involve claims 1, 2, 7, 9–11, 16, 17, 22, 24–26, 37, and 39.
     The second request adds only claim 44, which is not at issue in this action. The two requests identify different
26   prior-art references, but the references themselves disclose similar systems. The references cited by the first
     request disclose a videotex system that transfers digitally-encoded information via cable, satellite, and telephone
27   to subscribers. In the second request, one new reference discloses teletext systems for facilitating the recording
     of television programs to subscribers' VCRs. Another discloses a media broadcast system that uses one-way
     broadcasting and two-way communications to deliver digital information to customers. All these references
28   come from the same technical field and employ some of the same techniques.

2

been different. But as Comcast observes (Br. 6), the Court has invested a large amount of time in preparing a claim construction ruling. We are nine months into the case and eleven months from trial.

Significantly, the parties are on the verge of producing documents after much preparation to do so. Finisar, to its credit, has already produced some 30,000 pages of documents. To wring some good from this preparation, Comcast should promptly produce for inspection and copying all manuals, schematics, software and other documents needed to determine whether the Comcast system meets any and all of the limitations of the claims in suit, taking into account the claim construction order and taking into account, as to any other phrases in dispute, the competing constructions. Even if the case is eventually stayed, discovery will advance the goal of informing counsel of the merits. This may well lead to a negotiated license and end the controversy altogether. Given what has occurred to date, it would be wasteful to simply stay the case and wait years before trying to ramp up again.

We have much work to do in this case that will need to be done regardless of any probable outcome in the reexaminations. Conceivably, as we approach trial, the calculus will shift in favor of a stay, particularly if the Texas appeal is nearing a decision, but for now the best course is to reap the benefits of the preparation invested to date, both on claim construction and on discovery.

Counsel have cited to various factors taken into account by other district judges in deciding whether to grant stays. Those factors do not neatly address the case management concerns most pertinent here, namely the large investment in the unfinished claim construction process and the large investment in preparation to produce a mass of documents, most of which work would have to be reduplicated later were a stay now granted. And, we are on the verge of discovery sufficient for counsel to master the merits and possibly to negotiate a license, an opportunity that would be wasted by a stay. For the foregoing reasons, the motion to stay is **DENIED**.

When an accused infringer seeks the protection of the Court's declaratory relief jurisdiction, it should be quick to open its files, saying, "See, we do not infringe." It should not

United States District Court
For the Northern District of California

1    fold its arms and say, "Now that we have outmaneuvered you and anchored our dispute in a

2    venue of our choice, we will go very slow in letting you see our files." This case has been

3    pending nine months. While Comcast claims to have spent millions preparing to produce its

4    records, the sad fact is that it had not yet produced a single page until the hearing on this motion

5    (April 25). This is not in keeping with the obligations of a declaratory-relief plaintiff.

6    The Court will presume that Comcast filed this action for sincere reasons and not simply to

7    avoid a Texas venue. The considerable talents of its counsel should be devoted to getting the

8    job done of producing the necessary records rather than composing long lists of why it cannot

9    be done.

10    ·    Without prejudice to other discovery requests, Comcast must produce by NOON ON

11    APRIL 20, 2007, all manuals, schematics, software and other documents necessary to explain

12    how the Comcast system works with respect to each of the limitations of all claims in suit.

13    The production shall be in the traditional hard-copy format. All materials shall be for attorney's

14    eyes only until such as a formal protective order is entered. Please do not ask for any

15    extensions. All other discovery shall go forward promptly.

16

17    **IT IS SO ORDERED.**

18

19    Dated: April 5, 2007.

20                                          WILLIAM ALSUP
                                           UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

4

# Exhibit F

1    John F. Sweeney (appearance *pro hac vice*)
     Gerard A. Haddad (appearance *pro hac vice*)
2    Tod M. Melgar (appearance *pro hac vice*)
     Danielle V. Tully (appearance *pro hac vice*)
3    MORGAN & FINNEGAN, LLP
     3 World Financial Center
4    New York, NY 10281-2101
     Telephone:  212-415-8700
5    Facsimile:  212-415-8701
     jsweeney@morganfinnegan.com
6    ghaddad@morganfinnegan.com
     tmelgar@morganfinnegan.com
7    dtully@morganfinnegan.com

8    George Tacticos (Bar No. 60089)
9    MORGAN & FINNEGAN, LLP
     44 Montgomery Street, Suite 2550
10   San Francisco, California 94104
     Telephone:  415-318-8800
11   Facsimile:  415-676-5816
     gtacticos@morganfinnegan.com
12
     Attorneys for Defendant
13   FINISAR CORPORATION

