UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **ECHOSTAR SATELLITE LLC, a Colorado corporation, ECHOSTAR TECHNOLOGIES CORPORATION, a Texas corporation, and NAGRASTAR LLC, a Colorado corporation,**<br><br>    **Plaintiffs/**<br>    **Counterclaim Defendants,**<br><br>  **v.**<br><br>**FINISAR CORPORATION, a Delaware corporation,**<br><br>    **Defendant/Counterclaimant.** | **Case No. 06-0425-JJF** |

## DECLARATION OF THOMAS B. KENWORTHY

THOMAS B. KENWORTHY, acknowledging that this declaration is made under penalty of perjury, states upon personal knowledge, information and belief that the following facts are true and correct:

1.    I am a partner in the law firm of Morgan, Lewis & Bockius LLP and one of the counsel for Finisar Corporation ("Finisar"), the defendant in this action, on whose behalf I have been admitted to appear *pro hac vice.*

2.    Attached as Exhibit A hereto is a true and correct copy of the Memorandum Order in Simplification, LLC v. Block Financial Corp., C.A. No. 04-114-JJF (D. Del. May 10, 2004).

3.    Attached as Exhibit B hereto is a true and correct copy of the Calendar Announcement of the United States Court of Appeals for the Federal Circuit for appeals to be heard on January 7, 2008.

4.    Attached as Exhibit C hereto is a true and correct copy of the Order on Defendant's Motion to Stay in Finisar Corp. v. XM Satellite Radio Holdings, Inc., C.A. No. 9:07CV99 (E.D. Tex. Aug. 24, 2007).

5.    Attached as Exhibit D hereto is a true and correct copy of the Form 8-K report dated September 14, 2007 by Finisar Corporation to the United States Securities and Exchange Commission.

6.    Attached as Exhibit E hereto is a true and correct copy of the September 1, 2006 Order in Finisar Corp. v. The DirecTV Group, Inc., C.A. No. 1:05-CV-264 (E. D. Tex. Sept. 1, 2006).

7.    Attached as Exhibit F hereto is a true and correct copy of portions of the Docket Entries in St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc., C.A. No. 03-241-JJF (D. Del.).

8.    Attached as Exhibit G hereto is a true and correct copy of the July 23, 2003 Order in St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc., C.A. No. 03-241-JJF (D. Del. July 23, 2003).

9.    Attached as Exhibit H hereto is a true and correct copy of the Memorandum Order in <u>Centillion Data Systems, LLC v. Avolent, Inc.</u>, C.A. No. 05-712-JJF (Apr. 24, 2006).

10.    Attached as Exhibit I hereto is a true and correct copy of the Memorandum Order in <u>Davol, Inc. v. Allegiance Healthcare Corp.</u>, C.A. No. 98-608-JJF (D. Del. Sept. 30, 1999).

11.    Attached as Exhibit J hereto is a true and correct copy of the Memorandum Order in <u>Automated Precision, Inc. v. SpatialMetrix Corp.</u>, C.A. No. 98-509-JJF (D. Del. Jan. 20, 1999).

DATED:  November 27, 2007

THOMAS B. KENWORTHY

## CERTIFICATE OF SERVICE

I, ARTHUR G. CONNOLLY, III., do hereby certify that on this date, true and correct copies of the foregoing Declaration of Thomas B. Kenworthy was served upon the following counsel via ECF and as follows:

### VIA HAND DELIVERY

Josy W. Ingersoll, Esquire
Richard H. Morse, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 West Street
The Brandywine Building, 17th Floor
P. O. Box 391
Wilmington, Delaware 19899

### VIA FEDERAL EXPRESS

Harold J. McElhinny, Esquire
Rachel Krevans, Esquire
William J. Kuhne, Esquire
Jason A. Crotty, Esquire
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105

Attorneys for Plaintiffs
EchoStar Satellite LLC,
EchoStar Technologies Corporation,
and NagraStar LLC

DATED:    November 27, 2007            s/  Arthur G. Connolly, III
                                        ARTHUR G. CONNOLLY, III (I.D. 2667)

# *Exhibit A*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CLERK U.S. DISTRICT ...
DISTRICT OF DEL V. ...

2004 MAY 10 AM 9: 10

```
SIMPLIFICATION, LLC,            :
                                :
            Plaintiff,          :
                                :      Civil Action No. 04-114 JJF
    v.                          :
                                :
BLOCK FINANCIAL CORPORATION     :
                                :
            Defendant.          :
```

## MEMORANDUM ORDER

Presently before me is a Motion To Consolidate and Stay (D.I. 9-1; D.I. 9-2) filed by Defendant Block Financial Group ("Block"). Plaintiff, Simplification, LLC ("Simplification"), opposes the motion. (D.I. 16.)

In a previously filed case between the same parties (C.A. No. 03-355 (JJF) ("03-355")), I denied Block's motion to stay pending re-examination (D.I. 30, 32 in "03-355"), but the parties subsequently stipulated to the stay. I have found few instances where a stay is warranted pending re-examination; however, when the parties have desired to stay a matter I have deferred to their knowledge of the case.

Because the parties agree that this case presents at least somewhat similar issues as those present in the "03-355" case, I will stay this action pending re-examination. I understand Simplification's argument that a new patent is asserted here, but I don't find that argument compelling in the circumstances.

I have also considered Block's application to consolidate,

but I find the request is premature.  Once the results of the two pending re-examinations are known, I will reconsider Block's application.

The parties have submitted proposed scheduling orders.  In the "03-355" case, I attempted to move the case forward and scheduled a November 2004 trial date which was cancelled due to the parties stay agreement.  I note that the parties' submissions reflect an approximate six (6) month difference in scheduling, which I will address at the conclusion of the re-examinations along with any consolidation request.

NOW THEREFORE, IT IS HEREBY ORDERED that:

1) Block's Motion To Stay (D.I. 9-2) is **GRANTED**.  The parties shall advise the Court when the decisions on the pending re-examinations are issued.

2) Block's consolidation request (D.I. 9-1) is **DENIED** with leave to renew.

3) No Rule 16 Scheduling Order will be entered pending a lifting of the **STAY** in the "03-355" and this case.

_5/7/04_
DATE

_Joseph J. Farnan_
UNITED STATES DISTRICT JUDGE

2

# *Exhibit B*

# United States Court of Appeals for the Federal Circuit

## Calendar Announcement

### (This calendar is subject to revision.)

11/19/2007

UNITED STATES COURT OF APPEALS FOR THE
FEDERAL CIRCUIT

Calendar Announcement
(This calendar is subject to
revision.)

**Panel A:  Monday, December 3, 2007, 10:00 A.M.,
Courtroom 201

    2006-1646   DCT    LITECUBES V NORTHERN LIGHT
[argued]
    2007-5083   CFC    NEBRASKA PUBLIC POWER V US
[argued]
    2007-1230   CIT    AD HOC SHRIMP TRADE V US
[argued]
    2007-1300   DCT    ABBOTT LABS V SANDOZ
[argued]
    2007-3299   MSPB   COSEN V ARMY
[on the briefs]

**Panel B:  Monday, December 3, 2007, 10:00 A.M.,
Courtroom 203

    2007-3024   MSPB   CERDA V LABOR
[argued]
    2007-1277   DCT    DECISIONING.COM V FEDERATED
DEPT[argued]
    2007-1278   DCT    DECISIONING.COM V TD AMERITRADE
[argued]
    2007-1308   DCT    HSBC FINANCE V DECISIONING.COM
[argued]
    2007-1403   DCT    MILLMAN V PTO
[on the briefs]

**Panel C:  Monday, December 3, 2007,  2:00 P.M.,
Courtroom 201

(This calendar is subject to revision.)

  **Panel A:** Monday, January 7, 2008, 10:00 A.M., Courtroom 201

   2007-1063 DCT INTERNATIONAL RECTIFIER V IXYS [argued]
   2007-1410 DCT JAN'S HELICOPTER V FAA [argued]
   2007-1411 DCT AMERICOPTERS V FAA [argued]
   2007-1377 DCT CLARK V CRUES [on the briefs]

  **Panel B:** Monday, January 7, 2008, 10:00 A.M., Courtroom 203

   2007-1023 DCT FINISAR CORP V DIRECTV GROUP [argued]
   2007-1174 DCT SITRICK V DREAMWORKS [argued]
   2007-1192 PTO IN RE CENTOCOR [argued]
   2007-1298 DCT MAXWELL V STANLEY WORKS [on the briefs]

  **Panel C:** Tuesday, January 8, 2008, 10:00 A.M., Courtroom 201

   2007-1219 DCT F&G RESEARCH V ADOMAX TECHNOLOGY [argued]
   2007-1412 PTO IN RE R & S TRADING [argued]
   2007-1419 DCT ARISTOCRAT TECH V INTL GAME TECH [argued]
   2007-5162 CFC MARTINEZ V US [on the briefs]

  **Panel D:** Tuesday, January 8, 2008, 10:00 A.M., Courtroom 203

   2007-1191 PTO IN RE LEE [argued]
   2007-1249 DCT MICROPROCESS ENHANCE V TEXAS INST [argued]
   2007-1432 PTO NASALOK COATING V NYLOK CORP [argued]
   2007-7278 CVA LAMOUR V DVA [on the briefs]

  **Panel D+:** Tuesday, January 8, 2008, 10:00 A.M., Courtroom 203

   2007-1115 DCT ACUMED V STRYKER [argued]

*Exhibit C*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| FINISAR CORPORATION | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 9:07CV99 |
| v. | § | |
| | § | |
| XM SATELLITE RADIO HOLDINGS, INC. | § | JUDGE RON CLARK |
| et. al., | § | |
| | § | |
| *Defendants.* | § | |

## ORDER ON DEFENDANTS' MOTION TO STAY

Before the court is Defendants' Motion to Stay [Doc. # 25]. Plaintiff Finisar Corporation

("Finisar") alleges that Defendants infringed U.S. Patent No. 5,404,505 ("the ` 505 patent").