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16               SAN FRANCISCO DIVISION

17

18   COMCAST CABLE COMMUNICATIONS        )   Case No. C-06-04206-WHA
     CORPORATION                         )
                                         )   NOTICE OF MOTION AND MOTION TO STAY ALL
19          Plaintiff and Counterclaim   )   PROCEEDINGS PENDING REEXAMINATION OF
            Defendant,                   )   U.S. PATENT NO. 5,404,505
20                                       )
                                         )   Date: Thursday, April 5, 2007
21          v.                           )   Time:  8:00 A.M.
                                         )   Judge: Hon. William Alsup
22   FINISAR CORPORATION,                )   Courtroom: 9, 19th Floor
                                         )
23          Defendant and Counterclaim   )
            Plaintiff.                    )
24   ────────────────────────────────────

25

26

27   NOTICE OF MOTION AND MOTION TO STAY ALL
     PROCEEDINGS PENDING REEXAMINATION OF U.S.
     PATENT NO. 5,404,505
28   Case No. C 06-04206 (WHA)

## Table of Contents

**Page**

I.    Statement Of Issues To Be Decided .................................................................. 2

II.   Background On *Ex Parte* Reexamination ........................................................... 3

III.  Argument.......................................................................................................... 4

    A.    Stays Are Liberally Granted Pending The Outcome Of PTO Reexamination
        Proceedings........................................................................................... 4

    B.    Comcast Will Not Be Prejudiced Or Disadvantaged By Staying the Litigation .......... 5

    C.    Staying This Case Will Simplify Issues And Conserve Judicial And Party
        Resources.............................................................................................. 7

    D.    Courts Routinely Stay Proceedings When The Stay Is Requested Early In
        Litigation ............................................................................................. 9

IV.   Conclusion........................................................................................................ 11

NOTICE OF MOTION AND MOTION TO STAY ALL
PROCEEDINGS PENDING REEXAMINATION OF U.S.
PATENT NO. 5,404,505
Case No. C 06-04206 (WHA)

1050037 v1

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

4  <u>CASES</u>

5  <u>Abbott Diabetes Care, Inc. v. DexCom, Inc.,</u>
   2006 U.S. Dist. LEXIS 57469 (D. Del. 2006) ........................................................... 4

6

7  <u>Alloc, Inc. v. Unilin Décor N.V.,</u>
   2003 U.S. Dist. LEXIS 11917 (D. Del. 2003) ........................................................... 5

8  <u>ASCII Corp. v. STD Entm't USA, Inc.,</u>
   844 F. Supp. 1378 (N.D. Cal. 1994).........................................................................4, 7

9

10 <u>Bausch & Lomb Inc. v. Alcon Lab., Inc.,</u>
   914 F. Supp. 951 (W.D.N.Y. 1996) ........................................................................7, 8

11

12 <u>E.I. Dupont de Nemours & Co. v. Phillips Petroleum Co.,</u>
   711 F. Supp. 1205 (D. Del. 1989) .............................................................................10

13 <u>Gioello Enters. Ltd. v. Mattel, Inc.,</u>
   2001 WL 125340 (D. Del. 2001) ..........................................................................5, 10

14

15 <u>Gould v. Control Laser Corp.,</u>
   705 F.2d 1340 (Fed. Cir. 1983)................................................................................4, 7

16

17 <u>Lentek Int'l, Inc. v. Sharper Image Corp.,</u>
   169 F. Supp. 2d 1360 (M.D. Fla. 2001).............................................................4, 8, 10

18 <u>Patlex Corp. v. Mossinghoff,</u>
   758 F.2d 594 (Fed. Cir. 1985)................................................................................4, 8

19

20 <u>Perricone v. Unimed Nutritional Services, Inc.,</u>
   2002 U.S. Dist. LEXIS 17613 (D. Conn. 2002) ......................................................5, 8

21

22 <u>Purolite Int'l, Ltd. v. Rohm and Haas Co.,</u>
   1992 U.S. Dist. LEXIS 8252 (E.D. Pa. 1992) ...........................................................9

23 <u>Snyder Seed Corp. v. Scrypton Sys., Inc.,</u>
   1999 U.S. Dist. LEXIS 12149 (W.D.N.Y. 1999)........................................................9

24

25 <u>Softview Computer v. Haworth, Inc.,</u>
   2000 U.S. Dist. LEXIS 11274 (S.D.N.Y. 2000) ........................................................6