Defendants request that this court stay this case because: (1) the ` 505 patent is currently the

subject of an appeal before the Federal Circuit; and (2) the ` 505 patent is the subject of two ex

parte re-examination proceedings. The court finds that on balance a stay is not warranted in this

case.

### I. Background

Previously, Finisar filed suit against DirectTV in this court in Case No. 1:05-CV-264

alleging infringement of the ` 505 patent. After a jury verdict was returned in favor of Finisar,

this court entered a final judgment. Both DirectTV and Finisar appealed this judgment to the

Federal Circuit. While initial briefing has commenced on the appeal, Defendants do not state any

specific date upon which a decision will be entered by the Federal Circuit.

The `505 patent is also subject to two ex parte re-examination proceedings – one filed on

December 11, 2006, and one filed March 21, 2007. In neither of these proceedings has any

decision been reached by the U.S. Patent and Trademark Office.

## II. Law and Analysis

The court has the inherent power to control its own docket, including the power to stay

proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166 (1936). How to best

manage the court's docket "calls for the exercise of judgement, which must weigh competing

interests and maintain an even balance." *Id.* at 254-55, 57 S.Ct. at 166. The moving party "must

make out a clear case of hardship or inequity in being required to go forward, if there is even a

fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255,

57 S.Ct. at 166.

In deciding whether to stay litigation, courts typically consider: (1) whether a stay would

unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a

stay will simplify the issues in question and trial of the case; and (3) whether discovery is

complete and whether a trial date has been set. *Sovereign Sofnvare LLC v. Amazon.com*, 356 F.

Supp. 2d 660, 662 (E.D. Tex. 2005); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406

(W.D.N.Y. 1999).

### 1. Prejudice or Disadvantage to Finisar

Defendants argue that there will be no prejudice or disadvantage to Finisar because the

litigation is in its early stages. Finisar states that the ` 505 patent was issued in April 1995 and

that a stay of any significant length of time will adversely affect the value of the patent for future

royalties or licensing.

While the court does not doubt the efficiency of the other proceedings, there is no certain

time when the appeal and the ex parte re-examination proceedings will be concluded. Because of

this court's scheduling requirements, the parties were required to start preparing for and engaging

in discovery almost from the outset of the case. A delay at this point would invite needless

additional expenses over the course of a stay and work to counteract the parties' efforts to this

point. This court is mindful of the costs imposed by a lengthy stay and that a timely resolution of

the issues will aid both parties.

Moreover, the ` 505 patent is in litigation involving Finisar in California and in Delaware.

Both of these actions are declaratory judgment actions in which Finisar is the Defendant. These

courts have declined to stay their respective cases despite the re-examination proceedings and the

pending appeal, and a granting of a stay by this court would deny Finisar the opportunity to

litigate the ` 505 patent in its chosen forum. Under the circumstances of this case, this factor

weighs slightly against staying this case.

### 2. Simplification of Case

In re-examination proceedings, the PTO only considers invalidity based on prior art. 35

U.S.C. §§ 301 and 311(b)(2). This means that the PTO does not consider infringement issues,

or other grounds for invalidity. It also will not address Defendants' arguments regarding their

estoppel and disclaimer defenses, which all Defendants state are key points in this case.

While a stay always has the potential to simplify the issues in the litigation to some

extent, infringement and other invalidity arguments, as well as other key defenses, will remain.

The court concludes that the issues in this case would not be sufficiently simplified to justify a

stay. *See Imax Corp. v. In-Three, Inc.,* 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005) (if the stay

will not reduce the number of issues, then a stay would not preserve many resources). This factor

3

does not weigh in favor of a stay.

### 3. Completion of Discovery and Trial Date

Discovery is an on-going process, and the Rules of Practice for Patent Cases in the Eastern District of Texas, as well as this court's Scheduling Order, require the parties to prepare for discovery very early in the litigation. In fact, in this case the court entered a special discovery order requiring the parties to prepare and serve their infringement and invalidity contentions, prior to the Case Management Conference. *See* Doc. # 34. Plaintiff was required to comply with P.R. 3-1 and 3.2 within fifteen (15) days of the special discovery order, meaning disclosure not only of the allegedly infringed claims and specific contentions regarding infringement, but production of a wealth of documents relating to the invention's conception, reduction to practice, development, and prosecution history in the U.S. Patent and Trademark Office. Plaintiff has already complied with that order [Doc. # 37]. The parties have also been advised of a Markman date of February 6, 2008, and a trial date of September 15, 2008.

Additionally, this case is almost unique in that the court has extensive experience with the `505 patent, and the various pieces of prior art at issue. Delaying the resolution of these issues would not serve the purposes of judicial economy or efficiency.

The court concludes that this factor does not weigh in favor of staying the case.

On balance, based on the circumstances of this case, the court finds that the factors weigh against staying this case.

IT IS THEREFORE ORDERED that Defendants' Motion to Stay [**Doc. #25**] is

**DENIED**.

So **ORDERED** and **SIGNED** this **24** day of **August, 2007.**

Ron Clark, United States District Judge

*Exhibit D*

**Table of Contents**

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

---

# Form 8-K

## CURRENT REPORT
### Pursuant to Section 13 or 15(d) of the
### Securities Exchange Act of 1934

Date of report (date of earliest event reported): September 14, 2007

# Finisar Corporation
(Exact name of registrant as specified in its charter)

| **Delaware** | **000-27999** | **94-3038428** |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File No.) | (I.R.S. Employer Identification No.) |

**1389 Moffett Park Drive**
**Sunnyvale, CA 94089**
(Address of principal executive offices)

Registrant's telephone number, including area code:
**(408) 548-1000**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

## TABLE OF CONTENTS

Item 3.01 Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing
Item 8.01 Other Events
Item 9.01 Financial Statements and Exhibits
SIGNATURES
Exhibit Index
EXHIBIT 99.1

## Table of Contents

**Item 3.01 Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing.**

On September 14, 2007, Finisar Corporation ("Finisar" or the "Company") received a written Additional Staff Determination notice from The Nasdaq Stock Market ("Nasdaq") stating that Finisar is not in compliance with Nasdaq's Marketplace Rule 4310(c)(14) because it did not timely file its report on Form 10-Q for the quarter ended July 29, 2007 (the "July 10-Q") and, therefore, that its common stock is subject to delisting from the Nasdaq Global Select Market. Finisar issued a press release on September 18, 2007 disclosing its receipt of this notice from Nasdaq. A copy of the press release is attached hereto as Exhibit 99.1 and is incorporated by reference herein.

On September 11, 2007, Finisar filed a Form 12b-25 with the Securities and Exchange Commission reporting that it had delayed filing the July 10-Q pending the completion of a review of its historical stock option grant practices being conducted by the Audit Committee of its Board of Directors. Finisar plans to file the July 10-Q as soon as practicable following the conclusion of the review. The information in Finisar's Form 12b-25 is incorporated by reference herein.

Finisar has previously received similar Staff Determination notices with respect to its failure to timely file its quarterly reports on Form 10-Q for the quarters ended October 29, 2006 (the "October 10-Q") and January 28, 2007 (the "January 10-Q") and its Form 10-K report for the fiscal year ended April 30, 2007 (the "Form 10-K"). In response to the original Staff Determination notice, Finisar requested a hearing before the Nasdaq Listing Qualifications Panel (the "Panel"), which was held on February 15, 2007. At the hearing, the Company requested that its common stock continue to be listed pending completion of the Audit Committee's review of Finisar's stock option grant practices, the preparation of restated financial statements, if required, and the filing of the October 10-Q. Finisar supplemented its request to cover the delayed filing of the January 10-Q.