26

27

**NOTICE OF MOTION AND MOTION TO STAY ALL
PROCEEDINGS PENDING REEXAMINATION OF U.S.
PATENT NO. 5,404,505**
Case No. C 06-04206 (WHA)

1050037 v1

28

_Sulzer, Inc. v. Black Clawson Company_,
   1995 U.S. Dist. LEXIS 8328 (S.D.N.Y. 1995) ...................................................................10

_Target Therapeutics, Inc. v. SciMed Life Sys., Inc._,
   33 U.S.P.Q.2d 2022 (N.D. Cal. 1995) ...............................................................................5, 6

_United Merchants and Mfrs. v. Henderson_,
   495 F. Supp. 444 (N.D. Ga. 1980) ........................................................................................ 9

_Wayne Automation Corp. v. R.A. Pearson Co._,
   782 F. Supp. 516 (E.D. Wash. 1991) ..................................................................................10

## STATUTES

35 U.S.C. § 302 ................................................................................................................... 3

35 U.S.C. § 304 ................................................................................................................... 3

35 U.S.C. § 305 ................................................................................................................3, 6

35 U.S.C. § 307 ................................................................................................................... 4

35 U.S.C. § 311 ................................................................................................................... 3

35 U.S.C. § 312 ................................................................................................................... 3

35 U.S.C. § 314 ................................................................................................................3, 6

## OTHER AUTHORITIES

Patent Reexamination: Hearings on S. 1679
   Before the Comm. On the Judiciary,
   96th Cong., 1st Sess. 1 (1979) ......................................................................................... 8

Paul Morgan & Bruce Stoner, "Reexamination vs. Litigation –
   Making Intelligent Decisions In Challenging Patent Validity",
   86 J. PAT. & TRADEMARK OFF. SOC'Y 441 (2004) .........................................................2, 3, 6

The Manual of Patent Examining Procedure ("MPEP")
   § 2686.04 (8th ed., Aug. 2006 rev.) ..................................................................................... 6

**NOTICE OF MOTION AND MOTION TO STAY ALL
PROCEEDINGS PENDING REEXAMINATION OF U.S.
PATENT NO. 5,404,505**
Case No. C 06-04206 (WHA)

1050037 v1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that that on April 5, 2007, at 8:00 a.m., or at an earlier time should the Court grant Defendant Finisar Corporation's *Ex Parte* Application To Shorten Time On Defendant's Motion To Stay All Proceedings Pending Reexamination Of U.S. Patent No. 5,404,505, filed herewith, Defendant and Counterclaim Plaintiff Finisar Corporation ("Finisar") will move the Court for an Order to stay all proceedings in this case since U.S. Patent No. 5,404,505 ("the '505 patent"), the only patent at issue in this case, is currently subject to two separate reissue and reexamination proceedings in the U.S. Patent and Trademark Office.

The '505 patent is currently the subject of two *ex parte* reexamination requests filed with the United States Patent and Trademark Office ("PTO"). The *ex parte* requests present new questions of patentability to the patent office based on certain references not previously considered by the PTO, including references raised by Plaintiff and Counterclaim Defendant Comcast Cable Communications Corporation ("Comcast") here. Because these *ex parte* reexamination requests are likely to change or simplify issues of validity and infringement, and because doing so would conserve resources, Finisar requests that this Court enter an order staying these proceedings pending the completion of all *ex parte* reexaminations.

This motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, copies of the requests filed with the United States Patent and Trademark Office to reexamine Finisar's '505 patent, and all pleadings, records and documents on file in this action and on such other and further evidence which the Court may receive at the hearing on the matter.

-1-

NOTICE OF MOTION AND MOTION TO STAY ALL
PROCEEDINGS PENDING REEXAMINATION OF U.S.
PATENT NO. 5,404,505
CASE NO. C 06 04206 (WHA)

1050037 v1

## I.    STATEMENT OF ISSUES TO BE DECIDED

As this Court is aware, this patent infringement case involves – and only involves – Finisar's '505 patent. Finisar contends, and Comcast denies, that Comcast infringes the patent. Comcast contends the patent is invalid, and cites various prior art references in support of its invalidity contentions. The case came to issue less than three months ago, no documents have been produced, no depositions have been noticed or taken, and trial is still over a year away.