The Panel issued a decision on April 4, 2007, granting Finisar an extension of time to June 11, 2007 to file its October 10-Q and any required restatements of its financial statements and an extension of time to July 3, 2007 to file its January 10-Q. Finisar appealed the Panel's decision to the Nasdaq Listing and Hearing Review Council (the "Listing Council") and requested that the Listing Council stay the Panel's decision, and any future Panel decisions to delist Finisar's securities, pending appeal. The Listing Council has agreed to review the April 4, 2007 decision of the Panel and has stayed the Panel's April 4, 2007 decision to suspend the Company's securities pending further action by the Listing Council. On August 9, 2007, Finisar supplemented its previous submission to Nasdaq to include the Form 10-K in its pending request for additional time to make required filings and submitted additional information to the Listing Council on August 9, 2007. The Listing Council will review the matter on the basis of the written record. The Company intends to further supplement its previous submission to Nasdaq to include the July 10-Q in its pending request for additional time to make required filings. There can be no assurance that the Listing Council will grant Finisar's request for continued listing. Pending a decision by the Listing Council, Finisar's common stock will continue to be traded on the Nasdaq Global Select Market.

**Item 8.01 Other Events.**

The following information updates previous disclosure regarding certain pending legal proceedings.

**Patent Litigation**

On April 4, 2005, the Company filed an action for patent infringement in the United States District Court for the Eastern District of Texas against the DirecTV Group, Inc., DirecTV Holdings, LLC, DirecTV Enterprises, LLC, DirecTV Operations, LLC, DirecTV, Inc., and Hughes Network Systems, Inc. (collectively, "DirecTV"). The lawsuit involves the Company's U.S. Patent No. 5,404,505 (the "'505 patent"), which relates to technology used in information transmission systems to provide access to a large database of information. On June 23, 2006, following a jury trial, the jury returned a verdict that the Company's patent had been willfully infringed and awarded the Company damages of $78,920,250.25. In a post-trial hearing held on July 6, 2006, the Court determined that, due to DirecTV's willful infringement, those damages would be enhanced by an additional $25 million. Further, the Court awarded the Company pre-judgment interest on the jury's verdict in the amount of 6% compounded annually from April 4, 1999, amounting to approximately $13.4 million. Finally, the Court awarded the Company costs of $147,282.36 associated with the litigation. The Court declined to award the Company its attorneys' fees. The Court denied the Company's motion for injunctive relief, but ordered DirecTV to pay a compulsory ongoing license fee to

2

# Table of Contents

the Company at the rate of $1.60 per set-top box activated by or on behalf of DirecTV for the period beginning June 16, 2006 through the duration of the patent, which expires in April 2012. The Court entered final judgment in favor of the Company and against DirecTV on July 7, 2006. On September 1, 2006, the Court denied DirecTV's post-trial motions seeking to have the jury verdict set aside or reversed and requesting a new trial on a number of grounds. In another written post-trial motion, DirecTV asked the Court to allow DirecTV to place any amounts owed the Company under the compulsory license into an escrow account pending the outcome of any appeal and for those amounts to be refundable in the event that DirecTV prevails on appeal. The Court granted DirecTV's motion and payments under the compulsory license are being made into an escrow account pending the outcome of the appeal. As of July 12, 2007, DirecTV has deposited approximately $22.4 million into escrow. These escrowed funds represent DirecTV's compulsory royalty payments for the period from June 17, 2006 through July 12, 2007. DirecTV and the Company both filed appeals with the United States Court of Appeals for the Federal Circuit. The appeals have been consolidated.

On July 7, 2006, Comcast Cable Communications Corporation, LLC ("Comcast") filed a complaint against the Company in the United States District Court, Northern District of California, San Francisco Division. Comcast seeks a declaratory judgment that the Company's '505 patent is not infringed and is invalid. The '505 patent is the same patent that is in dispute in the Company's lawsuit against DirecTV. The Company's motion to dismiss the declaratory judgment action was denied on November 9, 2006. As a result, on November 22, 2006, the Company filed an answer and counterclaim alleging that Comcast infringes the '505 patent and seeking damages in an amount to be proven at trial. The court held a claim construction hearing and, on April 6, 2007, issued its claim construction ruling. Discovery is now underway. A jury trial has been scheduled for March 3, 2008.

On July 10, 2006, EchoStar Satellite LLC, EchoStar Technologies Corporation and NagraStar LLC (collectively "EchoStar") filed an action against the Company in the United States District Court for the District of Delaware seeking a declaration that EchoStar does not infringe, and has not infringed, any valid claim of the Company's '505 patent. The '505 patent is the same patent that is in dispute in the DirecTV and Comcast lawsuits. On October 24, 2006, the Company filed a motion to dismiss the action for lack of a justiciable controversy. The court has not issued a decision on the Company's motion.

On April 27, 2007, the Company filed an action for patent infringement in the United States District Court for the Eastern District of Texas, Lufkin Division, against XM Satellite Radio Holdings, Inc., XM Satellite Radio, Inc., and XM Radio, Inc. (collectively, "XM"), and Sirius Satellite Radio, Inc. and Satellite CD Radio, Inc. (collectively, "Sirius"). The lawsuit alleges that XM and Sirius have infringed and continue to infringe the Company's '505 patent and seeks an injunction to prevent further infringement, actual damages to be proven at trial, enhanced damages for willful infringement and attorneys' fees. The defendants filed an answer and counterclaim denying infringement of the '505 patent and asserting invalidity and other defenses. The defendants also moved to stay the case pending the outcome of the Direct TV appeal and the re-examination of the '505 patent described below. The defendants' motion for a stay was denied. Discovery is now underway. A claim construction hearing is scheduled for February 6, 2008. Judge Clark, the same judge who presided over the DirecTV trial, has been assigned to the case.

## Requests for Re-Examination of the '505 Patent

Three requests for re-examination of the Company's '505 patent have been filed with the United States Patent and Trademark Office ("PTO"). The '505 patent is the patent that is in dispute in the DirecTV, EchoStar, Comcast and XM/Sirius lawsuits. On December 11, 2006, the PTO entered an order granting the first request and, on March 21, 2007, the PTO entered an order granting the second request. The third request, filed on August 1, 2007, is still pending. The Company expects that the PTO will take steps to consolidate these requests into one request for re-examination. In pertinent part, the prior art technology cited in the re-examination requests is the same art that was presented in the DirecTV case where a jury and the court upheld the validity of the Company's '505 patent. During the re-examination, some or all of the claims in the '505 patent could be invalidated or revised to narrow their scope, either of which could have a material adverse impact on the Company's position in the lawsuits. The PTO has yet to issue a substantive office action in these proceedings.

3

## Table of Contents

### Securities Class Action

A securities class action lawsuit was filed on November 30, 2001 in the United States District Court for the Southern District of New York (the "Court"), purportedly on behalf of all persons who purchased the Company's common stock from November 17, 1999 through December 6, 2000. The complaint named as defendants Finisar, Jerry S. Rawls, the Company's President and Chief Executive Officer, Frank H. Levinson, the Company's former Chairman of the Board and Chief Technical Officer, Stephen K. Workman, the Company's Senior Vice President and Chief Financial Officer, and an investment banking firm that served as an underwriter for the Company's initial public offering in November 1999 and a secondary offering in April 2000. The complaint, as subsequently amended, alleges violations of Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(b) of the Securities Exchange Act of 1934, on the grounds that the prospectuses incorporated in the registration statements for the offerings failed to disclose, among other things, that (i) the underwriter had solicited and received excessive and undisclosed commissions from certain investors in exchange for which the underwriter allocated to those investors material portions of the shares of the Company's stock sold in the offerings and (ii) the underwriter had entered into agreements with customers whereby the underwriter agreed to allocate shares of the Company's stock sold in the offerings to those customers in exchange for which the customers agreed to purchase additional shares of the Company's stock in the aftermarket at pre-determined prices. No specific damages are claimed. Similar allegations have been made in lawsuits relating to more than 300 other initial public offerings conducted in 1999 and 2000, which were consolidated for pretrial purposes. In October 2002, all claims against the individual defendants were dismissed without prejudice. On February 19, 2003, the Court denied defendants' motion to dismiss the complaint. In July 2004, the Company and the individual defendants accepted a settlement proposal made to all of the issuer defendants. Under the terms of the settlement, the plaintiffs would dismiss and release all claims against participating defendants in exchange for a contingent payment guaranty by the insurance companies collectively responsible for insuring the issuers in all related cases, and the assignment or surrender to the plaintiffs of certain claims the issuer defendants may have against the underwriters. Under the guaranty, the insurers would be required to pay the amount, if any, by which $1 billion exceeds the aggregate amount ultimately collected by the plaintiffs from the underwriter defendants in all the cases. If the plaintiffs fail to recover $1 billion and payment is required under the guaranty, the Company would be responsible to pay its pro rata portion of the shortfall, up to the amount of the self-insured retention under the Company's insurance policy, which may be up to $2 million. The timing and amount of payments that the Company could be required to make under the proposed settlement will depend on several factors, principally the timing and amount of any payment that the insurers may be required to make pursuant to the $1 billion guaranty. The Court gave preliminary approval to the settlement in February 2005 and held a hearing in April 2006 to consider final approval of the settlement. Before the Court issued a final decision on the settlement, on December 5, 2006, the United States Court of Appeals for the Second Circuit vacated the class certification of plaintiffs' claims against the underwriters in six cases designated as focus or test cases. Thereafter, on December 14, 2006, the Court ordered a stay of all proceedings in all of the lawsuits pending the outcome of the plaintiffs' petition to the Second Circuit Court of Appeals for a rehearing en banc and resolution of the class certification issue. On April 6, 2007, the Second Circuit Court of Appeals denied the plaintiffs' petition for a rehearing, but clarified that the plaintiffs may seek to certify a more limited class. Subsequently, and consistent with these developments, the Court entered an order, at the request of the plaintiffs and issuers, to deny approval of the settlement, and the plaintiffs filed an amended complaint in an attempt to comply with the decision of the Second Circuit Court of Appeals. If an amended or modified settlement is not reached, and thereafter approved by the Court, the Company intends to defend the lawsuit vigorously. Because of the inherent uncertainty of litigation, however, the Company cannot predict its outcome. If, as a result of this dispute, the Company is required to pay significant monetary damages, its business would be substantially harmed.