Unbeknownst to Finisar at the time, on October 5, 2006, a third party requested the PTO conduct an *ex parte* reexamination of the '505 patent. (Tully Decl. ¶ 3, Ex. 1, Request for *Ex Parte* Reexamination of U.S. Patent No. 5,404,505, filed October 5, 2006). On December 11, 2006, the PTO entered an order granting the request, and provided notice of the request and order to Finisar.[1] (Tully Decl. ¶ 4, Ex. 2, Order Granting Request for *Ex Parte* Reexamination, mailed December 11, 2006). Thereafter, a second request for *ex parte* reexamination was filed on January 12, 2007. (Tully Decl. ¶ 7, Ex. 5, Request for *Ex Parte* Reexamination of U.S. Patent No. 5,404,505, filed January 12, 2007). At the time of this motion, the PTO has yet to enter an order either granting or

---

[1] Based on statistics published on the PTO's website concerning the number of *ex parte* requests considered and the number of requests granted, it is nearly certain this second request will be granted. Over 95% of all requests for *ex parte* reexamination considered from 2002 through the close of fiscal year 2006 have been granted by the PTO. In fiscal year 2006, the PTO made 453 determinations on *ex parte* reexamination requests and granted 422, or 93.2%, of the requests. See Tully Decl. ¶ 5, Ex. 3, "USPTO Performance and Accountability Report for Fiscal Year 2006," available at http://www.uspto.gov/web/offices/com/annual/2006/2006annualreport-2.pdf, at p. 133; see also, Tully Decl. ¶ 6, Ex. 4, Paul Morgan & Bruce Stoner, "Reexamination vs. Litigation – Making Intelligent Decisions In Challenging Patent Validity", 86 J. PAT. & TRADEMARK OFF. SOC'Y 441, 462 (2004), (indicating that between July 1, 1981 and September 30, 2003, where a third party requested reexamination, claims were amended in 58% of cases and no change to claims was made in 30% of cases).

-2-

NOTICE OF MOTION AND MOTION TO STAY ALL
PROCEEDINGS PENDING REEXAMINATION OF U.S.
PATENT NO. 5,404,505
Case No. C 06-04206 (WHA)

1  denying this second request, though it is almost certain to do, based on PTO statistics. (See footnote

2  1, supra.)

3

4  　　　Courts routinely stay litigation concerning patents submitted to the PTO for reexamination,

5  especially at the early stages of litigation.  The reasons are simple – the PTO will provide its

6  expertise in determining patentability and validity of the claims at issue in the litigation and whether

7  these claims must be amended or whether additional claims may be added in light of the cited

8  references.  As the courts and legislature both have recognized, staying the litigation until this

9  determination is made conserves judicial and party resources.  For these reasons, Finisar moves for a

10  stay of all matters in this litigation, pending the outcome of the PTO's *ex parte* reexamination of the

11  '505 patent.

12

13  **II.　　BACKGROUND ON *EX PARTE* REEXAMINATION**

14  　　　Under the Patent Statute any person is permitted, at any time, to request that the PTO

15  reexamine an issued patent.  35 U.S.C. § 302.  The PTO must grant a request for reexamination if the

16  PTO determines that "a substantial new question of patentability affecting any claim of the patent" is

17  raised by a request.  35 U.S.C. §§ 304 and 312.  During reexamination, the PTO reexamines the

18  patent in view of printed publications and issued patents.  Id. at 305 and 311(a).  As part of the

19  reexamination process, patent owners may amend the patent claims or add new claims, as long as

20  they do not broaden the scope of the original claims.  35 U.S.C. §§ 305 and 314(a).  Indeed, 58% of

21  all third-party *ex parte* reexaminations result in changed claims.  Morgan & Stoner, supra at 462.  At

22  the conclusion of an *ex parte* reexamination proceeding, the PTO issues a reexamination certificate

23  canceling any claim determined to be unpatentable, confirming patentable claims, and incorporating

24

25

26  　　　　　　　　　　　　　-3-

27  **NOTICE OF MOTION AND MOTION TO STAY ALL**
28  **PROCEEDINGS PENDING REEXAMINATION OF U.S.**
　　**PATENT NO. 5,404,505**
　　**Case No. C 06-04206 (WHA)**

1050037 v1

1    any amended or new claims.  35 U.S.C. § 307.  The reexamination process and results are admissible

2    at trial, and are to be taken into account by both the trial judge and jury.  See Patlex Corp. v.