### Derivative Litigation

Following the announcement by the Company on November 30, 2006 that the Audit Committee of the Board of Directors had voluntarily commenced an investigation of the Company's historical stock option grant practices, the Company was named as a nominal defendant in several shareholder derivative cases. These cases have been consolidated into two proceedings pending in federal and state courts in California. The federal court cases have been consolidated in the United States District Court for the Northern District of California. The state court cases have been consolidated in the Superior Court for the State of California for the County of Santa Clara. Plaintiffs in all cases have alleged that certain current or former officers and directors of the Company caused it to grant stock options at less than fair market value, contrary to the Company's public statements (including its

4

## Table of Contents

financial statements), and that, as a result, those officers and directors are liable to the Company. No specific amount of damages has been alleged, and by the nature of the lawsuits no damages will be alleged, against the Company. On May 22, 2007, the state court granted the Company's motion to stay the state court action pending resolution of the consolidated federal court action. On June 12, 2007, the plaintiffs in the federal court case filed an amended complaint to reflect the results of the stock option investigation announced by the Audit Committee in June 2007. On August 18, 2007, the Company and the individual defendants filed motions to dismiss the complaint. A hearing on the motions has been set for December 7, 2007.

### Litigation Against U. S. Bank Trust National Association

On January 4, 2007, the Company received three substantially identical purported notices of default from U.S. Bank Trust National Association, as trustee (the "Trustee") for the Company's 2 1/2 % Convertible Senior Subordinated Notes due 2010, its 2 1/2 % Convertible Subordinated Notes due 2010 and its 5 1/4 % Convertible Subordinated Notes due 2008 (collectively, the "Notes"). The notices asserted that the Company's failure to timely file its Form 10-Q report for the quarter ended October 29, 2006 (the "October 10-Q") with the Securities and Exchange Commission (the "SEC") and to provide a copy to the Trustee constituted a default under each of the three indentures between the Company and the Trustee governing the respective series of Notes (the "Indentures"). The notices each indicated that, if the Company did not cure the purported default within 60 days, an "Event of Default" would occur under the respective Indenture. As previously reported, the Company has delayed filing the October 10-Q pending the completion of a review of its historical stock option grant practices being conducted by the Audit Committee of its Board of Directors, which is ongoing.

The Company believes that it is not in default under the terms of the Indentures. The Company contends that the plain language of each Indenture requires only that the Company file with the Trustee reports that have actually been filed with the SEC, and that, since the October 10-Q has not yet been filed with the SEC, the Company is under no obligation to file it with the Trustee.

In anticipation of the expiration of the 60-day cure period under the Notices on March 5, 2007, and the potential assertion by the Trustee or the noteholders that an "Event of Default" has occurred and a potential attempt to accelerate payment on one or more series of the Notes, on March 2, 2007, the Company filed a lawsuit in the Superior Court for the State of California for the County of Santa Clara against U.S. Bank Trust National Association, solely in its capacity as Trustee under the Indentures, seeking a judicial declaration that (a) the Company is not in breach of the three Indentures and that no "Event of Default" has occurred and (b) in the alternative, that enforcement of any acceleration of the Notes for the default alleged by the Trustee would be inequitable. The Trustee filed an answer to the complaint generally denying all allegations and also filed a notice of removal of the state case to the United States District Court for the Northern District of California. The Company filed a motion to remand the case to the California Superior Court. A hearing on the Company's motion to remand was heard on September 7, 2007, but a decision has not been announced.

As expected, on March 16, 2007, the Company received three additional notices from the Trustee asserting that "Events of Default" under the Indentures have occurred and are continuing based on the Company's failure to cure the alleged default within the 60-day cure period. Neither the Trustee nor the holders of at least 25% in aggregate principal amount of one or more series of the Notes have declared all unpaid principal, and any accrued interest, on the Notes to be due and payable, although the Trustee stated in the notices that it reserved the right to exercise all available remedies. As of the date hereof, there is $250.3 million in aggregate principal amount of Notes outstanding and an aggregate of approximately $4.0 million in accrued interest.

On April 24, 2007, the Company received three substantially identical purported notices of default from the Trustee for each of the Indentures, asserting that the Company's failure to timely file its Form 10-Q report for the quarter ended January 28, 2007 (the "January 10-Q") with the SEC and to provide a copy to the Trustee constituted a default under each of the Indentures. The notices each indicated that, if the Company did not cure the purported default within 60 days, an "Event of Default" would occur under the respective Indenture. As previously reported, the filing of the January 10-Q, like the October 10-Q, has been delayed pending the completion of the review of the Company's historical stock option grant practices, which is ongoing. The Company believes that it is not in default under the terms of the Indentures for failing to file the January 10-Q for the reasons described above.

5

## Table of Contents

On June 21, 2007, the Company filed a second declaratory relief action against the Trustee in the Superior Court of California for the County of Santa Clara. The second action is essentially identical to the first action filed on March 2, 2007 except that it covers the notices asserting "Events of Default" received in April 2007 and any other notices of default that the Trustee may deliver in the future with respect to the Company's delay in filing, and providing copies to the Trustee, of periodic reports with the SEC. The Trustee filed an answer to the complaint generally denying all allegations and filed a notice of removal to the United States District Court for the Northern District of California. A hearing on the Company's motion to remand the case to the California Superior Court has been set for November 2, 2007.

On July 9, 2007, the Company received three substantially identical purported notices of default from the Trustee for each of the Indentures, asserting that the Company's failure to timely file its Form 10-K report for the fiscal year ended April 30, 2007 (the "10-K") with the SEC and to provide a copy to the Trustee constituted a default under each of the Indentures. The notices each indicated that, if the Company did not cure the purported default within 60 days, an "Event of Default" would occur under the respective Indenture. As previously reported, the filing of the 10-K, like the October 10-Q and the January 10-Q, has been delayed pending the completion of the review of the Company's historical stock option grant practices, which is ongoing. The Company believes that it is not in default under the terms of the Indentures for failing to file the 10-K for the reasons described above.

**Item 9.01 Financial Statements and Exhibits.**

(d) Exhibits

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Press release issued by Finisar Corporation dated September 18, 2007 |

6

FINISAR CORP (Form: 8-K, Received: 09/18/2007 16:29:55)    Page 9 of 12

## Table of Contents

### SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: September 18, 2007

Finisar Corporation

By: /s/ Stephen K. Workman
       **Stephen K. Workman**
       **Senior Vice President, Finance and**
       **Chief Financial Officer**

7

Table of Contents

**Exhibit Index**

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Press release issued by Finisar Corporation dated September 18, 2007 |

8

FINISAR CORP (Form: 8-K, Received: 09/18/2007 16:29:55)          Page 11 of 12

Exhibit 99.1

*Finisar*

**FOR IMMEDIATE RELEASE**

Contact:
Steve Workman
Chief Financial Officer
408-548-1000

Investor Relations
408-542-5050
investor.relations@Finisar.com

## FINISAR CORPORATION RECEIVES ADDITIONAL
## NASDAQ STAFF DETERMINATION NOTICE

**SUNNYVALE, Calif. – September 18, 2007** – Finisar Corporation (Nasdaq: FNSR), reported that on September 14, 2007, it received an Additional Staff Determination notice from The Nasdaq Stock Market ("Nasdaq") stating that Finisar is not in compliance with Nasdaq's Marketplace Rule 4310(c)(14) because it did not timely file its report on Form 10-Q for the fiscal quarter ended July 29, 2007 (the "July 10-Q") and, therefore, that its common stock is subject to delisting from the Nasdaq Global Select Market.