3    Mossinghoff, 758 F.2d 594, 603 (Fed. Cir. 1985).

4

5    **III.    ARGUMENT**

6         **A.    Stays Are Liberally Granted Pending The Outcome Of PTO Reexamination
                   Proceedings**

7         A district court has the inherent power to control and manage its docket, "including the

8    authority to order a stay pending conclusion of a PTO reexamination."  Ethicon, Inc. v. Quigg, 849

9    F.2d 1422, 1426-27 (Fed. Cir. 1988); Patlex, 758 F.2d at 603; Gould v. Control Laser Corp., 705

10   F.2d 1340, 1342 (Fed. Cir. 1983); Abbott Diabetes Care, Inc. v. DexCom, Inc., 2006 U.S. Dist.

11   LEXIS 57469 at *17 (D. Del. 2006).  In exercising this authority, courts commonly stay patent

12   litigation when the patent-in-suit undergoes reexamination in the PTO.  See, e.g., ASCII Corp. v.

13   STD Ent'm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("[T]here is a liberal policy in

14   favor of granting motions to stay proceedings pending the outcome of USPTO reexamination . . .

15   proceedings.").  Indeed, "The stay of pending litigation to enable PTO review of contested patents

16

17   was one of the specified purposes of the reexamination legislation."  Patlex, 758 F.2d at 606;  See

18   also Lentek Int'l, Inc. v. Sharper Image Corp., 169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001) ("As

19   several courts have noted, the sponsors of the patent reexamination legislation clearly favored the

20   liberal grant of stays by the district courts when patents are submitted for reexamination as a

21   mechanism for settling disputes quickly and less expensively and for providing the district courts

22   with the expertise of the patent office.")

23

24

25

26                                           -4-

27                        NOTICE OF MOTION AND MOTION TO STAY ALL
                          PROCEEDINGS PENDING REEXAMINATION OF U.S.
28                        PATENT NO. 5,404,505
                          Case No. C 06-04206 (WHA)

1050037 v1

1    Courts have typically considered the following factors in evaluating a motion to stay

2    proceedings pending the outcome of a reexamination:  (1) whether a stay would unduly prejudice or

3    present a clear tactical disadvantage to the non-moving party; (2) whether a stay would simplify the

4    issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial

5    date has been set.  Alloc, Inc. v. Unilin Décor N.V., 2003 U.S. Dist. LEXIS 11917, at *5 (D. Del.

6    2003); Perricone v. Unimed Nutritional Services, Inc., 2002 U.S. Dist. LEXIS 17613, at *2 (D.

7    Conn. 2002); Gioello Enters. Ltd. v. Mattel, Inc., 2001 WL 125340, at *1 (D. Del. 2001); Target

8    Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995).  Although

9    no one factor is dispositive of the issue, each factor here weighs heavily in favor of granting a stay.

10

11         **B.    Comcast Will Not Be Prejudiced or Disadvantaged By Staying the Litigation**

12         Comcast will not suffer injury or prejudice if the litigation is stayed.  First, the litigation is in

13   its very earliest stages.  Finisar answered the Complaint on November 22, 2006, asserting

14   counterclaims and Comcast filed its answer to these counterclaims on December 8, 2006.  The case

15   thus has been at issue less than three months and, as noted above, document production has not yet

16   begun.  Moreover, although a Markman tutorial and hearing have been scheduled, they have not

17   been held.  Trial is still over a year away.  Clearly, Finisar, who learned only 11 weeks ago of the

18   reexamination and has attempted to negotiate a stay with Comcast, (Tully Decl. ¶ 8) has not delayed

19   in bringing this motion.

20

21         Moreover, Comcast's legal expenses going forward will only be lessened if this case is

22   stayed.  The reexamination proceeding (conducted *ex parte* and without third party participation)

23   costs Comcast nothing.  When the reexamination has concluded and this litigation proceeds, the

24

25

26                                        -5-

27   **NOTICE OF MOTION AND MOTION TO STAY ALL**
     **PROCEEDINGS PENDING REEXAMINATION OF U.S.**
28   **PATENT NO. 5,404,505**
     **Case No. C 06-04206 (WHA)**

1    issues subject to discovery and trial will be more focused. As recognized by the courts, proceeding

2    with discovery and trial in parallel with reexamination risks expending efforts on construing and

3    litigating claims that may be amended, while not addressing other claims that may issue from the

4    PTO proceeding. This potential for wasted effort justifies staying litigation pending PTO

5    proceedings. See, e.g. Softview Computer v. Haworth, Inc., 2000 U.S. Dist. LEXIS 11274, at *6-

6    *11 (S.D.N.Y. 2000); Target Therapeutics, 33 U.S.P.Q.2d at 2023 ("Absent a stay, the parties may

7

8    end up conducting a significantly wider scope of discovery than necessary, and the court may waste

9    time examining the validity of claims which are modified or eliminated altogether during

10   reexamination."). There is no reason for the parties to expend hundreds of thousands, or even

11   millions, of dollars in proceeding with this case without first knowing the full scope of the '505

12   patent claims.