On September 11, 2007, Finisar filed a Form 12b-25 with the Securities and Exchange Commission reporting that it had delayed filing the July 10-Q pending the completion of a review of its historical stock option grant practices being conducted by the Audit Committee of its Board of Directors. Finisar plans to file the July 10-Q as soon as practicable following the conclusion of the review.

Finisar had previously received similar Staff Determination notices with respect to its failure to timely file its quarterly reports on Form 10-Q for the quarters ended October 29, 2006 (the "October 10-Q") and January 28, 2007 (the "January 10-Q") and its Form 10-K report for the fiscal year ended April 30, 2007 (the "Form 10-K"). In response to the original Staff Determination notice, Finisar requested a hearing before the Nasdaq Listing Qualifications Panel (the "Panel"), which was held on February 15, 2007. At the hearing, Finisar requested that its common stock continue to be listed pending completion of the Audit Committee's review of Finisar's stock option grant practices, the preparation of restated financial statements, if required, and the filing of the October 10-Q. Finisar supplemented its request to cover the delayed filing of the January 10-Q.

The Panel issued a decision on April 4, 2007, granting Finisar an extension of time to June 11, 2007 to file the October 10-Q and any required restatements of its financial statements and an extension of time to July 3, 2007 to file the January 10-Q. Finisar appealed the Panel's decision to the Nasdaq Listing and Hearing Review Council (the "Listing Council") and requested that the Listing Council stay the Panel's decision, and any future Panel decisions to delist Finisar's securities, pending appeal. The Listing Council has agreed to review the April 4, 2007 decision of the Panel and has stayed the Panel's April 4, 2007 decision. On August 9, 2007, Finisar supplemented its previous submission to Nasdaq to include the Form 10-K in its pending request for additional time to make required filings and submitted additional information to the Listing Council. The Listing Council will review the matter on the basis of the written record. Finisar intends to further supplement its previous submission to Nasdaq to include the July 10-Q in its pending request for additional time to make required filings. There can be no assurance that the Listing Council will grant Finisar's request for continued listing. Pending a decision by the Listing Council, Finisar's common stock will continue to be traded on the Nasdaq Global Select Market.

**About Finisar**

Finisar Corporation is a global technology leader for fiber optic components and subsystems and network test and monitoring systems. These products enable high-speed voice, video and data communications for networking, storage and wireless applications over Local Area Networks (LANs), Storage Area Networks (SANs), and Metropolitan Area Networks (MANs) using Ethernet, Fibre Channel, IP, SAS, SATA and SONET/SDH protocols. The Company is headquartered in Sunnyvale, California, USA. More information can be found at www.finisar.com .

9

*Exhibit E*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FINISAR CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 1:05-CV-264 |
| v. | § | |
| | § | |
| THE DIRECTV GROUP, INC., ET AL., | § | JUDGE RON CLARK |
| | § | |
| *Defendants.* | § | |
| | § | |

## ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL, AND DENYING MOTION TO AMEND JUDGMENT

Before the court are Defendants' Renewed Motion for Judgment as a Matter of Law and

Motion for New Trial [Doc. #336] and Motion to Amend the Judgment [Doc. #337]. Plaintiff's

have responded to both motions. Defendants raise four arguments as to why judgment as a matter

of law should be granted. In the alternative, Defendants assert three grounds for a new trial.

Finally, Defendants seek to amend the judgment, contending that the court erred in calculating

prejudgment interest, in awarding enhanced damages, and in awarding costs. For the reasons

stated below and for the reasons stated at the post-trial motions hearing on July 6, 2006, the court

denies all of Defendants' motions.

### I. Procedural History and Background

Plaintiff Finisar Corp. ("Finisar") alleged that Defendants The DirecTV Group, Inc.,

DirecTV Holdings, LLC, DirecTV Enterprises, LLC, DirecTV Operations, LLC, DirecTV, Inc.,

and Hughes Network Systems, Inc. ("DirecTV") infringed claims 1, 2, 7, 9, 10, 11, 16, 17, 22,

24, 25, 26, 37, 39, and 44 of United States Patent No. 5,404,505 ("the ` 505 patent"). Dr. Frank

Levinson is the inventor of United States Patent No. 5,404,505. The assignee is Finisar Corporation. The ` 505 patent describes the transfer of information, from an information database, to subscribers, upon request, through satellite transmission. In general, this involves a central supplier station sending regularly scheduled data to its subscribers via satellite. However, a portion of the available bandwidth is reserved for subscriber requested data. Here, although that data is actually broadcast to all subscribers, only those who have requested the data will have access to it (i.e., be able to view the data). There is also the possibility of remote systems (usually local programming) sending data to subscribers.

The court conducted a *Markman* hearing and issued a Memorandum and Opinion Construing Claim terms of United States Patent No. 5,404,505 [Doc. #57] February 17, 2006. In the *Markman* order, the court held Claims 1 and 37 to be indefinite and subsequently granted Defendants' motion for summary judgment holding Claims 1, 37, and all dependent claims to be invalid [Doc. # 157].

The parties entered into a stipulation of noninfringement as to Claim 25 of the ` 505 patent.

The remaining claims 16, 17, 22, 24, 26, 39, and 44 were tried to a jury June 12 - 23, 2006. The jury rendered a verdict of willful infringement of the asserted claims and found the claims to not be invalid. The jury awarded Finisar damages in the amount of $78,920,250.25.

A hearing on post-trial motions was held on July 6, 2006 while the case was fresh in everybody's mind. At the hearing, the court gave its reasons for granting or denying all outstanding motions, including all Rule 50(a) motions. For the reasons stated at that hearing, the

2

court granted in part and denied in part Defendants' Rule 50(a) Motion for Judgment as a Matter

of Law. The court also awarded enhanced damages and set the formula for prejudgment interest.

Defendants now make substantially the same arguments ruled on at the hearing. For the

reasons stated below and for those at the hearing, the court denies Defendants' renewed motion

for judgment as a matter of law and motion for new trial. The court also denies Defendants'

motion to amend the prejudgment interest, enhancement of damages, and award of costs.

## II. Standard of Review

### A. Judgment as a Matter of Law

A party moving for judgment as a matter of law has a heavy burden to meet. Fed. R. Civ.

P. 50(a); *see Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004). "[I]f

reasonable persons could differ in their interpretations of the evidence, then the motion should

be denied. A post-judgment motion for judgment as a matter of law should only be granted when

the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court

believes that reasonable men could not arrive at contrary verdict. *Wallace v. Methodist Hosp.*

*Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (internal quotations omitted). A jury's verdict is given

great weight and all reasonable inferences are drawn in the light most favorable to the verdict.

*Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000).

A party moving for a judgment as a matter of law must first do so at the close of all

evidence, in order to renew such a motion after judgment has been rendered. *Taylor Pub. Co. v.*

*Jostens, Inc.*, 216 F.3d 465, 471 (5th Cir. 2000); Fed. R. Civ. P. 50(b). There are instances where

"technical noncompliance" with Fed. R. Civ. P. 50(b) has been excused when purposes of the rule

have been satisfied. *See Alcatel U.S.A., Inc. v. D.G.I. Techs., Inc.*, 166 F.3d 772, 780 (5th Cir.

1999); *but see Delano-Pyle v. Victoria County*, 302 F.3d 567 (5th Cir. 2002) (finding that a motion not renewed at the close of evidence to be waived). Therefore, any arguments made which were not asserted at the close of the evidence are deemed waived. *Taylor Pub. Co.*, 216 F.3d at 471.

## B. Motion for New Trial

There are no precise grounds for granting a new trial, except "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The courts have developed a number of theories for granting new trials, such as where the verdict is against the great weight of the evidence, the damages are excessive, the trial was unfair, or prejudicial error was committed. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). "A motion for a new trial should not be granted unless the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence." *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838-39 (5th Cir. 2004). The court must not substitute its opinion for the collective wisdom of the jury. *Smith*, 773 F.2d at 613.

## C. Motion to Alter or Amend Judgment

A motion to alter or amend the judgment is governed by Fed. R. Civ. P. 59(e). *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 231 (5th Cir. 2003). A motion to alter or amend the judgment "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" and "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azurix Corp.*, 332 F.3d. 854, 863 (5th Cir. 2003) (quoting *Simon v. U.S.*, 891 F.2d 1124, 1159 (5th Cir. 1990)).

4

In addition, under Fed. R. Civ. P. 52(b), the court may amend findings or make additional findings and may amend the judgment accordingly.

### III. Analysis

#### A. Renewed Motion for Judgment as Matter of Law

##### 1. Infringement and Willful Infringement

Defendants assert that every single claim at issue is entitled to a finding of noninfringement as a matter of law. As the court stated at the post-trial hearing, it did not view the infringement case as close. There was ample evidence to support a finding of direct infringement by the named Defendants. For the reasons stated at the post-trial hearing, the court denies Defendants' renewed motion as to noninfringement.