13

14          Moreover, prosecution of the reexamination should be concluded quickly as such

15   proceedings are conducted "with special dispatch" in the PTO. 37 C.F.R. § 1.937(a) ; 35 U.S.C. §§

16   305 and 314(c); The Manual of Patent Examining Procedure ("MPEP") § 2686.04 (I.) (8th ed., Aug.

17   2006 rev.) (Where the "litigation is stayed for the purpose of reexamination, all aspects of the

18   proceeding will be expedited to the extent possible."). Because the median time from request to

19   decision is only 16.6 months (Morgan and Stoner, supra at 461), the PTO is likely to issue its

20

21   reexamination certificate before the March 2008 trial date. Without a stay, the parties will conduct

22   discovery and prepare for trial on the claims as currently understood, only to face the very likely

23   (58%) event that – shortly before trial – the claims will have changed. As stated in Target

24   Therapeutics, Inc., 33 U.S.P.Q. 2d at 2022:

25

26                                          -6-

27                        NOTICE OF MOTION AND MOTION TO STAY ALL
                          PROCEEDINGS PENDING REEXAMINATION OF U.S.
28                        PATENT NO. 5,404,505
                          Case No. C 06-04206 (WHA)

1050037 v1

1
2
3
4
5

"The claims of the patent will likely be amended or narrowed during reexamination. The final form of the claims therefore will remain uncertain until the conclusion of the reexamination procedure. It makes sense to ascertain the ultimate scope of the claims before trying to figure out whether defendants' products infringe the patent-in-suit. Absent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary, and the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination."

6    (citation omitted). The same is true here. Knowing how the claims will be changed here before the

7    expenses of discovery and trial preparation hardly is prejudicial, and in fact strongly supports a stay.

8
9

**C.    Staying This Case Will Simplify Issues and Conserve Judicial and Party Resources**

10    Staying this patent litigation pending conclusion of the PTO reexamination proceedings

11    conserves judicial resources, simplifies issues for trial and avoids the potential of duplicate

12    proceedings in the event the claims are revised in the reexamination certificate. Bausch & Lomb

13    Inc. v. Alcon Lab., Inc., 914 F. Supp. 951, 953 (W.D.N.Y. 1996). "One purpose of the

14
15    reexamination procedure is to eliminate trial of [the issue of claim validity] (when the claim is

16    cancelled) or to facilitate trial of that issue by providing the district court with the expert view of the

17    PTO (when a claim survives the reexamination proceeding)." Gould, 705 F.2d at 1342 (dismissing

18    appeal of a stay pending PTO patent reexamination proceeding). Moreover, this Court has

19    recognized that reasons of judicial and party economy are particularly powerful early in litigation,

20    before discovery has been conducted. See ASCII, 844 F. Supp. at 1381. Clearly, that is the situation

21    here where the litigation is in its earliest stages and the parties have not yet begun document

22
23    production, deposition or expert discovery.

24
25
26

-7-

27
28

NOTICE OF MOTION AND MOTION TO STAY ALL
PROCEEDINGS PENDING REEXAMINATION OF U.S.
PATENT NO. 5,404,505
Case No. C 06-04206 (WHA)

1050037 v1

1        The <u>Bausch & Lomb</u> case is instructive.  There, reexamination of the subject patent was

2   sought by a competitor of the accused infringer a year into the litigation.  The motion to stay the

3   litigation was brought *after* completion of fact discovery, two or so months before expert discovery

4   was to begin and eight months before trial.  Nonetheless, the court noted that since both it and the

5   PTO were being asked to consider validity and other matters contingent on validity, proceeding with

6   the litigation created a risk of inconsistent conclusions regarding the same patent.  914 F. Supp. at

7

8   952.  The court chose to have the PTO – with its "expertise in deciding issues of patentability" –

9   proceed first, since otherwise, "it is possible that the time, resources, and significant efforts of all

10  those involved in such a trial would be wasted." <u>Id</u>. at 953; <u>see also</u> <u>Perricone</u>, 2002 U.S. Dist.