As to willful infringement, the court found there to be legally sufficient evidence for a jury to find willfulness. For the reasons stated at the post-trial hearing, the court denies Defendants' renewed motion as to willful infringement.

##### 2. Anticipation and Obviousness

As the court stated at the post-trial hearing, the invalidity case was closer. However, the evidence presented during trial through Dr. Tjaden regarding the Gecsei textbook and other references was not clear and convincing. For these reasons and for those stated at the post-trial motions hearing, Defendants' renewed motion for judgment as a matter of law on anticipation and obviousness are denied.

#### C. Motion for New Trial

Defendants move for a new trial on liability only. Defendants contend that a new trial is warranted for three specific grounds: (1) the court erred in not allowing the Defendants to present

Mr. Crook's state of mind; (2) the court erred in excluding certain prior art references; and (3) likely jury error in finding direct infringement where the jury was instructed and improperly found induced and contributory infringement. The court finds that none of these grounds support a new trial and accordingly, denies the motion.

As to Defendants' first ground, the court found that Mr. Crook's opinions were not properly disclosed under the local rules. For reasons stated at the pre-trial motions hearing the court limited Mr. Crooks' testimony to what was given during his deposition. The Defendants chose to not disclose Mr. Crook's opinion as required by the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Texas. Defendants will not be heard to complain about an alleged error grounded upon their tactical decisions.

Next, Defendants argue that the court improperly excluded prior art references. This issue has been ruled on and discussed in numerous orders and hearings. The rules of disclosure should not be new to the parties. The court finds no new basis to overturn previous orders on this issue.

Defendants lastly assert that the court erred in instructing the jury on direct, induced, and contributory infringement in light of the court's ruling on Defendants' Rule 50(a) motion. The court granted Defendants' motion for judgment as a matter of law on induced and contributory infringement at the post-trial hearing. Defendants sole argument on this issue is that the court should not have carried Defendants' motion on induced and contributory infringement and should not have submitted separate questions to the jury on induced and contributory infringement. This argument is contrary to the procedure authorized by the federal rules and consistently used by courts throughout the country.

6

**D. Motion to Amend Judgment**

Defendants assert that the court erred in calculating prejudgment interest, the court erred in enhancing damages, and that Plaintiff is not the prevailing party. The court has already entered an Order on Plaintiff's Bill of Costs [Doc. #344], declaring Plaintiff the prevailing party.

The court stated its basis for prejudgment interest at the post-trial hearing and computed interest in accordance with its reasons. The parties had agreed upon a six percent rate, but disagreed over compounding. Finisar provided charts from which the number of new box activations each month could be calculated, together with their assumed monthly royalty, based on an imputed royalty rate of $1.32 per box. Prejudgment interest is awarded to compensate a party for loss of use of money over time. As stated at the hearing, the court concluded that annual compounding accomplishes this goal. The court wanted to avoid disputes over the method of computing interest announced at the hearing, which the court said would require some further calculation. Therefore, the court used a standard interest program to apply a six percent rate to monthly activations at an imputed royalty of $1.32, compounded annually. The resulting amount, $13,359,276.00, is more than DirectTV originally proposed, but less than Finisar requested, and is the amount the court intended to award. The difference DirectTV complains of seems to be based on its choice to compound only quarterly figures. Absent a license in which quarterly payments were agreed to, the court compounded monthly figures on an annual basis.

At the hearing, the court stated its reasons for the enhancement of damages and does not find any of the reasons asserted by Defendants as sufficient to overturn the court's previous ruling on this issue. No additional findings are needed on the issues of enhancement or prejudgment interest. Accordingly, Defendants motion to amend the judgment is denied.

## IV. Conclusion

The court finds that none of the reasons stated by Defendants in their renewed motions for judgment as a matter of law, motion for new trial, or motion to amend judgment are sufficient to overturn the rulings and findings made during trial, at the pre-trial motions hearing, or at the post-trial motions hearing.

IT IS THEREFORE ORDERED that Defendants' Renewed Motion for Judgment as a Matter of Law and Motion for New Trial **[Doc. #336]** is **DENIED**.

IT IS FURTHER ORDERED that Defendants' Motion to Amend the Judgment **[Doc. #337]** is **DENIED**.

So **ORDERED** and **SIGNED** this 1  day of **September, 2006.**


_____
Ron Clark, United States District Judge

*Exhibit F*

ADMINCLOSING, CLOSED, PATENT, PaperDocuments, STAYED

# U.S. District Court
## District of Delaware (Wilmington)
### CIVIL DOCKET FOR CASE #: 1:03-cv-00241-JJF

St. Clair Property v. Canon Inc., et al
Assigned to: Honorable Joseph J. Farnan, Jr.
Demand: $0
Related Case: 1:06-cv-00404-JJF
Cause: 35:271 Patent Infringement

Date Filed: 02/28/2003
Date Terminated: 07/17/2006
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**St. Clair Intellectual Property Consultants Inc.**

represented by **Frederick L. Cottrell, III**
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 658-6541
Email: cottrell@rlf.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annie Huang**
Pro Hac Vice
Email: ahuang@rkmc.com
*ATTORNEY TO BE NOTICED*

**Becky R. Thorson**
Pro Hac Vice
Email: brthorson@rkmc.com
*ATTORNEY TO BE NOTICED*

**Carrie M. Lambert**
Pro Hac Vice
Email: cmlambert@rkmc.com
*ATTORNEY TO BE NOTICED*

**Jake M. Holdreith**
Pro Hac Vice
Email: jmholdreith@rkmc.com
*ATTORNEY TO BE NOTICED*

**Kimberly G. Miller**
Pro Hac Vice
Email: kgmiller@rkmc.com
*ATTORNEY TO BE NOTICED*

**Ronald J. Schutz**
Pro Hac Vice
Email: rjschutz@rkmc.com
*ATTORNEY TO BE NOTICED*

| 07/18/2003 | 132 | LETTER to Court from Frederick L. Cottrell, III reporting in addition to Nikon and Minolta, St. Clair and Olympus have entered into a Mem. of Understanding. The MOU contains all the essential terms for stlmt. Discussions with other Defts. are continuing. (afb) (Entered: 07/21/2003) |
| --- | --- | --- |
| 07/18/2003 | 133 | CERTIFICATE OF SERVICE by Canon Inc., Canon U.S.A. Inc. re: Initial Disclosures. (afb) (Entered: 07/21/2003) |
| 07/18/2003 | 134 | CERTIFICATE OF SERVICE by FujiFilm America Inc re: Initial Discl. (afb) (Entered: 07/21/2003) |
| 07/18/2003 | 135 | CERTIFICATE OF SERVICE by Fuji Photo Film Co., Fuji Photo Film USA re: Initial Disclosures. (afb) (Entered: 07/21/2003) |
| 07/21/2003 | 136 | CERTIFICATE OF SERVICE by Casio Computer Co., Seiko Epson Corp., Epson America Inc., Fuji Photo Film Co., Fuji Photo Film USA, FujiFilm America Inc, Kyocera Corporation, Kyocera Intl Inc., Kyocera Optics Inc., Minolta Co. Ltd., Minolta Corporation, Casio Inc. re: Responses and Obj. of Defts. Fuji Photo Film Co., Ltd. and Fuji Photo Film U.S.A., Inc. to Pltf. St. Clair Intellectual Property Consultants, Inc.'s First Set of Interrogs. (afb) (Entered: 07/22/2003) |
| 07/21/2003 | 137 | CERTIFICATE OF SERVICE by Casio Computer Co., Seiko Epson Corp., Epson America Inc., Fuji Photo Film Co., Fuji Photo Film USA, FujiFilm America Inc, Kyocera Corporation, Kyocera Intl Inc., Kyocera Optics Inc., Minolta Co. Ltd., Minolta Corporation, Casio Inc. re: Response by Defts. Fuji Photo Film Co., Ltd., Fulji Photo Film USA, Inc. and Fujifilm America Inc. to pltf. St. Clair's First Set of Requests for Prod. of Docs. and Things. (afb) (Entered: 07/22/2003) |
| 07/21/2003 | 138 | CERTIFICATE OF SERVICE by Casio Computer Co., Seiko Epson Corp., Epson America Inc., Fuji Photo Film Co., Fuji Photo Film USA, FujiFilm America Inc, Kyocera Corporation, Kyocera Intl Inc., Kyocera Optics Inc., Minolta Co. Ltd., Minolta Corporation, Casio Inc. re: Responses and Objs. of Deft. Fujifilm America Inc. to Pltf. St. Clair's First Set of Interrogs. (afb) (Entered: 07/22/2003) |
| 07/22/2003 | 139 | CERTIFICATE OF SERVICE by St. Clair Property re: Response to Defts. Cannon Inc.'s and Conon USA Inc.'s First Set of Interrogs. (afb) (Entered: 07/23/2003) |
| 07/22/2003 | 140 | CERTIFICATE OF SERVICE by St. Clair Property re: Response to Defts. Canon Inc. and Canon USA Inc.'s First Set of Requests for Docs. and Things. (afb) (Entered: 07/23/2003) |
| 07/22/2003 | 141 | CERTIFICATE OF SERVICE by St. Clair Property re: Claim Charts of Canon's Infringing Products. (afb) (Entered: 07/23/2003) |
| 07/22/2003 | 142 | CERTIFICATE OF SERVICE by Canon Inc., Canon U.S.A. Inc. re: First Set of Interrogs. to Defts. Canon Inc. and Canon's Responses to Ptlf.'s First Set of Requests for Docs. and Things to Defts. (afb) (Entered: 07/23/2003) |
| 07/23/2003 | 143 | ORDER denying Deft.'s [57-1] motion to Stay this action pending the outcome of the reexamination proceedings concerning the patents-in-suit, denying [63-1] motion to Stay ( signed by Judge Joseph J. Farnan Jr. ) copies to: cnsl. (afb) (Entered: 07/24/2003) |
| 07/23/2003 |  | Rule 16 Scheduling conference held (Judge Farnan), B. Gaffigan ct. rptr. decision: Parties to submit joint pro. order within two weeks. If parties to notify Court by 07/04 if they consent to mediation. (afb) (Entered: 07/24/2003) |
| 07/23/2003 | 144 | Steno Notes for Rule 16 cnf. on 07/23/03 (Judge Farnan), B. Gaffigan ct. rptr. (afb) (Entered: 07/24/2003) |
| 07/25/2003 | 145 | ORDER denying with leave to renew Defts.' [71-1] motion for Improper Joinder, |