11  LEXIS 17163, at *3-*6 (finding that the court would benefit from the PTO's expertise and findings,

12  whether the patent was invalidated, amended or survived, and staying the litigation).[2]  Indeed,

13  "[b]ecause the PTO is considered to have expertise in deciding issues of patentability, many courts

14  have preferred to postpone making final decisions on infringement until the PTO rules on issues

15

16  before it." <u>Bausch & Lomb</u>, 914 F. Supp. at 953; <u>Lentek</u>, 169 F. Supp. 2d at 1363; <u>Perricone</u>, 2002

17  U.S. Dist. LEXIS 17163, at *4 ("The patent reexamination procedure was intended to provide the

18  federal courts with the additional expertise of the PTO."); <u>Patlex</u>, 758 F.2d at 601-02 (<u>citing</u> <u>Patent</u>

19  <u>Reexamination: Hearings on S. 1679 Before the Comm. on the Judiciary</u>, 96th Cong., 1st Sess. 1

20  (1979) (reexamination was designed to be "an aid" to the trial court "in making an informed decision

21  on the patent's validity.")).

22

23

24    [2] In staying the litigation pending the reexamination, the court noted that, as here, the suit had been
    filed less than six months prior to the filing of the stay request and "substantial discovery has yet to

25  occur." <u>Id</u>. at *8-*9.

26                                   **-8-**

27                          NOTICE OF MOTION AND MOTION TO STAY ALL
                            PROCEEDINGS PENDING REEXAMINATION OF U.S.
28                          PATENT NO. 5,404,505
                            Case No. C 06-04206 (WHA)

1050037 v1

1    The PTO's expertise and ability to simplify issues are especially critical here, where the

2    patent is highly technical and its validity is a main focus of the litigation.  In addition, the references

3    being considered on reexamination have not yet been considered by the PTO and are cited as

4    potential §102 or §103 prior art by Comcast in its Invalidity Contentions in this case.[3]  Tully Decl.

5    ¶8, Ex. 6.  Thus, by staying these proceedings, the Court will receive the benefit of the PTO's expert

6    examination of the references cited as relevant to this litigation.  Permitting the PTO reexamination

7    to conclude here before lifting the stay will focus subsequent discovery, dispositive motions and trial

8    on claims, as they exist now or after amendment, that are certified by the PTO, thereby saving this

9

10   Court and the parties time, effort and cost.

11

12   **D.    Courts Routinely Stay Proceedings When The Stay Is Requested Early In Litigation**

13       Courts routinely stay litigation pending patent reexamination proceedings when the stay is

14   requested early in the litigation, before the parties and the Court have expended significant efforts.

15   See, e.g., Snyder Seed Corp. v. Scrypton Sys., Inc., 1999 U.S. Dist. LEXIS 12149, at *9 (W.D.N.Y.

16   1999) (granting stay even though motion could have been brought earlier because the case was still

17

18   in the pleading stage); Purolite Int'l, Ltd. v. Rohm and Haas Co., 1992 U.S. Dist. LEXIS 8252, at

19   *7-*8 (E.D. Pa. 1992); United Merchants and Mfrs. v. Henderson, 495 F. Supp. 444, 447 (N.D. Ga.

20   1980) ("Grant of a stay is particularly appropriate in this case, as the lawsuit is in its earliest

21   _____

22   [3] These references include:  (1.) Jan Gecsei, "The Architecture of Videotex Systems", Prentice-Hall, Inc. 1983; (2.) A.J. Biggs et al., "Broadcast Data in Television", GEC Journal of Science and Technology, Vol. 41, No. 4, pp. 117-124, London, 1974; (3.) David K. Gifford, et al., "The Application of Digital Broadcast Communication to Large Scale Information Systems," IEEE Journal on Selected Areas in Communication, VOL. SAC-3, No. 3, pp. 457-467, May 1985; (4.) M.L. Ellis, et al., "INDAX: An Operational Interactive Cabletext System," IEEE Journal on Selected Areas in Communications, VOL. SAC-1, No.2, pp. 285-294, February 1983; and (5.) U.S. Patent No. 4,845,658 (Gifford).

23

24

25

26                                              -9-
                                    _____
27                                   NOTICE OF MOTION AND MOTION TO STAY ALL
                                     PROCEEDINGS PENDING REEXAMINATION OF U.S.
28                                   PATENT NO. 5,404,505
                                     Case No. C 06-04206 (WHA)

1  stages."). Indeed, the instances in which courts have *denied* motions for a stay pending a

2  reexamination generally occur when they are made late in litigation, after considerable time and

3  effort have been expended in discovery and the trial date is approaching. Lentek, 169 F. Supp. 2d at

4  1362 (citing E.I. Dupont de Nemours & Co. v. Phillips Petroleum Co., 711 F. Supp. 1205 (D. Del.