*Exhibit G*

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2003 JUL 23  PM 3: 41

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ST. CLAIR INTELLECTUAL PROPERTY : 
CONSULTANTS, INC.,                            :
                                                            :
              Plaintiff,                            :
                                                            :
       v.                                              : Civil Action No. 03-241-JJF
                                                            :
CANON INC., et al.,                          :
                                                            :
              Defendants.                        :

## ORDER

WHEREAS, pending before the Court are  Defendants Olympus Optical Co., Ltd. and Olympus America Inc. filed a Motion to Stay (D.I. 57) pending the United States Patent and Trademark Office's reexamination of the patents-in-suit;

WHEREAS, on June 12, 2003, Defendants Casio Computer Co., Ltd., Casio, Inc., Seiko Epson Corporation, Epson America, Inc., Fuji Photo Film Co., Ltd., Fuji Photo Film U.S.A., Inc., FUJIFILM America, Inc., Kyocera Corporation, Kyocera International, Inc., Kyocera Optics, Inc., Minolta Co., Ltd., and Minolta Corporation also filed a Motion to Stay (D.I. 63);

WHEREAS, the Court held a Rule 16 scheduling conference with the parties on Wednesday, July 23, 2003, and specifically found that a stay in the circumstances argued by movants will not assist in the efficient and just disposition of the issues presented in the instant litigation;

NOW THEREFORE, IT IS HEREBY ORDERED that Defendants' Motions

to Stay (D.I. 57 & 63) are **DENIED**.

7/23/03
DATE

UNITED STATES DISTRICT JUDGE

*Exhibit H*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CENTILLION DATA SYSTEMS, LLC,<br>a Delaware Corporation, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 05-712-JJF |
| | : |
| AVOLENT, INC.,<br>a Delaware Corporation, | : |
| | : |
| Defendant. | : |

**MEMORANDUM ORDER**

Pending before the Court is Avolent Inc.'s Motion To Stay
Action Pending Reexamination Of The '270 Patent (D.I. 6).  For
the reasons discussed, the Motion will be denied.

**I.   BACKGROUND**

On May 5, 2005, a third-party filed a reexamination request
with the United States Patent and Trademark Office ("USPTO"),
which alleged that two pieces of prior art made three independent
claims of U.S. Patent No. 5,287,270 ("the '270 patent")
unpatentable.  On June 26, 2005, the USPTO granted the
reexamination request, concluding that the "prior art raised a
substantial new question of patentability."  (D.I. 6 at 1).

At the time the reexamination request was filed, Plaintiff
Centillion Data Systems ("Centillion") was involved in litigation
with Convergys Corporation, Qwest Communications International,
and Qwest Corporation (collectively, "Qwest") in the District
Court for the Southern District of Indiana.  Following the

USPTO's granting reexamination, Qwest renewed a motion to stay.
The court denied the motion to stay, suggesting Qwest filed the
request for reexamination and concluding that this was yet
another dilatory tactic by Qwest. Centillion Data Systems, LLC
v. Convergys Corp., 2005 WL 2045786, at *1 (S.D. Ind. Aug. 24,
2005).

On September 30, 2005, Centillion filed its Complaint
against Defendant Avolent, Inc. ("Avolent") alleging infringement
of the '270 patent. Avolent requested that Centillion
voluntarily agree to a stay in the instant lawsuit pending the
outcome of the reexamination. Centillion refused this request
and Avolent filed the instant motion to stay.

II. DISCUSSION

The decision to grant or deny a stay is within the court's
broad range of discretionary powers. Dentsply Int'l, Inc. v.
Kerr Mfg. Co., 734 F. Supp. 656, 658 (D. Del. 1990)(citations
omitted). While the Court is aware that the case is in its
initial stages and that a reexamination could narrow the issues,
the Court concludes that a stay will not substantially assist
resolution of the issues. The Court concludes that there is a
substantial risk of prejudice to Centillion, given the findings
of the Indiana Court. After considering these findings, the
Court is persuaded that the lead of the Indiana Court should be
followed. Accordingly, the Court will deny Avolent Inc.'s Motion

2

To Stay Action Pending Reexamination Of The '270 Patent (D.I. 6).

## ORDER

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.  Avolent Inc.'s Motion To Stay Action Pending Reexamination
    Of The '270 Patent (D.I. 6) is **DENIED**.

2.  Avolent shall file its Answer no later than twenty (20) days
    from the date of this Order.

April **24**, 2006

UNITED STATES DISTRICT JUDGE

3

*Exhibit I*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVOL, INC.                          :
                                     :
          Plaintiff,                 :
                                     :
     v.                              : Civil Action No. 98-608-JJF
                                     :
ALLEGIANCE HEALTHCARE                :
CORPORATION,                         :
          Defendant.                 :

### MEMORANDUM ORDER

Presently before the Court is Defendant's Motion for Stay of
All Proceedings Pending Reexamination of the '510 Patent (D.I.
19).  Defendant argues that reexamination presents the
possibility that the above captioned action and the parties'
efforts therein will be rendered moot.  The Plaintiff opposes the
motion, on the grounds that any delay will jeopardize the trial
date previously ordered (D.I. 22).

A court is vested with the "inherent power to control and
manage their dockets and stay proceedings, including the
authority to order a stay pending conclusion of a PTO
reexamination."  Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27
(Fed. Cir. 1988).  In determining whether to grant a stay, courts
have considered whether doing so would "cause undue prejudice or
present a clear tactical disadvantage to the non-moving party."
GPAC, Inc. v. D.W.W. Enterprises, Inc. et al., 144 F.R.D. 60, 63
(D. N.J. 1992).  Other factors that courts have considered are
the stage of litigation, whether discovery has been completed,



whether a trial date has been set and the probable effect a stay would have on the litigation. Id. at 64. These factors, however, are not exclusive and the Court recognizes that a stay is not mandated because a reexamination has been requested.

Applying these considerations to the instant case, the Court is not persuaded that a stay will be helpful in resolving the issues presented in this lawsuit and finds that it is in the best interest of both parties to keep this action on schedule. Thus, the Court will deny Defendant's motion to stay proceedings.

NOW THEREFORE, IT IS HEREBY ORDERED this 30th day of September, 1999, that the Defendant's Motion for Stay of All Proceedings Pending Reexamination of the '510 Patent (D.I. 19) is DENIED.

UNITED STATES DISTRICT JUDGE

*Exhibit J*

1/20/99

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AUTOMATED PRECISION, INC., and          :
LEICA GEOSYSTEMS AG,                     :
                                         :
          Plaintiffs - Counterdefendants, :
                                         :
     v.                                  :     C.A. No. 98-509-JJF
                                         :
SPATIALMETRIX CORPORATION,               :
                                         :
          Defendant - Counterplaintiff.  :

**MEMORANDUM ORDER**

Presently before the Court is Defendant's Motion to Stay Proceedings (D.I. 10).