5  1989) and Wayne Automation Corp. v. R.A. Pearson Co., 782 F. Supp. 516 (E.D. Wash. 1991)).

6

7        Even when deciding a late-filed motion, however, courts consider whether granting a stay

8  will save costs and time. See Gioello, 2001 WL 125340, at *1-2 (granting stay less than three

9  months before trial in part because PTO reexamination could render summary judgment motions

10  moot); Softview Computer, 2000 U.S. Dist. LEXIS 11274, at *9 (granting stay after substantial

11  discovery because "much remains to be done before the case is ready for trial").

12

13        The present case is still in its earliest stages, as the parties just recently completed the filing

14  of answers, counterclaims and replies. No dispositive motions on the issues of claim construction,

15  infringement, validity, or enforceability have been filed or are likely for some time. Further, trial is

16  more than a year away at this point. Thus, the case is at a stage where judicial and party savings

17  will be maximized by a stay while the PTO resolves and/or clarifies numerous issues for trial. As

18  noted in Sulzer, Inc. v. Black Clawson Co., 1995 U.S. Dist. LEXIS 8328, at *2 (S.D.N.Y. 1995)),

19

20  "[t]he most cost effective and efficient means" of pursuing patent litigation is to await reexamination

21  results. That certainly is true here, and the litigation should be stayed.

22

23

24

25

26                            -10-

27                **NOTICE OF MOTION AND MOTION TO STAY ALL
PROCEEDINGS PENDING REEXAMINATION OF U.S.**

28                **PATENT NO. 5,404,505
Case No. C 06-04206 (WHA)**

1    IV.    **CONCLUSION**

2         This motion for a stay is made early in this litigation such that the Court and the parties'

3    stand to gain maximum benefit from permitting the PTO to simplify the issues of patent validity. For

4    all of the above stated reasons, the Court should grant Finisar's motion for a stay.

5

6                                        Respectfully Submitted

7

8    Dated:  ___February 27, 2007___      By: _____/s/ John F. Sweeney_____

9                                        John F. Sweeney (appearance *pro hac vice*)
                                         Gerard A. Haddad (appearance *pro hac vice*)

10                                       Tod M. Melgar (appearance *pro hac vice*)
                                         Danielle V. Tully (appearance *pro hac vice*)

11                                       MORGAN & FINNEGAN, LLP
                                         3 World Financial Center

12                                       New York, NY 10281-2101
                                         Telephone: 212-415-8700

13                                       Facsimile:  212-415-8701
                                         jsweeney@morganfinnegan.com

14

15                                       George Tacticos (State Bar No. 60089)
                                         MORGAN & FINNEGAN, LLP

16                                       44 Montgomery Street
                                         Suite 2550

17                                       San Francisco, CA  94104
                                         Telephone No.:  (415) 318-8800

18                                       Facsimile No.:  (415) 676-5816
                                         gtacticos@morganfinnegan.com

19
                                         Attorneys for Defendant Finisar Corp.
20    Of Counsel:

21    Amanda Groves
      Leda M. Mouallem

22    WINSTON & STRAWN, LLP
      101 California Street

23    San Francisco, California 94111-5802
      Telephone:  415-591-1000

24    Facsimile:  415-591-1400
      Attorneys for Defendant Finisar Corp.

25

26                                       **-11-**

27                                       **NOTICE OF MOTION AND MOTION TO STAY ALL
                                         PROCEEDINGS PENDING REEXAMINATION OF U.S.**

28                                       **PATENT NO. 5,404,505**
                                         **Case No. C 06-04206 (WHA)**

      1050037 v1

1

<u>CERTIFICATE OF SERVICE</u>

2

     I hereby certify that Notice Of Motion And Motion To Stay All Proceedings Pending
Reexamination Of U.S. Patent No. 5,404,505 was electronically filed on this date. Notice of this

3

filing will be sent to all parties by operation of the Court's electronic filing system. Parties may
access this filing through the Court's system.

4

5

6

Dated: February 27, 2007              /s/ John F. Sweeney

7

                       John F. Sweeney (appearance pro hac vice)
                       MORGAN & FINNEGAN, LLP

8

                       3 World Financial Center
                       New York, NY 10281-2101

9

                       Telephone: 212-415-8700
                       Facsimile: 212-415-8701

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-12-

27

NOTICE OF MOTION AND MOTION TO STAY ALL
PROCEEDINGS PENDING REEXAMINATION OF U.S.

28

PATENT NO. 5,404,505
Case No. C 06-04206 (WHA)

1050037 v1