Defendant requests an order to stay all proceedings pending final disposition of a reexamination

request concerning the patent-in-suit filed by Defendant in the United States Patent and

Trademark Office ("PTO"). (D.I. 10 at 3). This lawsuit involves U.S. Patent No. 4,714,339

("the '339 patent") which is owned by the U.S. Department of Commerce and licensed to

Plaintiff Automated Precision, Inc. ("API") and sublicensed to Plaintiff Leica Geosystems AG

("Leica"). (D.I. 13 at 5). The '339 patent is directed to a laser tracking system used for precise

measurement of large objects. (D.I. 13 at 6). The parties first discussed Plaintiffs' assertions of

infringement in 1993. (D.I. 10 at 2; D.I. 13 at 7). Unable to resolve their disputes, Plaintiffs

filed suit against Defendant in August, 1998 alleging that Defendant infringes claim 7 of the '339

patent. (D.I. 13 at 8). Defendant counterclaimed asserting antitrust and unfair competition

claims. (D.I. 7).

On December 8, 1998, Defendant filed a request for reexamination of the '339 patent in

the PTO, seeking to invalidate claim 7 based on prior art grounds. (D.I. 10 at 3). Following its

request for reexamination, Defendant filed this motion to stay all proceedings pending the PTO's

disposition of the reexamination request. (D.I. 10).

## DISCUSSION

In support of its motion to stay these proceedings, the Defendant contends that a stay will not unduly prejudice or cause a tactical disadvantage to the Plaintiffs. (D.I. 10 at 4). Defendant contends that: 1) a stay may resolve certain invalidity issues (D.I. 10 at 5); 2) a reexamination could simplify the complexity of this litigation, define the issues and reduce discovery problems (D.I. 10 at 5); and 3) a stay should be granted because the parties have not yet engaged in discovery nor expended resources in pursuit of discovery (D.I. 10 at 5).

In response, Plaintiffs contend that they will be prejudiced by a stay in several respects. The Plaintiffs contend that the reexamination will delay this case for at least a year and a half. Because Plaintiff API's license to the patent expires on September 30, 2001, a stay will deprive API of substantial rights API sought by the license. (D.I. 13 at 9-12). The Plaintiffs contend that they will be tactically disadvantaged because the Defendant will have knowledge of Plaintiffs' arguments on the validity issues concerning the '339 patent during the reexamination proceeding but Plaintiffs will not have any discovery of Defendant's counterclaims until the reexamination proceeding concludes. (D.I. 13 at 20-22). The Plaintiffs also contend that even if the '339 patent is invalidated or amended during reexamination, there are still significant issues in this case which will not be resolved by the PTO's disposition of the reexamination request. (D.I. 13 at 17-20). Finally, the Plaintiffs contend that a reexamination by the PTO will be of little value relative to this case, because the '339 patent has already been reexamined by the PTO at the request of the United States government. (D.I. 13 at 8, 22-24). As a result of this first reexamination, the PTO confirmed the patentability of claim 7 of the '339 patent without any

2

changes. (D.I. 13 at 8). The Plaintiffs contend that much of the prior art cited by Defendant in support of its request for reexamination has already been considered by the PTO in the first reexamination, and therefore, the technical expertise of the PTO will not add significantly to this case. (D.I. 13 at 22-24).

Courts have the "inherent power to control and manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). In determining whether to grant a stay, courts have considered whether doing so would "cause undue prejudice or present a clear tactical disadvantage to the non-moving party." GPAC, Inc. v. D.W.W. Enterprises, Inc. et al., 144 F.R.D. 60, 63 (D. N.J. 1992). Other factors that courts have considered are the stage of litigation, whether discovery has been completed, whether a trial date has been set and the probable effect a stay would have on the litigation. Id. at 64. These factors, however, are not exclusive and the Court recognizes that a stay is not mandated because a reexamination has been requested.

Applying these considerations to the instant case, the Court is not persuaded that a stay will be helpful in resolving the issues presented in this lawsuit and finds that the delay may unduly prejudice the Plaintiffs both in concluding this litigation and in obtaining anticipated benefits from its license of the '339 patent. Further, because the nature of the reexamination request by Defendant is based on prior art questions, the Court is not convinced that the PTO will assist the resolution of all the issues in this lawsuit. Thus, the Court will deny Defendant's motion to stay proceedings in this case.

NOW THEREFORE, FOR THE REASONS DISCUSSED, IT IS HEREBY ORDERED

this 30 day of January, 1999 that:

    1. Defendant's Motion to Stay Proceedings (D.I. 10) is DENIED.

    2. Trial in this matter will be scheduled for January-February, 2000. The parties shall meet and discuss a Proposed Rule 16 Scheduling Order to be presented at the Rule 16 Conference on February 25, 1999 at 1:15 p.m. in Courtroom No. 6A on the 6th Floor, Boggs Federal Building, Wilmington. In preparing the proposed order, the parties shall refer to the attached form of order.

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE

4

## RULE 16 SCHEDULING ORDER

This _____ day of _____ 1999, the parties having satisfied their obligations under Fed. R. Civ. P. 26(f), and the Court having conducted a pretrial scheduling conference pursuant to Fed. R. Civ. P. 16 and D. Del. LR 16.2(a) and (b),

IT IS ORDERED that:

1. **Pre-Discovery Disclosures**. The parties [have exchanged] [will exchange by (date)] the information required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

2. **Discovery**.

(a) All discovery shall be commenced in time to be completed by (date).

(b) Maximum of _____ interrogatories by each party to any other party.

(c) Maximum of _____ requests for admission by each party to any other party.

(d) Maximum of _____ depositions by plaintiff(s) and _____ by defendant(s).

(e) Reports from retained experts under Rule 26(a)(2) due: from plaintiff(s) by (date); from defendant(s) by (date).

(f) **Discovery Disputes**. Should counsel find they are unable to resolve a discovery dispute, they shall jointly arrange with the Court a time for a hearing or telephone

conference call to review the matter. Motions filed without benefit of this procedure will be denied.

Prior to calling the Court to schedule a hearing or telephone conference to review the matter, counsel should thoroughly discuss the dispute and determine that the dispute requires the Court's attention. Once a hearing or telephone conference has been scheduled, each party shall file a letter memorandum not to exceed five (5) pages setting forth the dispute and its position with respect thereto.

3. **Joinder of other Parties and Amendment of Pleadings.** All motions to join other parties and amend the pleadings shall be filed on or before _____.

4. **Papers filed under Seal.** When filing papers under seal, counsel should deliver to the Clerk of the Court an original and two copies of the papers.

5. **Settlement Conference.** If the parties agree this case is amenable to settlement they should promptly advise the Court.

6. **Status Conference.** If both parties find that a status conference is necessary, they may so notify the Court.

7. **Case Dispositive Motions.** All case dispositive motions, if any, shall be served and filed with an opening brief on or before _____, 1999. Briefing shall be undertaken pursuant to D. Del. LR 7.1.2. No case dispositive motion may be filed more than ten (10) days from the above date without leave

of the court.

8. **Applications by Motion.** Except as provided in this Order, any applications to the Court shall be by written motion filed with the Clerk of the Court. Any non-dispositive motion shall contain the statement required by D. Del. LR 7.1.1.

9. **Pretrial Conference.** On _____ (DAY), (MONTH), 1999, at (TIME) .m., in Courtroom No. 6A on the 6" Floor, Boggs Federal Building, Wilmington, Delaware, the Court will hold a Final Pretrial Conference pursuant to Fed. R. Civ. P. 16(d) and D. Del. LR 16 with counsel. At least fifteen (15) days prior to the Final Pretrial Conference, Plaintiff's counsel shall forward to Defendant's counsel a draft of the Proposed Pretrial Order with the information Plaintiff proposes to include in the Proposed Order. At least five (5) days prior to the Conference, Defendant's counsel shall, in turn, provide Plaintiff's counsel with comments on the Plaintiff's draft and any information Defendant proposes to include in the Proposed Order. Each party shall include in the Proposed Pretrial Order an identification of each expert witness that the party expects to call to testify at the trial and a statement of the substance of each opinion the expert will offer at trial. The parties shall file the Proposed Pretrial Order at least three (3) days prior to the conference and, unless otherwise advised by the Court, the parties should assume that filing the Pretrial Order satisfies the pretrial disclosure requirement in Fed. R. Civ. P. 26(a)(3). If the case

is to be tried to a jury, pursuant to D. Del. LR 47 and 51, the parties shall file proposed voir dire, instructions to the jury, and special interrogatories three (3) business days before the Final Pretrial Conference.

　　　　10. **Trial**. Trial will commence at 9:00 a.m. on (DAY) _____ (MONTH) , 1999, in Courtroom No. 6A on the 6th Floor, United States Courthouse, Boggs Federal Building, Wilmington, Delaware.

　　　　11. The parties shall direct any requests or questions regarding the scheduling and management of this matter to Deputy Clerk Sue Mastrosimone at (302) 573-6137.


　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Date: _____